**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **BLUE SPIKE, LLC** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | |
| | § | |
| **JUNIPER NETWORKS, INC.** | § | JURY TRIAL DEMANDED |
| | § | |
| *Defendant*. | § | |
| | § | |
| | § | |
| | § | |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT





Plaintiff Blue Spike, LLC files this complaint against Defendant Juniper Networks, Inc. ("Juniper") alleging twenty-six (26) counts of infringement of the following Patents-in-Suit:

**Blue Spike's Packet Transfer Patents:**

1.      U.S. Patent No. 7,287,275, titled "Methods, Systems and Devices for Packet Watermarking and Efficient Provisioning of Bandwidth" (the '275 Patent);

2.      U.S. Patent No. 8,473,746, titled "Methods, Systems and Devices for Packet Watermarking and Efficient Provisioning of Bandwidth" (the '746 Patent);

3.      U.S. Patent No. 8,706,570, titled "Methods, Systems and Devices for Packet Watermarking and Efficient Provisioning of Bandwidth" (the '570 Patent);

4.      Reissued U.S. Patent No. RE44,222, titled "Methods, Systems and Devices for Packet Watermarking and Efficient Provisioning of Bandwidth" (the '222 Patent);

5.      Reissued U.S. Patent No. RE44,307, titled "Methods, Systems and Devices for Packet Watermarking and Efficient Provisioning of Bandwidth" (the '307 Patent, and collectively with U.S. Patent Nos. 7,287,275, 8,473,746, 8,706,570, RE44,222, and RE44,307, the "Packet Transfer Patents");

**Blue Spike's Watermarking Patents**:

6.      U.S. Patent No. 5,889,868, titled "Optimization Methods for the Insertion, Protection, and Detection of Digital Watermarks in Digitized Data" (the '868 Patent);

7.      U.S. Patent No. 7,095,874, titled "Optimization Methods for the Insertion, Protection, and Detection of Digital Watermarks in Digitized Data" (the '874 Patent);

8.      U.S. Patent No. 7,409,073, titled "Optimization Methods for the Insertion, Protection, and Detection of Digital Watermarks in Digitized Data" (the '073 Patent);

9.      U.S. Patent No. 7,647,502, titled "Optimization Methods for the Insertion, Protection, and Detection of Digital Watermarks in Digitized Data" (the '502 Patent);

10.    U.S. Patent No. 7,770,017, titled "Method and System for Digital Watermarking" (the '017 Patent);

11.    U.S. Patent No. 7,779,261, titled "Method and System for Digital Watermarking" (the '261 Patent);

12.    U.S. Patent No. 7,913,087, titled "Optimization Methods for the Insertion, Protection, and Detection of Digital Watermarks in Digitized Data" (the '087 Patent);

13.    U.S. Patent No. 7,953,981, titled "Optimization Methods for the Insertion, Protection, and Detection of Digital Watermarks in Digitized Data" (the '981 Patent);

14.    U.S. Patent No. 7,987,371, titled "Optimization Methods for the Insertion, Protection, and Detection of Digital Watermarks in Digitized Data" (the '371 Patent);

15.    U.S. Patent No. 7,991,188, titled "Optimization Methods for the Insertion, Protection, and Detection of Digital Watermarks in Digitized Data" (the '188 Patent);

16.    U.S. Patent No. 8,121,343, titled "Optimization Methods for the Insertion, Protection, and Detection of Digital Watermarks in Digitized Data" (the '343 Patent);

17.    U.S. Patent No. 8,161,286, titled "Method and System for Digital Watermarking" (the '286 Patent);

18.    U.S. Patent No. 8,175,330, titled "Optimization Methods for the Insertion, Protection, and Detection of Digital Watermarks in Digitized Data" (the '330 Patent);

19.    U.S. Patent No. 8,307,213, titled "Method and System for Digital Watermarking" (the '213 Patent, and collectively with U.S. Patent Nos. 5,889,868, 7,913,087, 7,953,981, 8,121,343, 8,175,330, 7,770,017, and 8,161,286, the "Watermarking Patents");

**Blue Spike's Open Access Patents:**

20.     U.S. Patent No. 7,813,506, titled "System and Methods for Permitting Open Access to Data Objects and for Securing Data within the Data Objects" (the '506 Patent);

21.     U.S. Patent No. 8,265,278, titled "System and Methods for Permitting Open Access to Data Objects and for Securing Data within the Data Objects" (the '278 Patent, and collectively with U.S. Patent 7,813,506. the "Open Access Patents");

**Blue Spike's Data Reduction Cryptography Patent:**

22.     U.S. Patent No. 7,664,264, titled "Utilizing Data Reduction in Steganographic and Cryptographic Systems" (the '264 Patent or the "Data Reduction Cryptography Patent");

**Blue Spike's Trusted Transactions Patents:**

23.     U.S. Patent No. 7,159,116, titled "Systems, Methods and Devices for Trusted Transactions" (the '116 Patent);

24.     U.S. Patent No. 8,538,011, titled "Systems, Methods and Devices for Trusted Transactions" (the '011 Patent, and collectively with U.S. Patent 7,159,116, the "Trusted Transactions Patents");

**Blue Spike's Product Key Patents:**

25.     U.S. Patent No. 9,021,602, titled "Data Protection Method and Device" (the '602 Patent); and

26.     U.S. Patent No. 9,104,842, titled "Data Protection Method and Device" (the '842 Patent, and collectively with U.S. Patent 9,021,602, the "Product Key Patents").

## NATURE OF THE SUIT

1.    This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

## PARTIES

2.    Plaintiff Blue Spike, LLC is a Texas limited liability company and has its headquarters and principal place of business at 1820 Shiloh Road, Suite 1201-C, Tyler, Texas 75703. Blue Spike, LLC is the assignee of the Patents-in-Suit, and has ownership of all substantial rights in them, including the rights to grant sublicenses, to exclude others from practicing the inventions taught therein, and to sue and obtain damages and other relief for past and future acts of infringement.

3.    On information and belief, Juniper Networks, Inc. is a company organized and existing under the laws of California, with a principal place of business at 1133 Innovation Way, Sunnyvale, California 94089. Juniper Networks, Inc. may be served through its registered agent, CT Corporation System, at 1999 Bryan St., Suite 900, Dallas, Texas 75201.

## JURISDICTION AND VENUE

4.    This lawsuit is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 101 *et seq.* The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a), and 1367.

5.    The Court has personal jurisdiction over Defendant for at least four reasons: (1) Defendant has committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District and elsewhere in Texas; (2) Defendant regularly does business or solicits business in the District and in Texas; (3) Defendant

engages in other persistent courses of conduct and derives substantial revenue from products and/or services provided to individuals in the District and in Texas; and (4) Defendant has purposefully established substantial, systematic, and continuous contacts with the District and should reasonably expect to be haled into court here.

6.     Specifically, Defendant operates a website that solicits sales of the Accused Networking Products by consumers in this District and Texas (*see* Exhibit A); Defendant operates various sales offices in the United States (*see* Exhibit B); Defendant has partnered with numerous resellers and distributors in the United State and Texas to sell the Accused Networking Products (*see* Exhibit C); Defendant offers telephonic and electronic support services to customers in this District and Texas (*see* Exhibit D); Defendant offers software for download by customers in this District and Texas (*see*, *e.g.*, Exhibit E); and Defendant has a registered agent for service in Texas (*see* above). Given these extensive contacts, the Court's exercise of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice.

7.     Thus, the Court's exercise of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice.

8.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) because Defendant does business in the State of Texas, has committed acts of infringement in Texas and in the District, a substantial part of the events or omissions giving rise to Blue Spike's injury happened in the District, and Defendant is subject to personal jurisdiction in the District.

## FACTUAL BACKGROUND

9.      Protection of intellectual property is a prime concern for creators and publishers of digitized copies of copyrightable works, such as musical recordings, movies, video games, and computer software. Blue Spike founder Scott Moskowitz pioneered—and continues to invent—technology that makes such protection possible.

10.      Moskowitz is a senior member of the Institute of Electrical and Electronics Engineers (IEEE), a member of the Association for Computing Machinery, and the International Society for Optics and Photonics (SPIE). As a senior member of the IEEE, Moskowitz has peer-reviewed numerous conference papers and has submitted his own publications.

11.      Moskowitz is an inventor of more than 100 patents, in the areas of forensic watermarking, signal abstracts, data security, software watermarks, product license keys, deep packet inspection, license code for authorized software, and bandwidth securitization, among others.

12.      The National Security Agency (NSA) even took interest in his work after he filed one of his early patent applications. The NSA made the application classified under a "secrecy order" while it investigated his pioneering innovations and their impact on national security.

13.      As an industry trailblazer, Moskowitz has been a public figure and an active author on technologies related to protecting and identifying software and multimedia content. A 1995 *New York Times* article—titled "TECHNOLOGY: DIGITAL COMMERCE; 2 plans for watermarks, which can bind proof of authorship to electronic works"— recognized Moskowitz's company as one of two leading software start-ups in this newly

created field. *Forbes* also interviewed Moskowitz as an expert for "Cops Versus Robbers in Cyberspace," a September 9, 1996 article about the emergence of digital watermarking and rights-management technology. He has also testified before the Library of Congress regarding the Digital Millennium Copyright Act.

14.    Moskowitz has spoken to the RSA Data Security Conference, the International Financial Cryptography Association, Digital Distribution of the Music Industry, and many other organizations about the business opportunities that digital watermarking creates. Moskowitz also authored *So This Is Convergence?*, the first book of its kind about secure digital-content management. This book has been downloaded over a million times online and has sold thousands of copies in Japan, where Shogakukan published it under the name *Denshi Skashi*, literally "electronic watermark." Moskowitz was asked to author the introduction to *Multimedia Security Technologies for Digital Rights Management*, a 2006 book explaining digital-rights management. Moskowitz authored a paper for the 2002 International Symposium on Information Technology, titled "What is Acceptable Quality in the Application of Digital Watermarking: Trade-offs of Security, Robustness and Quality." He also wrote an invited 2003 article titled "Bandwidth as Currency" for the *IEEE Journal*, among other publications.

15.    Moskowitz and Blue Spike continue to invent technologies that protect intellectual property from unintended use or unauthorized copying.

## THE ACCUSED PRODUCTS

16.    Defendant designs, develops, manufactures and/or provides products, services and/or software applications that employ watermarking technology that infringes one or more claims of the Patents-in-Suit (the "Accused Products").

17.    The Accused Products are comprised of the Accused Networking Products and the Additional Accused Products.

18.    The Accused Networking Products include, but are not limited to, Defendant's ACX-Series Routers (including, but not limited to, its ACX500, ACX1000, ACX1100, ACX2100, ACX2200, ACX4000, ACS5048, and ACX5096 models), Defendant's EX-Series Switches (including, but not limited to, its EX2200, EX2300, EX2500, EX3200, EX3300, EX3400, EX4200, EX4300, EX4500, EX4550, EX4600, EX6210, EX8208, EX8216, EX9204, EX9208, and EX9214 models), Defendant's M-Series Routers (including, but not limited to, its M7i, M10i, M120, and M320 models), Defendant's MX-Series Routers (including, but not limited to, its MX80, MX120, MX240, MX480, and MX960 models), Defendant's PTX-Series Routers (including, but not limited to, its PTX1000, PTX3000, and PTX5000 models), Defendant's SRX-Series Gateways (including, but not limited to, its SRX110, SRX1400, SRX1500, SRX220, SRX300, SRX3400, SRX3600, SRX4000, SRX5400, SRX550, SRX5600, and SRX5800 models), and Defendant's T-Series Routers (including, but not limited to, its T320, T640, T1600, and T4000 models).

19.    The Accused Networking Products infringe the Packet Transfer Patents, the Watermarking Patents, the Open Access Patents, the Data Reduction Cryptography Patent, and the Trusted Transactions Patents.

20.    The Additional Accused Products include, but are not limited to, those in the following Juniper products and services and/or their associated software programs, elements, applications, and/or features: Advanced Insight Manager, Application Acceleration, Application Usage Manager, BTI Series, CTP Series, Cloud Analytics

Engine, Connectivity Services Director, Content Director, Contrail, Cross Provisioning Platform, cSRX, Edge Services Director, J Series, JA Series, JSA Series, JSA Virtual Appliance, Junos Address Aware, Junos Application Aware, Junos Content Security, Junos Network Secure, Junos OS, Junos Space Management Applications, Junos Space Network Management Platform, Junos Space SDK, Junos Space Service Aware, Junos Space Service Insight, Junos Space Service Now, Junos Subscriber Aware, Junos Traffic Vision, Junos VPN Site Secure, Junos Video Focus, Junosphere, Junosphere Bank, LN Series, Media Flow, MobileNext, Mobile VAS, NFX Series, Network Director, NorthStar Controller, OCX Series, OpNet, proNX Management Applications proNX SLA Portal proNX Service Manager, QFX Series, SA Series, SBR Carrier, ScreenOS, SRC Series, SRX Series, Security Director, Sky Advanced Threat Prevention, Spotlight Secure, StreamScope, T4000, Telchemy, Virtual Director, vGW, vMX, vSRX, and WANDL IP/MPLS View. *See* Exhibit M ("Most of our products—outside of our higher-end IPG products—use license activation keys to enable features, capacity and subscriptions in individual systems, appliances and standalone software products.").

21.    All of the Accused Products—the Accused Networking Products and the Additional Accused Products—infringe the Product Key Patents.

22.    The Accused Products are practicing methods, devices, and systems taught by Blue Spike's Patents-in-Suit.

23.    Yet Defendant has not obtained a license for any of Blue Spike's patented technologies.

24.    Although Blue Spike is not obligated to identify specific claims or claim elements in its complaint, it does so below for Defendant's benefit. *See Rmail Ltd. v. Right Signature,*

*LLC*, 2:11-CV-300-JRG, 2012 WL 2595305, at *2 (E.D. Tex. July 5, 2012) ("Plaintiffs are not required to identify specific claims or claim elements at this stage of the litigation.").

## COUNT 1:
## INFRINGEMENT OF U.S. PATENT 7,287,275

25.   Blue Spike incorporates by reference the allegations in the paragraphs above.

26.   The '275 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

27.   Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '275 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Networking Products, in violation of 35 U.S.C. § 271.

28.   Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '275 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '275 Patent. Specifically, Defendant imports the Accused Networking Products into the United States, operates a website and numerous sales centers that offer for sale and sell the Accused Networking Products (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Networking Products in the United States (*see* Exhibit C), generates revenue from sales of the Accused Networking Products to U.S. customers via said channels, and attends trade shows in the United States where it demonstrates the Accused Networking Products (*see* Exhibit E).

29.    The Accused Networking Products infringe claims of the '275 Patent, such as

Claim 1 which teaches

> A method for transmitting a stream of data, comprising:
>     receiving a stream of data;
>     organizing the stream of data into a plurality of
>         packets;
>     generating a packet watermark associated with the
>         stream of data wherein the packet watermark
>         enables identification of at least one of the plurality
>         of packets;
>     combining the packet watermark with each of the
>         plurality of packets to form watermarked packets;
>         and
>     transmitting at least one of the watermarked packets
>         across a network.

Defendant's Accused Networking Products transmit data in packets (*a method for*

*transmitting a stream of data, organizing the stream of data into a plurality of packets*).

*See, e.g.*, Exhibit G. Before transmitting data, the Accused Networking Products generate

a watermark identifying a packet's priority level and place the watermark in the packet

(*generating a watermark associated with the stream of data wherein the packet watermark*

*enables identification; combining the packet watermark with each of the plurality of*

*packets to form watermarked packets; transmitting at least one of the watermarking*

*packets across a network*). *See* Exhibit H at p. 2 (indicating the inclusion of "DSCP and

DSCP IPv6 rewrite rules" that "Re-mark[] the DSCP code points of IP and IPv6 packets

before forwarding the packets," an "IEEE 802.1p rewrite rule" that "Re-marks the IEEE

802.1p code points of Ethernet packets before forwarding the packets," and an "MPLS

EXP rewrite rule" that "Re-marks the EXP code points of MPLS packets before forwarding

the packets"); Exhibit I at p. 1 ("Of those packets, Layer 3 packets are marked at egress

with DSCP bits 001010"); Exhibit J at p. 1 ("The AppQoS DSCP rewriter conveys a

packet's quality of service through both the forwarding class and a loss priority."); Exhibit

H at p. 2 ("QoS options used within the MPLS network and will prioritize, limit, and shape any type of traffic based on various options (VLAN-id, DSCP, p-bit). … It is also possible to use two-stage priority mechanisms. For example, first by DiffServ Code Point (DSCP) and then by VLAN-id.").

30.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '275 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '275 Patent. Such products include, without limitation, one or more of the Accused Networking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '275 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '275 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Networking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig*., 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc*., No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.)  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Networking Products. Defendant had knowledge of the

'275 Patent at least as early as the service of this complaint. Defendant has known that the Accused Networking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '275 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '275 Patent under 35 U.S.C. § 271.

31.    Defendant's acts of infringement of the '275 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '275 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

32.    On information and belief, the infringement of the '275 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '275 Patent, including but not limited to at least one or more of the following:

    a.    In the course of its due diligence and freedom to operate analysis;

    b.    Due diligence in relation to its prior litigation with Blue Spike; and

    c.    The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '275 Patent by operation of law.

**COUNT 2:**

**INFRINGEMENT OF U.S. PATENT 8,473,746**

33.    Blue Spike incorporates by reference the allegations in the paragraphs above.

34.    The '746 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

35.    Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '746 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Networking Products, in violation of 35 U.S.C. § 271.

36.    Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '746 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '746 Patent. Specifically, Defendant imports the Accused Networking Products into the United States, operates a website and numerous sales centers that offer for sale and sell the Accused Networking Products (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Networking Products in the United States (*see* Exhibit C), generates revenue from sales of the Accused Networking Products to U.S. customers via said channels, and attends trade shows in the United States where it demonstrates the Accused Networking Products (*see* Exhibit E).

37.    The Accused Networking Products infringe claims of the '746 Patent, such as Claim 9 which teaches

> A method for generating a watermarked packet, comprising:
> a processor applying an algorithm to at least (1) a packet watermark and (2) packet content, thereby generating a WID (Watermark Identification);
> wherein said packet content is less than all data of a data object;

> a processor generating a watermarked packet
> comprising said packet watermark and at least some
> of said packet content.

The Accused Networking Products generate a watermark identifying a packet and place the watermark in the packet (*generating a watermark associated with the stream of data wherein the packet watermark enables identification; combining the packet watermark with each of the plurality of packets to form watermarked packets*). *See* Exhibit H at p. 2 (indicating the inclusion of "DSCP and DSCP IPv6 rewrite rules" that "Re-mark[] the DSCP code points of IP and IPv6 packets before forwarding the packets," an "IEEE 802.1p rewrite rule" that "Re-marks the IEEE 802.1p code points of Ethernet packets before forwarding the packets," and an "MPLS EXP rewrite rule" that "Re-marks the EXP code points of MPLS packets before forwarding the packets"); Exhibit I at p. 1 ("Of those packets, Layer 3 packets are marked at egress with DSCP bits 001010"). The Accused Networking Products apply an algorithm to a packet to determine its priority (*applying an algorithm to packet content*) then apply an algorithm based on those results on a watermark (*apply an algorithm to a watermark*) to identify the packet (*generating a WID (Watermark Identification*). *See* Exhibit J at p. 1 ("The AppQoS DSCP rewriter conveys a packet's quality of service through both the forwarding class and a loss priority."); Exhibit K at p. 2 ("QoS options used within the MPLS network and will prioritize, limit, and shape any type of traffic based on various options (VLAN-id, DSCP, p-bit). … It is also possible to use two-stage priority mechanisms. For example, first by DiffServ Code Point (DSCP) and then by VLAN-id.").

38.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '746 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things,

making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '746 Patent. Such products include, without limitation, one or more of the Accused Networking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '746 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '746 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Networking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig*., 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc*., No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.)  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Networking Products. Defendant had knowledge of the '746 Patent at least as early as the service of this complaint. Defendant has known that the Accused Networking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '746 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '746 Patent under 35 U.S.C. § 271.

39.    Defendant's acts of infringement of the '746 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '746 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

40.    On information and belief, the infringement of the '746 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '746 Patent, including but not limited to at least one or more of the following:

   a.    In the course of its due diligence and freedom to operate analysis;

   b.    Due diligence in relation to its prior litigation with Blue Spike; and

   c.    The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '746 Patent by operation of law.

## COUNT 3:
## INFRINGEMENT OF U.S. PATENT 8,706,570

41.    Blue Spike incorporates by reference the allegations in the paragraphs above.

42.    The '570 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

43.    Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '570 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Networking Products, in violation of 35 U.S.C. § 271.

44.     Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '570 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '570 Patent. Specifically, Defendant imports the Accused Networking Products into the United States, operates a website and numerous sales centers that offer for sale and sell the Accused Networking Products (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Networking Products in the United States (*see* Exhibit C), generates revenue from sales of the Accused Networking Products to U.S. customers via said channels, and attends trade shows in the United States where it demonstrates the Accused Networking Products (*see* Exhibit E).

45.     The Accused Networking Products infringe claims of the '570 Patent, such as Claim 1 which teaches

> A computerized system for creating a medium of exchange, the system comprising:
>> a processor;
>> at least one data storage medium for storing data in non transient form, wherein data stored in said at least one data storage medium comprises computer code and a bandwidth rights certificate;
>> wherein said bandwidth rights certificate stores routing information comprising (1) router data, wherein said router data comprises at least authorization indicating authorization for at least one router and priority data indicating priority for at least one router and (2) certificate validity period;
>> wherein said computerized system is designed to use said computer code to organize data into packets;
>> wherein said computerized system is designed to use said computer code to combine said bandwidth rights certificate and said packets into a data transmission, for transmission across a network;
>> a router, wherein said router is configured to use certificate validity period of said bandwidth rights certificate to determine whether to use said router

data to determine at least one of whether to route said
data transmission and how to prioritize routing said
data transmission.

The Accused Networking Products are designed to interact with each other and exchange information and priority rights for packets (*a computerized system for creating a medium of exchange*). *See* Exhibit J at p. 1 ("The AppQoS DSCP rewriter conveys a packet's quality of service through both the forwarding class and a loss priority."); Exhibit K at p. 2 ("QoS options used within the MPLS network and will prioritize, limit, and shape any type of traffic based on various options (VLAN-id, DSCP, p-bit). … It is also possible to use two-stage priority mechanisms. For example, first by DiffServ Code Point (DSCP) and then by VLAN-id."). The Accused Networking Products assign bandwidth rights or priorities to packets and send both across a network (*a bandwidth rights certificate*; *router data comprising at least authorization indicating authorization for at least one router and priority data*; *determine how to prioritize routing said data*). *See* Exhibit L ("Differentiated Services (DiffServ) is a system for tagging (or "marking") traffic at a position within a hierarchy of priority. Selecting this option maps the eight ScreenOS priority levels (IP Precedence) to the DiffServ system. … DSCP marking is supported on all platforms and can be configured with traffic shaping or independently."); Exhibit H at p. 2 (indicating the inclusion of "DSCP and DSCP IPv6 rewrite rules" that "Re-mark[] the DSCP code points of IP and IPv6 packets before forwarding the packets," an "IEEE 802.1p rewrite rule" that "Re-marks the IEEE 802.1p code points of Ethernet packets before forwarding the packets," and an "MPLS EXP rewrite rule" that "Re-marks the EXP code points of MPLS packets before forwarding the packets"); Exhibit I at p. 1 ("Of those packets, Layer 3 packets are marked at egress with DSCP bits 001010").

46.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '570 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '570 Patent. Such products include, without limitation, one or more of the Accused Networking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '570 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '570 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Networking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.)  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Networking Products. Defendant had knowledge of the '570 Patent at least as early as the service of this complaint. Defendant has known that the Accused Networking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe.

Thus, Defendant is liable for infringement of one or more claims of the '570 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '570 Patent under 35 U.S.C. § 271.

47.    Defendant's acts of infringement of the '570 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '570 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

48.    On information and belief, the infringement of the '570 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '570 Patent, including but not limited to at least one or more of the following:

   a.    In the course of its due diligence and freedom to operate analysis;

   b.    Due diligence in relation to its prior litigation with Blue Spike; and

   c.    The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '570 Patent by operation of law.

## COUNT 4:
## INFRINGEMENT OF U.S. PATENT RE44,222

49.    Blue Spike incorporates by reference the allegations in the paragraphs above.

50.    The '222 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

51.    Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '222 Patent—directly, contributorily, or

by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Networking Products, in violation of 35 U.S.C. § 271.

52.    Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '222 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '222 Patent. Specifically, Defendant imports the Accused Networking Products into the United States, operates a website and numerous sales centers that offer for sale and sell the Accused Networking Products (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Networking Products in the United States (*see* Exhibit C), generates revenue from sales of the Accused Networking Products to U.S. customers via said channels, and attends trade shows in the United States where it demonstrates the Accused Networking Products (*see* Exhibit E).

53.    The Accused Networking Products infringe claims of the '222 Patent, such as Claim 12 which teaches

> A system for provisioning content, comprising:
> a processor to receive content and to organize the content into a plurality of packets;
> a generator to generate at least one packet watermark associated with the content;
> a packager to combine the generated packet watermark with at least one of the plurality of packets to form watermarked packets; and
> a transmitter to transmit at least one of the watermarked packets across a network.

Defendant's Accused Networking Products receive and transmit data and other content in packets (processor to receive content and to organize the content into a plurality of packets). *See, e.g.*, Exhibit G. Before transmitting data, the Accused Networking Products

generate a watermark identifying a packet's priority level and place the watermark in the packet (*a generator to generate at least one packet watermark associated with the content; a packager to combine the generated packet watermark with at least one of the plurality of packets to form watermarked packets*). *See* Exhibit H at p. 2 (indicating the inclusion of "DSCP and DSCP IPv6 rewrite rules" that "Re-mark[] the DSCP code points of IP and IPv6 packets before forwarding the packets," an "IEEE 802.1p rewrite rule" that "Re-marks the IEEE 802.1p code points of Ethernet packets before forwarding the packets," and an "MPLS EXP rewrite rule" that "Re-marks the EXP code points of MPLS packets before forwarding the packets"); Exhibit I at p. 1 ("Of those packets, Layer 3 packets are marked at egress with DSCP bits 001010"); Exhibit J at p. 1 ("The AppQoS DSCP rewriter conveys a packet's quality of service through both the forwarding class and a loss priority."); Exhibit K at p. 2 ("QoS options used within the MPLS network and will prioritize, limit, and shape any type of traffic based on various options (VLAN-id, DSCP, p-bit). … It is also possible to use two-stage priority mechanisms. For example, first by DiffServ Code Point (DSCP) and then by VLAN-id."); Exhibit L ("Differentiated Services (DiffServ) is a system for tagging (or "marking") traffic at a position within a hierarchy of priority. Selecting this option maps the eight ScreenOS priority levels (IP Precedence) to the DiffServ system. … DSCP marking is supported on all platforms and can be configured with traffic shaping or independently.").

54.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '222 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority,

products for use in systems that fall within the scope of one or more claims of the '222 Patent. Such products include, without limitation, one or more of the Accused Networking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '222 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '222 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Networking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc*., No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.)  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Networking Products. Defendant had knowledge of the '222 Patent at least as early as the service of this complaint. Defendant has known that the Accused Networking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '222 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '222 Patent under 35 U.S.C. § 271.

55.    Defendant's acts of infringement of the '222 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '222 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

56.    On information and belief, the infringement of the '222 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '222 Patent, including but not limited to at least one or more of the following:

        a.    In the course of its due diligence and freedom to operate analysis;

        b.    Due diligence in relation to its prior litigation with Blue Spike; and

        c.    The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '222 Patent by operation of law.

## COUNT 5:
## INFRINGEMENT OF U.S. PATENT RE44,307

57.    Blue Spike incorporates by reference the allegations in the paragraphs above.

58.    The '307 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

59.    Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '307 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Networking Products, in violation of 35 U.S.C. § 271.

60.    Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '307 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '307 Patent. Specifically, Defendant imports the Accused Networking Products into the United States, operates a website and numerous sales centers that offer for sale and sell the Accused Networking Products (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Networking Products in the United States (*see* Exhibit C), generates revenue from sales of the Accused Networking Products to U.S. customers via said channels, and attends trade shows in the United States where it demonstrates the Accused Networking Products (*see* Exhibit E).

61.    The Accused Networking Products infringe claims of the '307 Patent, such as Claim 1 which teaches

> A process for provisioning a stream of data, comprising:
>    receiving a stream of data;
>    organizing the stream of data into a packet flow comprising a plurality of packets;
>    generating, using a processor, a packet watermark associated with the packet flow wherein the packet watermark enables discrimination between packet flows;
>    combining, using a processor, the packet watermark with each of the plurality of packets to form watermarked packets; and
>    provisioning at least one of the watermarked packets across a network.

The Accused Networking Products generate a watermark identifying a packet and place the watermark in the packet (*a generator to generate at least one packet watermark associated with the content; a packager to combine the generated packet watermark with a packet*). *See* Exhibit H at p. 2 (indicating the inclusion of "DSCP and DSCP IPv6 rewrite rules" that "Re-mark[] the DSCP code points of IP and IPv6 packets before forwarding the

packets," an "IEEE 802.1p rewrite rule" that "Re-marks the IEEE 802.1p code points of Ethernet packets before forwarding the packets," and an "MPLS EXP rewrite rule" that "Re-marks the EXP code points of MPLS packets before forwarding the packets"); Exhibit I at p. 1 ("Of those packets, Layer 3 packets are marked at egress with DSCP bits 001010"). The packet watermark is intended to differentiate packets (hence the term "Differentiated Services Code Point") based on priority (*the packet watermark enables discrimination between packet flows*). *See* Exhibit J at p. 1 ("The AppQoS DSCP rewriter conveys a packet's quality of service through both the forwarding class and a loss priority."); Exhibit K at p. 2 ("QoS options used within the MPLS network and will prioritize, limit, and shape any type of traffic based on various options (VLAN-id, DSCP, p-bit). … It is also possible to use two-stage priority mechanisms. For example, first by DiffServ Code Point (DSCP) and then by VLAN-id."); Exhibit L ("Differentiated Services (DiffServ) is a system for tagging (or "marking") traffic at a position within a hierarchy of priority. Selecting this option maps the eight ScreenOS priority levels (IP Precedence) to the DiffServ system. … DSCP marking is supported on all platforms and can be configured with traffic shaping or independently."). The Accused Networking Products then transmit the resulting packets (*a transmitter to transmit at least one of the watermarked packets across a network*). *See*, *e.g.*, Exhibit G.

62.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '307 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '307

Patent. Such products include, without limitation, one or more of the Accused Networking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '307 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '307 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Networking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.)  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Networking Products. Defendant had knowledge of the '307 Patent at least as early as the service of this complaint. Defendant has known that the Accused Networking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '307 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '307 Patent under 35 U.S.C. § 271.

63.    Defendant's acts of infringement of the '307 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a

result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '307 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

64.     On information and belief, the infringement of the '307 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '307 Patent, including but not limited to at least one or more of the following:

    a.     In the course of its due diligence and freedom to operate analysis;

    b.     Due diligence in relation to its prior litigation with Blue Spike; and

    c.     The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '307 Patent by operation of law.

**COUNT 6:**

**INFRINGEMENT OF U.S. PATENT 5,889,868**

65.     Blue Spike incorporates by reference the allegations in the paragraphs above.

66.     The '868 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

67.     Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '868 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Networking Products, in violation of 35 U.S.C. § 271.

68.     Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '868 Patent and/or directing, controlling, and obtaining

benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '868 Patent. Specifically, Defendant imports the Accused Networking Products into the United States, operates a website and numerous sales centers that offer for sale and sell the Accused Networking Products (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Networking Products in the United States (*see* Exhibit C), generates revenue from sales of the Accused Networking Products to U.S. customers via said channels, and attends trade shows in the United States where it demonstrates the Accused Networking Products (*see* Exhibit E).

69.    The Accused Networking Products infringe claims of the '868 Patent, such as Claim 9 which teaches

> A method of pre-processing a watermark message certificate comprising determining an exact length of the watermark message as it will be encoded.

The Accused Networking Products place a DSCP marker of a predetermined length (a byte) into the packet (*determining an exact length of the watermark message*). *See* Exhibit H at p. 2 (indicating the inclusion of "DSCP and DSCP IPv6 rewrite rules" that "Re-mark[] the DSCP code points of IP and IPv6 packets before forwarding the packets," an "IEEE 802.1p rewrite rule" that "Re-marks the IEEE 802.1p code points of Ethernet packets before forwarding the packets," and an "MPLS EXP rewrite rule" that "Re-marks the EXP code points of MPLS packets before forwarding the packets"); Exhibit I at p. 1 ("Of those packets, Layer 3 packets are marked at egress with DSCP bits 001010").

70.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '868 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority,

products for use in systems that fall within the scope of one or more claims of the '868 Patent. Such products include, without limitation, one or more of the Accused Networking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '868 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '868 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Networking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.) Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Networking Products. Defendant had knowledge of the '868 Patent at least as early as the service of this complaint. Defendant has known that the Accused Networking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '868 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '868 Patent under 35 U.S.C. § 271.

71.    Defendant's acts of infringement of the '868 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '868 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

72.    On information and belief, the infringement of the '868 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '868 Patent, including but not limited to at least one or more of the following:

    a.    In the course of its due diligence and freedom to operate analysis;

    b.    Due diligence in relation to its prior litigation with Blue Spike; and

    c.    The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '868 Patent by operation of law.

## COUNT 7:
## INFRINGEMENT OF U.S. PATENT 7,095,874

73.    Blue Spike incorporates by reference the allegations in the paragraphs above.

74.    The '874 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

75.    Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '874 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Networking Products, in violation of 35 U.S.C. § 271.

76.    Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '874 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '874 Patent. Specifically, Defendant imports the Accused Networking Products into the United States, operates a website and numerous sales centers that offer for sale and sell the Accused Networking Products (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Networking Products in the United States (*see* Exhibit C), generates revenue from sales of the Accused Networking Products to U.S. customers via said channels, and attends trade shows in the United States where it demonstrates the Accused Networking Products (*see* Exhibit E).

77.    The Accused Networking Products infringe claims of the '874 Patent, such as Claim 1 which teaches

> An article of manufacture comprising a machine readable medium, having thereon stored instructions adapted to be executed by a processor, which instructions when executed result in a process comprising:
>> pre-analyzing a digital signal to identify potential watermarking locations within the digital signal, which potential watermarking locations are suitable for embedding one or more bits of a watermark message;
>> pre-processing a watermark message to determine an exact length of the watermark message to be embedded within the digital signal based on the preanalyzing step; and
>> embedding the exact length of the watermark message into the digital signal using the locations identified by the pre-analyzing step.

The Accused Networking Products identify potential locations to mark a packet with a DSCP marker of certain length, and then embed the mark in that position (*pre-analyzing a digital signal to identify potential watermarking locations within the digital signal, which*

*potential watermarking locations are suitable for embedding one or more bits of a watermark message; pre-processing a watermark message to determine an exact length of the watermark message to be embedded within the digital signal based on the preanalyzing step; and embedding the exact length of the watermark message into the digital signal using the locations identified by the pre-analyzing step*). *See* Exhibit H at p. 2 (indicating the inclusion of "DSCP and DSCP IPv6 rewrite rules" that "Re-mark[] the DSCP code points of IP and IPv6 packets before forwarding the packets," an "IEEE 802.1p rewrite rule" that "Re-marks the IEEE 802.1p code points of Ethernet packets before forwarding the packets," and an "MPLS EXP rewrite rule" that "Re-marks the EXP code points of MPLS packets before forwarding the packets"); Exhibit L ("Differentiated Services (DiffServ) is a system for tagging (or "marking") traffic at a position within a hierarchy of priority. Selecting this option maps the eight ScreenOS priority levels (IP Precedence) to the DiffServ system. … DSCP marking is supported on all platforms and can be configured with traffic shaping or independently.").

78.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '874 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '874 Patent. Such products include, without limitation, one or more of the Accused Networking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '874 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for

infringement of the '874 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Networking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.) Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Networking Products. Defendant had knowledge of the '874 Patent at least as early as the service of this complaint. Defendant has known that the Accused Networking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '874 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '874 Patent under 35 U.S.C. § 271.

79.    Defendant's acts of infringement of the '874 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '874 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

80.     On information and belief, the infringement of the '874 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '874 Patent, including but not limited to at least one or more of the following:

    a.     In the course of its due diligence and freedom to operate analysis;

    b.     Due diligence in relation to its prior litigation with Blue Spike; and

    c.     The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '868 Patent by operation of law.

**COUNT 8:**

**INFRINGEMENT OF U.S. PATENT 7,409,073**

81.     Blue Spike incorporates by reference the allegations in the paragraphs above.

82.     The '073 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

83.     Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '073 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Networking Products, in violation of 35 U.S.C. § 271.

84.     Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '073 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '073 Patent. Specifically, Defendant imports the Accused Networking Products into the United States, operates a website and numerous sales centers that offer for sale and sell the Accused Networking Products (*see* Exhibits A & B), has partnered with numerous resellers

37

to offer for sale and sell the Accused Networking Products in the United States (*see* Exhibit

C), generates revenue from sales of the Accused Networking Products to U.S. customers

via said channels, and attends trade shows in the United States where it demonstrates the

Accused Networking Products (*see* Exhibit E).

85.    The Accused Networking Products infringe claims of the '073 Patent, such as

Claim 1 which teaches

> An article of manufacture comprising a machine
> readable medium, having thereon stored instructions
> adapted to be executed by a processor, which
> instructions when executed result in a process
> comprising:
>> analyzing a digital signal to identify potential
>> watermarking locations within the digital
>> signal, which potential watermarking locations
>> are suitable for embedding one or more bits of a
>> watermark message;
>> using a watermarking key to detect the watermark
>> message from the digital signal at the locations
>> identified by the analyzing step

The Accused Networking Products identify potential locations suitable for containing a

DSCP marker and use a key to detect the marker at those locations (*analyzing a digital

signal to identify potential watermarking locations within the digital signal, which

potential watermarking locations are suitable for embedding one or more bits of a

watermark message; using a watermarking key to detect the watermark message from the

digital signal at the locations identified by the analyzing step*). *See* Exhibit H at p. 2

(indicating the inclusion of "DSCP and DSCP IPv6 rewrite rules" that "Re-mark[] the

DSCP code points of IP and IPv6 packets before forwarding the packets," an "IEEE 802.1p

rewrite rule" that "Re-marks the IEEE 802.1p code points of Ethernet packets before

forwarding the packets," and an "MPLS EXP rewrite rule" that "Re-marks the EXP code

points of MPLS packets before forwarding the packets"); Exhibit I at p. 1 ("Of those packets, Layer 3 packets are marked at egress with DSCP bits 001010").

86.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '073 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '073 Patent. Such products include, without limitation, one or more of the Accused Networking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '073 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '073 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Networking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.)  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Networking Products. Defendant had knowledge of the '073 Patent at least as early as the service of this complaint. Defendant has known that the Accused Networking Products infringe the Patents-in-Suit, are especially made and

adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '073 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '073 Patent under 35 U.S.C. § 271.

87.     Defendant's acts of infringement of the '073 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '073 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

88.     On information and belief, the infringement of the '073 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '073 Patent, including but not limited to at least one or more of the following:

      a.    In the course of its due diligence and freedom to operate analysis;

      b.    Due diligence in relation to its prior litigation with Blue Spike; and

      c.    The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '073 Patent by operation of law.

## COUNT 9:
## INFRINGEMENT OF U.S. PATENT 7,647,502

89.     Blue Spike incorporates by reference the allegations in the paragraphs above.

90.     The '502 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

91.    Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '502 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Networking Products, in violation of 35 U.S.C. § 271.

92.    Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '502 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '502 Patent. Specifically, Defendant imports the Accused Networking Products into the United States, operates a website and numerous sales centers that offer for sale and sell the Accused Networking Products (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Networking Products in the United States (*see* Exhibit C), generates revenue from sales of the Accused Networking Products to U.S. customers via said channels, and attends trade shows in the United States where it demonstrates the Accused Networking Products (*see* Exhibit E).

93.    The Accused Networking Products infringe claims of the '502 Patent, such as Claim 1 which teaches

> A method for encoding at least one watermark in a content signal, comprising:
>> predetermining a number of bits in the content signal to be encoded, based on at least one of a fixed length key and signal characteristics of the content signal; and
>> encoding the watermark in the predetermined bits.

The Accused Networking Products identify potential locations to encode a signal with a DSCP marker of certain length, and then encode the marker in those bits (*method for encoding at least one watermark in a content signal; predetermining a number of bits in*

*the content signal to be encoded, based on at least one of a fixed length key and signal characteristics of the content signal; and encoding the watermark in the predetermined bits*). *See* Exhibit H at p. 2 (indicating the inclusion of "DSCP and DSCP IPv6 rewrite rules" that "Re-mark[] the DSCP code points of IP and IPv6 packets before forwarding the packets," an "IEEE 802.1p rewrite rule" that "Re-marks the IEEE 802.1p code points of Ethernet packets before forwarding the packets," and an "MPLS EXP rewrite rule" that "Re-marks the EXP code points of MPLS packets before forwarding the packets"); Exhibit L ("Differentiated Services (DiffServ) is a system for tagging (or "marking") traffic at a position within a hierarchy of priority. Selecting this option maps the eight ScreenOS priority levels (IP Precedence) to the DiffServ system. … DSCP marking is supported on all platforms and can be configured with traffic shaping or independently.").

94.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '502 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '502 Patent. Such products include, without limitation, one or more of the Accused Networking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '502 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '502 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Networking Products. *See In re Bill of Lading Transmission and*

*Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.) Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Networking Products. Defendant had knowledge of the '502 Patent at least as early as the service of this complaint. Defendant has known that the Accused Networking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '502 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '502 Patent under 35 U.S.C. § 271.

95.    Defendant's acts of infringement of the '502 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '502 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

96.    On information and belief, the infringement of the '502 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '502 Patent, including but not limited to at least one or more of the following:

a. In the course of its due diligence and freedom to operate analysis;

b. Due diligence in relation to its prior litigation with Blue Spike; and

c. The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '868 Patent by operation of law.

## COUNT 10:
## INFRINGEMENT OF U.S. PATENT 7,770,017

97. Blue Spike incorporates by reference the allegations in the paragraphs above.

98. The '017 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

99. Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '017 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Networking Products, in violation of 35 U.S.C. § 271.

100. Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '017 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '017 Patent. Specifically, Defendant imports the Accused Networking Products into the United States, operates a website and numerous sales centers that offer for sale and sell the Accused Networking Products (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Networking Products in the United States (*see* Exhibit C), generates revenue from sales of the Accused Networking Products to U.S. customers

via said channels, and attends trade shows in the United States where it demonstrates the

Accused Networking Products (*see* Exhibit E).

101.    The Accused Networking Products infringe claims of the '017 Patent, such as

Claim 1 which teaches

> An article of manufacture for authorized distribution of multimedia content comprising a non-transitory machine-readable medium having stored thereon instructions adapted to be executed by a processor, the instructions which, when executed results in the processing comprising:
>> receiving at least one copy of content to be imperceptibly encoded with at least one digital watermark;
>> encoding the digital watermark into one or more locations in the content utilizing a key associated with a plurality of functions describing how the digital watermark is to be encoded and
>> detecting at least one digital watermark using the key.

The Accused Networking Products receive a signal, encode a DSCP marker into the signal

using a key, and detect the mark using the key (*receiving at least one copy of content to be*

*imperceptibly encoded with at least one digital watermark; encoding the digital watermark*

*into one or more locations in the content utilizing a key associated with a plurality of*

*functions describing how the digital watermark is to be encoded and detecting at least one*

*digital watermark using the key*). *See* Exhibit H at p. 2 (indicating the inclusion of "DSCP

and DSCP IPv6 rewrite rules" that "Re-mark[] the DSCP code points of IP and IPv6 packets

before forwarding the packets," an "IEEE 802.1p rewrite rule" that "Re-marks the IEEE

802.1p code points of Ethernet packets before forwarding the packets," and an "MPLS

EXP rewrite rule" that "Re-marks the EXP code points of MPLS packets before forwarding

the packets"); Exhibit I at p. 1 ("Of those packets, Layer 3 packets are marked at egress

with DSCP bits 001010"); Exhibit J at p. 1 ("The AppQoS DSCP rewriter conveys a packet's quality of service through both the forwarding class and a loss priority."); Exhibit K at p. 2 ("QoS options used within the MPLS network and will prioritize, limit, and shape any type of traffic based on various options (VLAN-id, DSCP, p-bit). … It is also possible to use two-stage priority mechanisms. For example, first by DiffServ Code Point (DSCP) and then by VLAN-id."); Exhibit L ("Differentiated Services (DiffServ) is a system for tagging (or "marking") traffic at a position within a hierarchy of priority. Selecting this option maps the eight ScreenOS priority levels (IP Precedence) to the DiffServ system. … DSCP marking is supported on all platforms and can be configured with traffic shaping or independently.").

102.   Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '017 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '017 Patent. Such products include, without limitation, one or more of the Accused Networking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '017 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '017 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Networking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater*

*Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.) Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Networking Products. Defendant had knowledge of the '017 Patent at least as early as the service of this complaint. Defendant has known that the Accused Networking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '017 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '017 Patent under 35 U.S.C. § 271.

103.  Defendant's acts of infringement of the '017 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '017 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

104.  On information and belief, the infringement of the '017 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '017 Patent, including but not limited to at least one or more of the following:

a.      In the course of its due diligence and freedom to operate analysis;

b.     Due diligence in relation to its prior litigation with Blue Spike; and

c.     The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '017 Patent by operation of law.

## COUNT 11:
## INFRINGEMENT OF U.S. PATENT 7,779,261

105.  Blue Spike incorporates by reference the allegations in the paragraphs above.

106.  The '261 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

107.  Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '261 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Networking Products, in violation of 35 U.S.C. § 271.

108.   Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '261 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '261 Patent. Specifically, Defendant imports the Accused Networking Products into the United States, operates a website and numerous sales centers that offer for sale and sell the Accused Networking Products (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Networking Products in the United States (*see* Exhibit C), generates revenue from sales of the Accused Networking Products to U.S. customers via said channels, and attends trade shows in the United States where it demonstrates the Accused Networking Products (*see* Exhibit E).

109.    The Accused Networking Products infringe claims of the '261 Patent, such as Claim 1 which teaches

> A system for applying a digital watermark to a content signal, the signal comprising;
> > a receiver for receiving at least one digital watermark and at least one key comprising information describing where in the content signal the at least on digital watermark is to be encoded;
> > an encoder for encoding the at least one digital watermark into the content signal according to the at least one key to produce at least one watermarked content signal; and
> > a decoder for detecting and/or decoding the at least one digital watermark from a watermarked content signal using the at least one key.

The Accused Networking Products receive a signal and encode it with a DSCP marker in a certain location (*a receiver for receiving at least one digital watermark and at least one key comprising information describing where in the content signal the at least on digital watermark is to be encoded; an encoder for encoding the at least one digital watermark into the content signal according to the at least one key to produce at least one watermarked content signal*). *See* Exhibit H at p. 2 (indicating the inclusion of "DSCP and DSCP IPv6 rewrite rules" that "Re-mark[] the DSCP code points of IP and IPv6 packets before forwarding the packets," an "IEEE 802.1p rewrite rule" that "Re-marks the IEEE 802.1p code points of Ethernet packets before forwarding the packets," and an "MPLS EXP rewrite rule" that "Re-marks the EXP code points of MPLS packets before forwarding the packets"); Exhibit L ("Differentiated Services (DiffServ) is a system for tagging (or "marking") traffic at a position within a hierarchy of priority. Selecting this option maps the eight ScreenOS priority levels (IP Precedence) to the DiffServ system. … DSCP marking is supported on all platforms and can be configured with traffic shaping or

independently."). The Accused Networking Products also decode the DSCP marker from the signal based on the key (*a decoder for detecting and/or decoding the at least one digital watermark from a watermarked content signal using the at least one key*). *See* Exhibit K at p. 2 ("QoS options used within the MPLS network and will prioritize, limit, and shape any type of traffic based on various options (VLAN-id, DSCP, p-bit). … It is also possible to use two-stage priority mechanisms. For example, first by DiffServ Code Point (DSCP) and then by VLAN-id."); Exhibit L ("Differentiated Services (DiffServ) is a system for tagging (or "marking") traffic at a position within a hierarchy of priority. Selecting this option maps the eight ScreenOS priority levels (IP Precedence) to the DiffServ system. … DSCP marking is supported on all platforms and can be configured with traffic shaping or independently.").

110.   Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '261 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '261 Patent. Such products include, without limitation, one or more of the Accused Networking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '261 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '261 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Networking Products. *See In re Bill of Lading Transmission and*

*Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.) Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Networking Products. Defendant had knowledge of the '261 Patent at least as early as the service of this complaint. Defendant has known that the Accused Networking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '261 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '261 Patent under 35 U.S.C. § 271.

111.  Defendant's acts of infringement of the '261 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '261 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

112.  On information and belief, the infringement of the '261 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '261 Patent, including but not limited to at least one or more of the following:

      a.     In the course of its due diligence and freedom to operate analysis;

      b.     Due diligence in relation to its prior litigation with Blue Spike; and

      c.     The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '261 Patent by operation of law.

COUNT 12:

INFRINGEMENT OF U.S. PATENT 7,913,087

113.  Blue Spike incorporates by reference the allegations in the paragraphs above.

114.  The '087 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

115.  Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '087 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Networking Products, in violation of 35 U.S.C. § 271.

116.  Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '087 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '087 Patent. Specifically, Defendant imports the Accused Networking Products into the United States, operates a website and numerous sales centers that offer for sale and sell the Accused Networking Products (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Networking Products in the United States (*see* Exhibit C), generates revenue from sales of the Accused Networking Products to U.S. customers

via said channels, and attends trade shows in the United States where it demonstrates the

Accused Networking Products (*see* Exhibit E).

117.    The Accused Networking Products infringe claims of the '087 Patent, such as

Claim 6 which teaches

> A process for decoding a plurality of digital
> watermarks using an encoding level and a key,
> comprising:
>> providing a digital signal encoded with a
>> plurality of digital watermarks;
>> providing at least one key for decoding digital
>> watermarks;
>> determining an encoding level; and
>> decoding at least two of the plurality of digital
>> watermarks encoded in the digital signal at
>> substantially the same encoding level based on
>> the at least one key.

The Accused Networking Products transmit signals encoded with watermarks such as

DSCP (*providing a digital signal encoded with a plurality of digital watermarks*). *See*

Exhibit H at p. 2 (indicating the inclusion of "DSCP and DSCP IPv6 rewrite rules" that

"Re-mark[] the DSCP code points of IP and IPv6 packets before forwarding the packets,"

an "IEEE 802.1p rewrite rule" that "Re-marks the IEEE 802.1p code points of Ethernet

packets before forwarding the packets," and an "MPLS EXP rewrite rule" that "Re-marks

the EXP code points of MPLS packets before forwarding the packets"); Exhibit I at p. 1

("Of those packets, Layer 3 packets are marked at egress with DSCP bits 001010"); Exhibit

J at p. 1 ("The AppQoS DSCP rewriter conveys a packet's quality of service through both

the forwarding class and a loss priority."). The Accused Networking Products use a key to

decode the marks, which determine a priority level for the signal (*providing at least one

key for decoding digital watermarks; determining an encoding level; decoding at least two

of the plurality of digital watermarks encoded in the digital signal at substantially the same*

*encoding level based on the at least one key*). *See* Exhibit K at p. 2 ("QoS options used within the MPLS network and will prioritize, limit, and shape any type of traffic based on various options (VLAN-id, DSCP, p-bit). … It is also possible to use two-stage priority mechanisms. For example, first by DiffServ Code Point (DSCP) and then by VLAN-id."); Exhibit L ("Differentiated Services (DiffServ) is a system for tagging (or "marking") traffic at a position within a hierarchy of priority. Selecting this option maps the eight ScreenOS priority levels (IP Precedence) to the DiffServ system. … DSCP marking is supported on all platforms and can be configured with traffic shaping or independently.").

118.   Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '087 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '087 Patent. Such products include, without limitation, one or more of the Accused Networking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '087 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '087 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Networking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its

customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.) Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Networking Products. Defendant had knowledge of the '087 Patent at least as early as the service of this complaint. Defendant has known that the Accused Networking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '087 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '087 Patent under 35 U.S.C. § 271.

119.  Defendant's acts of infringement of the '087 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '868 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

120.  On information and belief, the infringement of the '087 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '087 Patent, including but not limited to at least one or more of the following:

    a.    In the course of its due diligence and freedom to operate analysis;

    b.    Due diligence in relation to its prior litigation with Blue Spike; and

    c.    The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '087 Patent by operation of law.

## COUNT 13:

## INFRINGEMENT OF U.S. PATENT 7,953,981

121.  Blue Spike incorporates by reference the allegations in the paragraphs above.

122.  The '981 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

123.  Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '981 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Networking Products, in violation of 35 U.S.C. § 271.

124.  Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '981 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '981 Patent. Specifically, Defendant imports the Accused Networking Products into the United States, operates a website and numerous sales centers that offer for sale and sell the Accused Networking Products (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Networking Products in the United States (*see* Exhibit C), generates revenue from sales of the Accused Networking Products to U.S. customers via said channels, and attends trade shows in the United States where it demonstrates the Accused Networking Products (*see* Exhibit E).

125.  The Accused Networking Products infringe claims of the '981 Patent, such as Claim 22 which teaches

A digital watermarking system, comprising:
a receiver for receiving a signal;
an analyzer for determining locations in the signal comprising candidate bits; and
a watermark message generator for generating at least one watermark message wherein a generated watermark message is associated with at least one candidate bit determined in the analyzing step.

The Accused Networking Products receive a signal, analyze it for potential locations to encode a signal with a DSCP marker, and then encode the marker in those bits (*method for encoding at least one watermark in a content signal; predetermining a number of bits in the content signal to be encoded, based on at least one of a fixed length key and signal characteristics of the content signal; and encoding the watermark in the predetermined bits*). *See* Exhibit H at p. 2 (indicating the inclusion of "DSCP and DSCP IPv6 rewrite rules" that "Re-mark[] the DSCP code points of IP and IPv6 packets before forwarding the packets," an "IEEE 802.1p rewrite rule" that "Re-marks the IEEE 802.1p code points of Ethernet packets before forwarding the packets," and an "MPLS EXP rewrite rule" that "Re-marks the EXP code points of MPLS packets before forwarding the packets"); Exhibit L ("Differentiated Services (DiffServ) is a system for tagging (or "marking") traffic at a position within a hierarchy of priority. Selecting this option maps the eight ScreenOS priority levels (IP Precedence) to the DiffServ system. … DSCP marking is supported on all platforms and can be configured with traffic shaping or independently.").

126.  Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '981 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '981

Patent. Such products include, without limitation, one or more of the Accused Networking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '981 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '981 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Networking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig*., 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc*., No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.) Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Networking Products. Defendant had knowledge of the '981 Patent at least as early as the service of this complaint. Defendant has known that the Accused Networking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '981 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '981 Patent under 35 U.S.C. § 271.

127. Defendant's acts of infringement of the '981 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a

result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '981 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

128. On information and belief, the infringement of the '981 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '981 Patent, including but not limited to at least one or more of the following:

    a.    In the course of its due diligence and freedom to operate analysis;

    b.    Due diligence in relation to its prior litigation with Blue Spike; and

    c.    The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '981 Patent by operation of law.

**COUNT 14:**

**INFRINGEMENT OF U.S. PATENT 7,987,371**

129. Blue Spike incorporates by reference the allegations in the paragraphs above.

130. The '371 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

131. Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '371 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Networking Products, in violation of 35 U.S.C. § 271.

132. Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '371 Patent and/or directing, controlling, and obtaining

benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '371 Patent. Specifically, Defendant imports the Accused Networking Products into the United States, operates a website and numerous sales centers that offer for sale and sell the Accused Networking Products (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Networking Products in the United States (*see* Exhibit C), generates revenue from sales of the Accused Networking Products to U.S. customers via said channels, and attends trade shows in the United States where it demonstrates the Accused Networking Products (*see* Exhibit E).

133.    The Accused Networking Products infringe claims of the '371 Patent, such as Claim 27 which teaches

> An article of manufacture comprising a non-transitory machine readable medium, having thereon stored instructions adapted to be executed by a processor, which instructions when executed result in a process comprising:
>> obtaining a model for a data signal wherein the model describes watermarking parameters;
>> generating a watermark to be embedded in the data signal; and
>> embedding the generated watermark using the obtained model of the data signal to create a watermarked data signal.

Based on a model that describes the priority of a signal, the Accused Networking Products generate a DSCP marker and encode the marker in the signal (*obtaining a model for a data signal wherein the model describes watermarking parameters; generating a watermark to be embedded in the data signal; and embedding the generated watermark using the obtained model of the data signal to create a watermarked data signal*). Exhibit K at p. 2 ("QoS options used within the MPLS network and will prioritize, limit, and shape any type of traffic based on various options (VLAN-id, DSCP, p-bit). … It is also possible to use

two-stage priority mechanisms. For example, first by DiffServ Code Point (DSCP) and then by VLAN-id."); Exhibit L ("Differentiated Services (DiffServ) is a system for tagging (or "marking") traffic at a position within a hierarchy of priority. Selecting this option maps the eight ScreenOS priority levels (IP Precedence) to the DiffServ system. … DSCP marking is supported on all platforms and can be configured with traffic shaping or independently."); Exhibit H at p. 2 (indicating the inclusion of "DSCP and DSCP IPv6 rewrite rules" that "Re-mark[] the DSCP code points of IP and IPv6 packets before forwarding the packets," an "IEEE 802.1p rewrite rule" that "Re-marks the IEEE 802.1p code points of Ethernet packets before forwarding the packets," and an "MPLS EXP rewrite rule" that "Re-marks the EXP code points of MPLS packets before forwarding the packets"); Exhibit I at p. 1 ("Of those packets, Layer 3 packets are marked at egress with DSCP bits 001010"); Exhibit J at p. 1 ("The AppQoS DSCP rewriter conveys a packet's quality of service through both the forwarding class and a loss priority.").

134.  Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '371 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '371 Patent. Such products include, without limitation, one or more of the Accused Networking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '371 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '371 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to

indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Networking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.) Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Networking Products. Defendant had knowledge of the '371 Patent at least as early as the service of this complaint. Defendant has known that the Accused Networking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '371 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '371 Patent under 35 U.S.C. § 271.

135.  Defendant's acts of infringement of the '371 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '371 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

136. On information and belief, the infringement of the '371 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '371 Patent, including but not limited to at least one or more of the following:

    a.    In the course of its due diligence and freedom to operate analysis;

    b.    Due diligence in relation to its prior litigation with Blue Spike; and

    c.    The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '371 Patent by operation of law.

**COUNT 15:**

**INFRINGEMENT OF U.S. PATENT 7,991,188**

137. Blue Spike incorporates by reference the allegations in the paragraphs above.

138. The '188 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

139. Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '188 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Networking Products, in violation of 35 U.S.C. § 271.

140. Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '188 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '188 Patent. Specifically, Defendant imports the Accused Networking Products into the United States, operates a website and numerous sales centers that offer for sale and sell the Accused Networking Products (*see* Exhibits A & B), has partnered with numerous resellers

to offer for sale and sell the Accused Networking Products in the United States (*see* Exhibit

C), generates revenue from sales of the Accused Networking Products to U.S. customers

via said channels, and attends trade shows in the United States where it demonstrates the

Accused Networking Products (*see* Exhibit E).

141.    The Accused Networking Products infringe claims of the '188 Patent, such as

Claim 19 which teaches

> A method of digital watermarking a signal
> comprising:
>> at least one processor for performing the
>> following steps;
>> identifying locations in the signal which
>> locations are suitable for encoding one or
>> more watermark bits based on at least one
>> predetermined criterion;
>> selecting a watermark message based on the
>> identification step; and
>> encoding the watermark message using the
>> locations identified in the identification
>> step.

The Accused Networking Products use a processor to identify potential locations to mark

a signal with a DSCP marker indicating signal priority, and then embed the mark in that

position (*identifying locations in the signal which locations are suitable for encoding one*

*or more watermark bits based on at least one predetermined criterion; selecting a*

*watermark message based on the identification step; and encoding the watermark message*

*using the locations identified in the identification step*). *See* Exhibit H at p. 2 (indicating

the inclusion of "DSCP and DSCP IPv6 rewrite rules" that "Re-mark[] the DSCP code

points of IP and IPv6 packets before forwarding the packets," an "IEEE 802.1p rewrite

rule" that "Re-marks the IEEE 802.1p code points of Ethernet packets before forwarding

the packets," and an "MPLS EXP rewrite rule" that "Re-marks the EXP code points of

MPLS packets before forwarding the packets"); Exhibit L ("Differentiated Services

(DiffServ) is a system for tagging (or "marking") traffic at a position within a hierarchy of priority. Selecting this option maps the eight ScreenOS priority levels (IP Precedence) to the DiffServ system. … DSCP marking is supported on all platforms and can be configured with traffic shaping or independently.").

142.   Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '188 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '188 Patent. Such products include, without limitation, one or more of the Accused Networking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '188 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '188 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Networking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig*., 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc*., No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.)  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Networking Products. Defendant had knowledge of the

'188 Patent at least as early as the service of this complaint. Defendant has known that the Accused Networking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '188 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '188 Patent under 35 U.S.C. § 271.

143.  Defendant's acts of infringement of the '188 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '188 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

144.  On information and belief, the infringement of the '188 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '188 Patent, including but not limited to at least one or more of the following:

    a.    In the course of its due diligence and freedom to operate analysis;

    b.    Due diligence in relation to its prior litigation with Blue Spike; and

    c.    The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '188 Patent by operation of law.

## COUNT 16:
## INFRINGEMENT OF U.S. PATENT 8,121,343

145.  Blue Spike incorporates by reference the allegations in the paragraphs above.

146.  The '343 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

147.  Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '343 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Networking Products, in violation of 35 U.S.C. § 271.

148.  Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '343 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '343 Patent. Specifically, Defendant imports the Accused Networking Products into the United States, operates a website and numerous sales centers that offer for sale and sell the Accused Networking Products (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Networking Products in the United States (*see* Exhibit C), generates revenue from sales of the Accused Networking Products to U.S. customers via said channels, and attends trade shows in the United States where it demonstrates the Accused Networking Products (*see* Exhibit E).

149.  The Accused Networking Products infringe claims of the '343 Patent, such as Claim 1 which teaches

> A method of detecting a watermark message comprising:
>    identifying, with a processor, signal characteristics suitable for embedding one or more bits of watermark message within a signal;
>    using a watermarking key to detect said watermark message from the identified signal characteristics.

The Accused Networking Products use a processor to identify locations where a signal is embedded with a DSCP marker, and use a key to decode the marker (*identifying, with a processor, signal characteristics suitable for embedding one or more bits of watermark message within a signal; using a watermarking key to detect said watermark message from the identified signal characteristics*). *See* Exhibit H at p. 2 (indicating the inclusion of "DSCP and DSCP IPv6 rewrite rules" that "Re-mark[] the DSCP code points of IP and IPv6 packets before forwarding the packets," an "IEEE 802.1p rewrite rule" that "Re-marks the IEEE 802.1p code points of Ethernet packets before forwarding the packets," and an "MPLS EXP rewrite rule" that "Re-marks the EXP code points of MPLS packets before forwarding the packets"); Exhibit I at p. 1 ("Of those packets, Layer 3 packets are marked at egress with DSCP bits 001010"); Exhibit J at p. 1 ("The AppQoS DSCP rewriter conveys a packet's quality of service through both the forwarding class and a loss priority."); Exhibit K at p. 2 ("QoS options used within the MPLS network and will prioritize, limit, and shape any type of traffic based on various options (VLAN-id, DSCP, p-bit). … It is also possible to use two-stage priority mechanisms. For example, first by DiffServ Code Point (DSCP) and then by VLAN-id."); Exhibit L ("Differentiated Services (DiffServ) is a system for tagging (or "marking") traffic at a position within a hierarchy of priority. Selecting this option maps the eight ScreenOS priority levels (IP Precedence) to the DiffServ system. … DSCP marking is supported on all platforms and can be configured with traffic shaping or independently.").

150.   Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '343 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things,

making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '343 Patent. Such products include, without limitation, one or more of the Accused Networking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '343 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '343 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Networking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig*., 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc*., No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.)  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Networking Products. Defendant had knowledge of the '343 Patent at least as early as the service of this complaint. Defendant has known that the Accused Networking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '343 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '343 Patent under 35 U.S.C. § 271.

151.  Defendant's acts of infringement of the '343 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '343 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

152.  On information and belief, the infringement of the '343 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '343 Patent, including but not limited to at least one or more of the following:

    a.    In the course of its due diligence and freedom to operate analysis;

    b.    Due diligence in relation to its prior litigation with Blue Spike; and

    c.    The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '343 Patent by operation of law.

**COUNT 17:**

**INFRINGEMENT OF U.S. PATENT 8,161,286**

153.  Blue Spike incorporates by reference the allegations in the paragraphs above.

154.  The '286 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

155.  Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '286 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Networking Products, in violation of 35 U.S.C. § 271.

156.    Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '286 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '286 Patent. Specifically, Defendant imports the Accused Networking Products into the United States, operates a website and numerous sales centers that offer for sale and sell the Accused Networking Products (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Networking Products in the United States (*see* Exhibit C), generates revenue from sales of the Accused Networking Products to U.S. customers via said channels, and attends trade shows in the United States where it demonstrates the Accused Networking Products (*see* Exhibit E).

157.    The Accused Networking Products infringe claims of the '286 Patent, such as Claim 1 which teaches

> A method for decoding digital watermarks, comprising:
> receiving a content signal encoded with a digital watermark; and
> decoding said digital watermark from said content signal using a key that comprises information describing where in the content signal said digital watermark is encoded.

The Accused Networking Products receive a signal marked with DSCP or other priority information, and use a key to locate the DSCP marker and decode it (*receiving a content signal encoded with a digital watermark; and decoding said digital watermark from said content signal using a key that comprises information describing where in the content signal said digital watermark is encoded*). *See* Exhibit H at p. 2 (indicating the inclusion of "DSCP and DSCP IPv6 rewrite rules" that "Re-mark[] the DSCP code points of IP and IPv6 packets before forwarding the packets," an "IEEE 802.1p rewrite rule" that "Re-

marks the IEEE 802.1p code points of Ethernet packets before forwarding the packets,"
and an "MPLS EXP rewrite rule" that "Re-marks the EXP code points of MPLS packets
before forwarding the packets"); Exhibit I at p. 1 ("Of those packets, Layer 3 packets are
marked at egress with DSCP bits 001010"); Exhibit J at p. 1 ("The AppQoS DSCP rewriter
conveys a packet's quality of service through both the forwarding class and a loss
priority."); Exhibit K at p. 2 ("QoS options used within the MPLS network and will
prioritize, limit, and shape any type of traffic based on various options (VLAN-id, DSCP,
p-bit). … It is also possible to use two-stage priority mechanisms. For example, first by
DiffServ Code Point (DSCP) and then by VLAN-id."); Exhibit L ("Differentiated Services
(DiffServ) is a system for tagging (or "marking") traffic at a position within a hierarchy of
priority. Selecting this option maps the eight ScreenOS priority levels (IP Precedence) to
the DiffServ system. … DSCP marking is supported on all platforms and can be configured
with traffic shaping or independently.").

158.   Defendant has been and now is indirectly infringing by way of inducing infringement
by others and/or contributing to the infringement by others of the '286 Patent in the State
of Texas, in this judicial district, and elsewhere in the United States, by, among other things,
making, using, importing, offering for sale, and/or selling, without license or authority,
products for use in systems that fall within the scope of one or more claims of the '286
Patent. Such products include, without limitation, one or more of the Accused Networking
Products. Such products have no substantial non-infringing uses and are for use in systems
that infringe the '286 Patent.  By making, using, importing offering for sale, and/or selling
such products, Defendant injured Blue Spike and is thus liable to Blue Spike for
infringement of the '286 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to

indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Networking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.) Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Networking Products. Defendant had knowledge of the '286 Patent at least as early as the service of this complaint. Defendant has known that the Accused Networking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '286 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '286 Patent under 35 U.S.C. § 271.

159.  Defendant's acts of infringement of the '286 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '286 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

160.   On information and belief, the infringement of the '286 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '286 Patent, including but not limited to at least one or more of the following:

      a.    In the course of its due diligence and freedom to operate analysis;

      b.    Due diligence in relation to its prior litigation with Blue Spike; and

      c.    The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '286 Patent by operation of law.

**COUNT 18:**

**INFRINGEMENT OF U.S. PATENT 8,175,330**

161.   Blue Spike incorporates by reference the allegations in the paragraphs above.

162.   The '330 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

163.   Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '330 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Networking Products, in violation of 35 U.S.C. § 271.

164.   Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '330 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '330 Patent. Specifically, Defendant imports the Accused Networking Products into the United States, operates a website and numerous sales centers that offer for sale and sell the Accused Networking Products (*see* Exhibits A & B), has partnered with numerous resellers

to offer for sale and sell the Accused Networking Products in the United States (*see* Exhibit C), generates revenue from sales of the Accused Networking Products to U.S. customers via said channels, and attends trade shows in the United States where it demonstrates the Accused Networking Products (*see* Exhibit E).

165.    The Accused Networking Products infringe claims of the '330 Patent, such as Claim 2 which teaches

> A method for digital watermarking a digital signal, comprising:
>> identifying, using a processor of a computer, locations within a digital signal which are suitable for embedding one or more bits of a watermark message; and
>> embedding, using said computer, said watermark message into said digital signal at said locations.

The Accused Networking Products use a computer processor to identify potential locations to mark a signal with a DSCP marker indicating signal priority, and then embed the mark in that position (*identifying, using a processor of a computer, locations within a digital signal which are suitable for embedding one or more bits of a watermark message; and embedding, using said computer, said watermark message into said digital signal at said locations*). *See* Exhibit H at p. 2 (indicating the inclusion of "DSCP and DSCP IPv6 rewrite rules" that "Re-mark[] the DSCP code points of IP and IPv6 packets before forwarding the packets," an "IEEE 802.1p rewrite rule" that "Re-marks the IEEE 802.1p code points of Ethernet packets before forwarding the packets," and an "MPLS EXP rewrite rule" that "Re-marks the EXP code points of MPLS packets before forwarding the packets"); Exhibit L ("Differentiated Services (DiffServ) is a system for tagging (or "marking") traffic at a position within a hierarchy of priority. Selecting this option maps the eight ScreenOS

priority levels (IP Precedence) to the DiffServ system. … DSCP marking is supported on all platforms and can be configured with traffic shaping or independently.").

166.   Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '330 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '330 Patent. Such products include, without limitation, one or more of the Accused Networking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '330 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '330 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Networking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig*., 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc*., No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.)  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Networking Products. Defendant had knowledge of the '330 Patent at least as early as the service of this complaint. Defendant has known that the Accused Networking Products infringe the Patents-in-Suit, are especially made and

adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '330 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '330 Patent under 35 U.S.C. § 271.

167.  Defendant's acts of infringement of the '330 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '330 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

168.  On information and belief, the infringement of the '330 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '330 Patent, including but not limited to at least one or more of the following:

  a. In the course of its due diligence and freedom to operate analysis;

  b. Due diligence in relation to its prior litigation with Blue Spike; and

  c. The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '330 Patent by operation of law.

**COUNT 19:**

**INFRINGEMENT OF U.S. PATENT 8,307,213**

169.  Blue Spike incorporates by reference the allegations in the paragraphs above.

170.  The '213 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

171.  Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '213 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Networking Products, in violation of 35 U.S.C. § 271.

172.  Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '213 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '213 Patent. Specifically, Defendant imports the Accused Networking Products into the United States, operates a website and numerous sales centers that offer for sale and sell the Accused Networking Products (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Networking Products in the United States (*see* Exhibit C), generates revenue from sales of the Accused Networking Products to U.S. customers via said channels, and attends trade shows in the United States where it demonstrates the Accused Networking Products (*see* Exhibit E).

173.  The Accused Networking Products infringe claims of the '213 Patent, such as Claim 1 which teaches

> An article of manufacture comprising a nontransitory medium having stored thereon instructions adapted to be executed by a processor, the instructions which, when executed, result in the process comprising:
>> receiving content to be watermarked and at least one digital watermark; and
>> watermarking the content with the received at least one digital watermark using a key comprising information describing where in the content the received at least one digital watermark is to be encoded.

The Accused Networking Products receive a signal and encode a DSCP marker into the signal using a key that indicates where in the signal to embed the marker (*receiving content to be watermarked and at least one digital watermark; and watermarking the content with the received at least one digital watermark using a key comprising information describing where in the content the received at least one digital watermark is to be encoded*). *See* Exhibit H at p. 2 (indicating the inclusion of "DSCP and DSCP IPv6 rewrite rules" that "Re-mark[] the DSCP code points of IP and IPv6 packets before forwarding the packets," an "IEEE 802.1p rewrite rule" that "Re-marks the IEEE 802.1p code points of Ethernet packets before forwarding the packets," and an "MPLS EXP rewrite rule" that "Re-marks the EXP code points of MPLS packets before forwarding the packets"); Exhibit I at p. 1 ("Of those packets, Layer 3 packets are marked at egress with DSCP bits 001010"); Exhibit J at p. 1 ("The AppQoS DSCP rewriter conveys a packet's quality of service through both the forwarding class and a loss priority."); Exhibit K at p. 2 ("QoS options used within the MPLS network and will prioritize, limit, and shape any type of traffic based on various options (VLAN-id, DSCP, p-bit). … It is also possible to use two-stage priority mechanisms. For example, first by DiffServ Code Point (DSCP) and then by VLAN-id."); Exhibit L ("Differentiated Services (DiffServ) is a system for tagging (or "marking") traffic at a position within a hierarchy of priority. Selecting this option maps the eight ScreenOS priority levels (IP Precedence) to the DiffServ system. … DSCP marking is supported on all platforms and can be configured with traffic shaping or independently.").

174.   Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '213 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things,

making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '213 Patent. Such products include, without limitation, one or more of the Accused Networking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '213 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '213 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Networking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.)  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Networking Products. Defendant had knowledge of the '213 Patent at least as early as the service of this complaint. Defendant has known that the Accused Networking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '213 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '213 Patent under 35 U.S.C. § 271.

175.  Defendant's acts of infringement of the '213 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '213 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

176.  On information and belief, the infringement of the '213 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '213 Patent, including but not limited to at least one or more of the following:

    a.    In the course of its due diligence and freedom to operate analysis;

    b.    Due diligence in relation to its prior litigation with Blue Spike; and

    c.    The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '213 Patent by operation of law.

**COUNT 20:**

**INFRINGEMENT OF U.S. PATENT 7,813,506**

177.  Blue Spike incorporates by reference the allegations in the paragraphs above.

178.  The '506 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

179.  Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '506 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Networking Products, in violation of 35 U.S.C. § 271.

180.    Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '506 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '506 Patent. Specifically, Defendant imports the Accused Networking Products into the United States, operates a website and numerous sales centers that offer for sale and sell the Accused Networking Products (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Networking Products in the United States (*see* Exhibit C), generates revenue from sales of the Accused Networking Products to U.S. customers via said channels, and attends trade shows in the United States where it demonstrates the Accused Networking Products (*see* Exhibit E).

181.    The Accused Networking Products infringe claims of the '506 Patent, such as Claim 11 which teaches

> A device for creating differential access to an accessible data object, comprising:
> > a receiver for receiving a data object comprising digital data and file format information;
> > an encoder for encoding independent data into the data object;
> > a scrambler for manipulating the data object based on at least one signal characteristic of the data object wherein the scrambling is performed until at least one signal quality threshold is created for the data object; and
> > a transmitter for transmitting the perceptibly manipulated data object wherein the manipulated data object is associated with at least one selected from the group comprising: a digital watermark; a key; a device; a subscriber; a user; a payment facility; a distribution channel; authentication information; or combinations thereof.

The Accused Networking Products generate a watermark identifying a packet and place the watermark in the packet for the purpose of differentiating it from other packets (hence

the term "Differentiated Services Code Point"). *See* Exhibit K at p. 2 ("QoS options used within the MPLS network and will prioritize, limit, and shape any type of traffic based on various options (VLAN-id, DSCP, p-bit). … It is also possible to use two-stage priority mechanisms. For example, first by DiffServ Code Point (DSCP) and then by VLAN-id."); Exhibit L ("Differentiated Services (DiffServ) is a system for tagging (or "marking") traffic at a position within a hierarchy of priority. Selecting this option maps the eight ScreenOS priority levels (IP Precedence) to the DiffServ system. … DSCP marking is supported on all platforms and can be configured with traffic shaping or independently."). Before transmitting data, the Accused Networking Products generate a watermark identifying a packet and place the watermark in the packet (*an encoder for encoding*; *a scrambler for manipulating*). *See* Exhibit H at p. 2 (indicating the inclusion of "DSCP and DSCP IPv6 rewrite rules" that "Re-mark[] the DSCP code points of IP and IPv6 packets before forwarding the packets," an "IEEE 802.1p rewrite rule" that "Re-marks the IEEE 802.1p code points of Ethernet packets before forwarding the packets," and an "MLS EXP rewrite rule" that "Re-marks the EXP code points of MPLS packets before forwarding the packets"); Exhibit I at p. 1 ("Of those packets, Layer 3 packets are marked at egress with DSCP bits 001010"); Exhibit J at p. 1 ("The AppQoS DSCP rewriter conveys a packet's quality of service through both the forwarding class and a loss priority.").

182.  Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '506 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '506

Patent. Such products include, without limitation, one or more of the Accused Networking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '506 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '506 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Networking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc*., No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.)  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Networking Products. Defendant had knowledge of the '506 Patent at least as early as the service of this complaint. Defendant has known that the Accused Networking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '506 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '506 Patent under 35 U.S.C. § 271.

183.  Defendant's acts of infringement of the '506 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a

result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '506 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

184.   On information and belief, the infringement of the '506 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '506 Patent, including but not limited to at least one or more of the following:

     a.     In the course of its due diligence and freedom to operate analysis;

     b.     Due diligence in relation to its prior litigation with Blue Spike; and

     c.     The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '506 Patent by operation of law.

## COUNT 21:
## INFRINGEMENT OF U.S. PATENT 8,265,278

185.   Blue Spike incorporates by reference the allegations in the paragraphs above.

186.   The '278 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

187.   Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '278 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Networking Products, in violation of 35 U.S.C. § 271.

188.   Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '278 Patent and/or directing, controlling, and obtaining

benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '278 Patent. Specifically, Defendant imports the Accused Networking Products into the United States, operates a website and numerous sales centers that offer for sale and sell the Accused Networking Products (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Networking Products in the United States (*see* Exhibit C), generates revenue from sales of the Accused Networking Products to U.S. customers via said channels, and attends trade shows in the United States where it demonstrates the Accused Networking Products (*see* Exhibit E).

189.    The Accused Networking Products infringe claims of the '278 Patent, such as Claim 1 which teaches

> A method comprising:
>     receiving a digital signal in a system including at least one processor;
>     selecting, using said at least one processor, at least one signal characteristic of the digital signal;
>     manipulating, using said at least one processor, the at least one signal characteristic to degrade the digital signal;
>     associating, using said at least one processor, at least one digital watermark with the degraded digital signal.

The Accused Networking Products use processors to receive a signal and then promote or degrade its priority based on its characteristics (*receiving a digital signal in a system including at least one processor; selecting, using said at least one processor, at least one signal characteristic of the digital signal; manipulating, using said at least one processor, the at least one signal characteristic to degrade the digital signal*). *See* Exhibit K at p. 2 ("QoS options used within the MPLS network and will prioritize, limit, and shape any type of traffic based on various options (VLAN-id, DSCP, p-bit). … It is also possible to use

two-stage priority mechanisms. For example, first by DiffServ Code Point (DSCP) and then by VLAN-id."); Exhibit L ("Differentiated Services (DiffServ) is a system for tagging (or "marking") traffic at a position within a hierarchy of priority. Selecting this option maps the eight ScreenOS priority levels (IP Precedence) to the DiffServ system. … DSCP marking is supported on all platforms and can be configured with traffic shaping or independently."). The Accused Networking Products then mark the signal with a DSCP watermark (*associating, using said at least one processor, at least one digital watermark with the degraded digital signal*). *See* Exhibit H at p. 2 (indicating the inclusion of "DSCP and DSCP IPv6 rewrite rules" that "Re-mark[] the DSCP code points of IP and IPv6 packets before forwarding the packets," an "IEEE 802.1p rewrite rule" that "Re-marks the IEEE 802.1p code points of Ethernet packets before forwarding the packets," and an "MLS EXP rewrite rule" that "Re-marks the EXP code points of MPLS packets before forwarding the packets"); Exhibit I at p. 1 ("Of those packets, Layer 3 packets are marked at egress with DSCP bits 001010"); Exhibit J at p. 1 ("The AppQoS DSCP rewriter conveys a packet's quality of service through both the forwarding class and a loss priority.").

190.  Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '278 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '278 Patent. Such products include, without limitation, one or more of the Accused Networking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '278 Patent.  By making, using, importing offering for sale, and/or selling

such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '278 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Networking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at \*3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.) Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Networking Products. Defendant had knowledge of the '278 Patent at least as early as the service of this complaint. Defendant has known that the Accused Networking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '278 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '278 Patent under 35 U.S.C. § 271.

191.  Defendant's acts of infringement of the '278 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '278

Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

192.   On information and belief, the infringement of the '278 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '278 Patent, including but not limited to at least one or more of the following:

      a.    In the course of its due diligence and freedom to operate analysis;

      b.    Due diligence in relation to its prior litigation with Blue Spike; and

      c.    The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '278 Patent by operation of law.

**COUNT 22:**

**INFRINGEMENT OF U.S. PATENT 7,664,264**

193.   Blue Spike incorporates by reference the allegations in the paragraphs above.

194.   The '264 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

195.   Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '264 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Networking Products, in violation of 35 U.S.C. § 271.

196.   Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '264 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '264 Patent. Specifically, Defendant imports the Accused Networking Products into the

United States, operates a website and numerous sales centers that offer for sale and sell the

Accused Networking Products (*see* Exhibits A & B), has partnered with numerous resellers

to offer for sale and sell the Accused Networking Products in the United States (*see* Exhibit

C), generates revenue from sales of the Accused Networking Products to U.S. customers

via said channels, and attends trade shows in the United States where it demonstrates the

Accused Networking Products (*see* Exhibit E).

197.    The Accused Networking Products infringe claims of the '264 Patent, such as

Claim 7 which teaches

> A method for analyzing a data signal that has
> been encoded with at least one digital
> watermark, said method comprising:
>     obtaining a data signal;
>     dividing the data signal into a plurality of
>         data substreams;
>     analyzing at least one of the plurality of data
>         substreams to detect at least one digital
>         watermark; and
>     determining whether the data signal is
>         authorized based on the analyzing step.

Defendant's Accused Networking Products obtain a signal and divide it into packets,

analyze the packets to find their DSCP marks, which indicates priority level. *See* Exhibit

H at p. 2 (indicating the inclusion of "DSCP and DSCP IPv6 rewrite rules" that "Re-mark[]

the DSCP code points of IP and IPv6 packets before forwarding the packets," an "IEEE

802.1p rewrite rule" that "Re-marks the IEEE 802.1p code points of Ethernet packets

before forwarding the packets," and an "MLS EXP rewrite rule" that "Re-marks the EXP

code points of MPLS packets before forwarding the packets"); Exhibit I at p. 1 ("Of those

packets, Layer 3 packets are marked at egress with DSCP bits 001010"). The Accused

Networking Products then authorize or prioritize the signal based on the mark. Exhibit J at

p. 1 ("The AppQoS DSCP rewriter conveys a packet's quality of service through both the

forwarding class and a loss priority."); Exhibit K at p. 2 ("QoS options used within the MPLS network and will prioritize, limit, and shape any type of traffic based on various options (VLAN-id, DSCP, p-bit). … It is also possible to use two-stage priority mechanisms. For example, first by DiffServ Code Point (DSCP) and then by VLAN-id."); Exhibit L ("Differentiated Services (DiffServ) is a system for tagging (or "marking") traffic at a position within a hierarchy of priority. Selecting this option maps the eight ScreenOS priority levels (IP Precedence) to the DiffServ system. … DSCP marking is supported on all platforms and can be configured with traffic shaping or independently.").

198.  Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '264 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '264 Patent. Such products include, without limitation, one or more of the Accused Networking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '264 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '264 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Networking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its

customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.) Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Networking Products. Defendant had knowledge of the '264 Patent at least as early as the service of this complaint. Defendant has known that the Accused Networking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '264 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '264 Patent under 35 U.S.C. § 271.

199.  Defendant's acts of infringement of the '264 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '264 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

200.  On information and belief, the infringement of the '264 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '264 Patent, including but not limited to at least one or more of the following:

    a.  In the course of its due diligence and freedom to operate analysis;

    b.  Due diligence in relation to its prior litigation with Blue Spike; and

    c.  The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '264 Patent by operation of law.

## COUNT 23:

## INFRINGEMENT OF U.S. PATENT 7,159,116

201. Blue Spike incorporates by reference the allegations in the paragraphs above.

202. The '116 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

203. Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '116 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Networking Products, in violation of 35 U.S.C. § 271.

204. Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '116 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '116 Patent. Specifically, Defendant imports the Accused Networking Products into the United States, operates a website and numerous sales centers that offer for sale and sell the Accused Networking Products (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Networking Products in the United States (*see* Exhibit C), generates revenue from sales of the Accused Networking Products to U.S. customers via said channels, and attends trade shows in the United States where it demonstrates the Accused Networking Products (*see* Exhibit E).

205. The Accused Networking Products infringe claims of the '116 Patent, such as Claim 14 which teaches

A device for conducting a trusted transaction between at least two parties who have agreed to transact, comprising:

means for uniquely identifying information selected from the group consisting of a unique identification of one of the parties, a unique identification of the transaction, a unique identification of value added information to be transacted, a unique identification of a value adding component;

a steganographic cipher for generating said unique identification information, wherein the steganographic cipher is governed by at least the following elements: a predetermined key, a predetermined message, and a predetermined carrier signal; and

a means for verifying an agreement to transact between the parties.

Defendant's Accused Networking Products exchange information between two entities that have agreed to communicate (*a device for conducting a trusted transaction between at least two parties*; *a means for verifying an agreement to transact*). Before transmitting data, the Accused Networking Products generate a watermark such as a DSCP mark that identifies the priority of a packet and place the watermark in the packet (*a steganographic cipher for generating said unique identification information*). *See* Exhibit H at p. 2 (indicating the inclusion of "DSCP and DSCP IPv6 rewrite rules" that "Re-mark[] the DSCP code points of IP and IPv6 packets before forwarding the packets," an "IEEE 802.1p rewrite rule" that "Re-marks the IEEE 802.1p code points of Ethernet packets before forwarding the packets," and an "MLS EXP rewrite rule" that "Re-marks the EXP code points of MPLS packets before forwarding the packets"); Exhibit I at p. 1 ("Of those packets, Layer 3 packets are marked at egress with DSCP bits 001010"); Exhibit J at p. 1 ("The AppQoS DSCP rewriter conveys a packet's quality of service through both the forwarding class and a loss priority."); Exhibit K at p. 2 ("QoS options used within the MPLS network and will

prioritize, limit, and shape any type of traffic based on various options (VLAN-id, DSCP, p-bit). … It is also possible to use two-stage priority mechanisms. For example, first by DiffServ Code Point (DSCP) and then by VLAN-id."); Exhibit L ("Differentiated Services (DiffServ) is a system for tagging (or "marking") traffic at a position within a hierarchy of priority. Selecting this option maps the eight ScreenOS priority levels (IP Precedence) to the DiffServ system. … DSCP marking is supported on all platforms and can be configured with traffic shaping or independently.").

206.   Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '116 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '116 Patent. Such products include, without limitation, one or more of the Accused Networking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '116 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '116 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Networking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and

resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.) Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Networking Products. Defendant had knowledge of the '116 Patent at least as early as the service of this complaint. Defendant has known that the Accused Networking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '116 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '116 Patent under 35 U.S.C. § 271.

207.  Defendant's acts of infringement of the '116 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '116 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

208.  On information and belief, the infringement of the '116 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '116 Patent, including but not limited to at least one or more of the following:

a.    In the course of its due diligence and freedom to operate analysis;

b.    Due diligence in relation to its prior litigation with Blue Spike; and

c.    The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '116 Patent by operation of law.

## COUNT 24:
## INFRINGEMENT OF U.S. PATENT 8,538,011

209.  Blue Spike incorporates by reference the allegations in the paragraphs above.

210.  The '011 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

211.  Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '011 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Networking Products, in violation of 35 U.S.C. § 271.

212.   Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '011 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '011 Patent. Specifically, Defendant imports the Accused Networking Products into the United States, operates a website and numerous sales centers that offer for sale and sell the Accused Networking Products (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Networking Products in the United States (*see* Exhibit C), generates revenue from sales of the Accused Networking Products to U.S. customers via said channels, and attends trade shows in the United States where it demonstrates the Accused Networking Products (*see* Exhibit E).

213.   The Accused Networking Products infringe claims of the '011 Patent, such as Claim 36 which teaches

A device for conducting trusted transactions between at
least two parties, comprising:

    a steganographic cipher;

    a controller for receiving input data or outputting
      output data; and

    at least one input/output connection,

    wherein the device has a device identification code
      stored in the device;

    a steganographically ciphered software application;

    wherein said steganographically ciphered software
      application has been subject to a steganographic
      cipher for serialization;

    wherein said device is configured to
      steganographically cipher both value-added
      information and at least one value-added component
      associated with said value-added information;

    wherein said steganographic cipher receives said
      output data, steganographically ciphers said output
      data using a key, to define steganographically
      ciphered output data, and transmits said
      steganographically ciphered output data to said at
      least one input/output connection.

Defendant's Accused Networking Products exchange information between two entities that

have agreed to communicate, and contain codes that identify them (*a device for conducting*

*a trusted transaction between at least two parties*). Before transmitting data, the Accused

Networking Products generate a watermark such as a DSCP mark that identifies the priority

of a packet and place the watermark in the packet (*a steganographically ciphered software*

*application; wherein said steganographically ciphered software application has been*

*subject to a steganographic cipher for serialization; wherein said device is configured to*

*steganographically cipher both value-added information and at least one value-added*

*component associated with said value-added information; wherein said steganographic*

*cipher receives said output data, steganographically ciphers said output data using a key,*

*to define steganographically ciphered output data, and transmits said steganographically*

*ciphered output data to said at least one input/output connection*). *See* Exhibit H at p. 2

(indicating the inclusion of "DSCP and DSCP IPv6 rewrite rules" that "Re-mark[] the DSCP code points of IP and IPv6 packets before forwarding the packets," an "IEEE 802.1p rewrite rule" that "Re-marks the IEEE 802.1p code points of Ethernet packets before forwarding the packets," and an "MLS EXP rewrite rule" that "Re-marks the EXP code points of MPLS packets before forwarding the packets"); Exhibit I at p. 1 ("Of those packets, Layer 3 packets are marked at egress with DSCP bits 001010"); Exhibit J at p. 1 ("The AppQoS DSCP rewriter conveys a packet's quality of service through both the forwarding class and a loss priority."); Exhibit K at p. 2 ("QoS options used within the MPLS network and will prioritize, limit, and shape any type of traffic based on various options (VLAN-id, DSCP, p-bit). … It is also possible to use two-stage priority mechanisms. For example, first by DiffServ Code Point (DSCP) and then by VLAN-id."); Exhibit L ("Differentiated Services (DiffServ) is a system for tagging (or "marking") traffic at a position within a hierarchy of priority. Selecting this option maps the eight ScreenOS priority levels (IP Precedence) to the DiffServ system. … DSCP marking is supported on all platforms and can be configured with traffic shaping or independently.").

214.  Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '011 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '011 Patent. Such products include, without limitation, one or more of the Accused Networking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '011 Patent.  By making, using, importing offering for sale, and/or selling

such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '011 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Networking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig*., 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc*., No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.) Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Networking Products. Defendant had knowledge of the '011 Patent at least as early as the service of this complaint. Defendant has known that the Accused Networking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '011 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '011 Patent under 35 U.S.C. § 271.

215.  Defendant's acts of infringement of the '011 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '011

Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

216.  On information and belief, the infringement of the '011 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '011 Patent, including but not limited to at least one or more of the following:

      a.    In the course of its due diligence and freedom to operate analysis;

      b.    Due diligence in relation to its prior litigation with Blue Spike; and

      c.    The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '011 Patent by operation of law.

**COUNT 25:**

**INFRINGEMENT OF U.S. PATENT 9,021,602**

217.  Blue Spike incorporates by reference the allegations in the paragraphs above.

218.  The '602 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

219.  Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '602 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

220.  Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '602 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '602 Patent. Specifically, Defendant imports the Accused Products into the United

States, operates a website and numerous sales centers that offer for sale and sell the

Accused Products (*see* Exhibits A & B), has partnered with numerous resellers to offer for

sale and sell the Accused Products in the United States (*see* Exhibit C), generates revenue

from sales of the Accused Products to U.S. customers via said channels, and attends trade

shows in the United States where it demonstrates the Accused Products (*see* Exhibit E).

221.   The Accused Products infringe claims of the '602 Patent, such as Claim 1 which

teaches

> A computer-based method for accessing functionality provided by an application software comprising:
> > storing said application software in non-transient memory of a computer;
> > said application software in said computer prompting a user to enter into said computer personalization information;
> > said application software storing, in said non-transient memory, in a personalization data resource, both computer configuration information of said computer, and a license code entered in response to said prompting;
> > said application software in said computer generating a proper decoding key, said generating comprising using said license code; and
> > wherein said application software, in said computer, cannot access at least one encoded code resource of said application software, unless said license code is stored in said personalization data resource.

The Accused Products utilize Juniper's License Management System (LMS) to activate

their associated software programs, elements, applications, and/or features (*a computer-

based method for accessing functionality provided by an application software comprising:

storing said application software in non-transient memory of a computer*). *See* Exhibit M

("Most of our products … use license activation keys to enable features, capacity and

subscriptions in individual systems, appliances and standalone software products."). Upon prompting, the Accused Products require a user to enter a license key, which is generated the LMS from the device's serial number and an authorization code (*said application software in said computer prompting a user to enter into said computer personalization information; said application software storing, in said non-transient memory, in a personalization data resource, both computer configuration information of said computer, and a license code entered in response to said prompting; said application software in said computer generating a proper decoding key, said generating comprising using said license code*. *See* Exhibit N ("Gather your Authorization Code and Device serial number. … The Authorization Code is required to generate your license key—it is not the actual license key. … Juniper License Management System provides you with your license key … Click *Maintain > Licenses* and enter the license key.). If the user doesn't enter a proper license key, the feature on the Accused Product will not work (*wherein said application software, in said computer, cannot access at least one encoded code resource of said application software, unless said license code is stored in said personalization data resource*). *See* Exhibit M ("A customer must purchase the license rights and then apply a License Activation Key to unlock that feature or capacity in the O/S or software.")

222.  Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '602 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '602 Patent. Such products include, without limitation, one or more of the Accused Products.

Such products have no substantial non-infringing uses and are for use in systems that infringe the '602 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '602 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.) Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '602 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '602 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '602 Patent under 35 U.S.C. § 271.

223. Defendant's acts of infringement of the '602 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '602

Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

224. On information and belief, the infringement of the '602 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '602 Patent, including but not limited to at least one or more of the following:

    a.    In the course of its due diligence and freedom to operate analysis;

    b.    Due diligence in relation to its prior litigation with Blue Spike; and

    c.    The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '602 Patent by operation of law.

**COUNT 26:**

**INFRINGEMENT OF U.S. PATENT 9,104,842**

225. Blue Spike incorporates by reference the allegations in the paragraphs above.

226. The '842 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

227. Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '842 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

228. Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '842 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '842 Patent. Specifically, Defendant imports the Accused Products into the United

States, operates a website and numerous sales centers that offer for sale and sell the Accused Products (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Products in the United States (*see* Exhibit C), generates revenue from sales of the Accused Products to U.S. customers via said channels, and attends trade shows in the United States where it demonstrates the Accused Products (*see* Exhibit E).

229.    The Accused Products infringe claims of the '842 Patent, such as Claim 11 which teaches

> A method for licensed software use, the method comprising:
>> loading a software product on a computer, said computer comprising a processor, memory, an input, and an output, so that said computer is programmed to execute said software product;
>> said software product outputting a prompt for input of license information; and
>> said software product using license information entered via said input in response to said prompt in a routine designed to decode a first license code encoded in said software product.

The Accused Products utilize Juniper's License Management System (LMS) to activate their associated software programs, elements, applications, and/or features (*[a] method for licensed software use, the method comprising: loading a software product on a computer, said computer comprising a processor, memory, an input, and an output, so that said computer is programmed to execute said software product*). *See* Exhibit M ("Most of our products … use license activation keys to enable features, capacity and subscriptions in individual systems, appliances and standalone software products."). Upon prompting, the Accused Products require a user to enter a license key (*said software product outputting a prompt for input of license information*). *See* Exhibit N ("Click *Maintain > Licenses* and

enter the license key."). The license key is used to decode a code and activate the software (*said software product using license information entered via said input in response to said prompt in a routine designed to decode a first license code encoded in said software product*). *See* Exhibit M ("On most appliances, to use a purchased product feature requires the customer to 'unlock' the feature or capacity.").

230.   Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '842 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '842 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '842 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '842 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig*., 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc*., No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.)  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused

Products. Defendant had knowledge of the '842 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '842 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '842 Patent under 35 U.S.C. § 271.

231.  Defendant's acts of infringement of the '842 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '842 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

232.  On information and belief, the infringement of the '842 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '842 Patent, including but not limited to at least one or more of the following:

a.   In the course of its due diligence and freedom to operate analysis;

b.   Due diligence in relation to its prior litigation with Blue Spike; and

c.   The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '842 Patent by operation of law.

## REQUEST FOR RELIEF

Blue Spike incorporates each of the allegations in the paragraphs above and respectfully asks the Court to:

(a)    enter a judgment that Defendant has directly infringed, contributorily infringed, and/or induced infringement of one or more claims of each of the Patents-in-Suit;

(b)    enter a judgment awarding Blue Spike all damages adequate to compensate it for Defendant's direct infringement of, contributory infringement of, or inducement to infringe, the Patents-in-Suit, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

(c)    enter a judgment awarding treble damages pursuant to 35 U.S.C. § 284 for Defendant's willful infringement of one or more of the Patents-in-Suit;

(d)    issue a preliminary injunction and thereafter a permanent injunction enjoining and restraining Defendant, their directors, officers, agents, servants, employees, and those acting in privity or in concert with them, and their subsidiaries, divisions, successors, and assigns, from further acts of infringement, contributory infringement, or inducement of infringement of the Patents-in-Suit;

(e)    enter a judgment requiring Defendant to pay the costs of this action, including all disbursements, and attorneys' fees as provided by 35 U.S.C. § 285, together with prejudgment interest; and

(f)    award Blue Spike all other relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Blue Spike demands a jury trial on all issues that may be determined by a jury.

Respectfully submitted,

/s/ Randall T. Garteiser
Randall T. Garteiser
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
**GARTEISER HONEA, PLLC**
119 W Ferguson St.
Tyler, Texas 75702
Tel/Fax: (888) 908-4400

Kirk J. Anderson
  California Bar No. 289043
**GARTEISER HONEA, PLLC**
44 North San Pedro Road
San Rafael, California 94903
Telephone: (415) 785-3762
Facsimile: (415) 785-3805

*Counsel for Blue Spike, LLC*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on this date stamped above.

 /s/ Randall T. Garteiser   
Randall T. Garteiser