## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **BLUE SPIKE, LLC** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **JUNIPER NETWORKS, INC.** | § | JURY TRIAL DEMANDED |
| | § | |
| *Defendant.* | § | |
| | § | |
| | § | |
| | § | |

### FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT




Plaintiff Blue Spike, LLC files this amended complaint against Defendant Juniper

Networks, Inc. ("Juniper") alleging fourteen (14) counts of infringement of the following

Patents-in-Suit:

**Blue Spike's Packet Transfer Patents:**

1.      U.S. Patent No. 7,287,275, titled "Methods, Systems and Devices for Packet Watermarking and Efficient Provisioning of Bandwidth" (the '275 Patent);

2.      U.S. Patent No. 8,473,746, titled "Methods, Systems and Devices for Packet Watermarking and Efficient Provisioning of Bandwidth" (the '746 Patent);

3.      U.S. Patent No. 8,706,570, titled "Methods, Systems and Devices for Packet Watermarking and Efficient Provisioning of Bandwidth" (the '570 Patent);

4.      Reissued U.S. Patent No. RE44,222, titled "Methods, Systems and Devices for Packet Watermarking and Efficient Provisioning of Bandwidth" (the '222 Patent);

5.      Reissued U.S. Patent No. RE44,307, titled "Methods, Systems and Devices for Packet Watermarking and Efficient Provisioning of Bandwidth" (the '307 Patent, and collectively with U.S. Patent Nos. 7,287,275, 8,473,746, 8,706,570, RE44,222, and RE44,307, the "Packet Transfer Patents");

**Blue Spike's Watermarking Patents**:

6.      U.S. Patent No. 7,647,502, titled "Optimization Methods for the Insertion, Protection, and Detection of Digital Watermarks in Digitized Data" (the '502 Patent);

7.      U.S. Patent No. 7,987,371, titled "Optimization Methods for the Insertion, Protection, and Detection of Digital Watermarks in Digitized Data" (the '371 Patent);

8.      U.S. Patent No. 8,161,286, titled "Method and System for Digital Watermarking" (the '286 Patent);

9.      U.S. Patent No. 8,307,213, titled "Method and System for Digital Watermarking" (the '213 Patent, and collectively with U.S. Patent Nos. 7,647,502, 7,987,371, and 8,161,286, the "Watermarking Patents");

**Blue Spike's Open Access Patent:**

10.     U.S. Patent No. 7,813,506, titled "System and Methods for Permitting Open Access to Data Objects and for Securing Data within the Data Objects" (the '506 Patent, or the "Open Access Patent");

**Blue Spike's Trusted Transactions Patents:**

11.     U.S. Patent No. 7,159,116, titled "Systems, Methods and Devices for Trusted Transactions" (the '116 Patent);

12.     U.S. Patent No. 8,538,011, titled "Systems, Methods and Devices for Trusted Transactions" (the '011 Patent, and collectively with U.S. Patent 7,159,116, the "Trusted Transactions Patents");

**Blue Spike's Product Key Patents:**

13.     U.S. Patent No. 9,021,602, titled "Data Protection Method and Device" (the '602 Patent); and

14.     U.S. Patent No. 9,104,842, titled "Data Protection Method and Device" (the '842 Patent, and collectively with U.S. Patent 9,021,602, the "Product Key Patents").

## NATURE OF THE SUIT

1.     This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

## PARTIES

2.    Plaintiff Blue Spike, LLC is a Texas limited liability company and has its headquarters and principal place of business at 1820 Shiloh Road, Suite 1201-C, Tyler, Texas 75703. Blue Spike, LLC is the assignee of the Patents-in-Suit, and has ownership of all substantial rights in them, including the rights to grant sublicenses, to exclude others from practicing the inventions taught therein, and to sue and obtain damages and other relief for past and future acts of infringement.

3.    On information and belief, Juniper Networks, Inc. is a company organized and existing under the laws of California, with a principal place of business at 1133 Innovation Way, Sunnyvale, California 94089. Juniper Networks, Inc. may be served through its registered agent, CT Corporation System, at 1999 Bryan St., Suite 900, Dallas, Texas 75201.

## JURISDICTION AND VENUE

4.    This lawsuit is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 101 *et seq.* The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a), and 1367.

5.    The Court has personal jurisdiction over Defendant for at least four reasons: (1) Defendant has committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District and elsewhere in Texas; (2) Defendant regularly does business or solicits business in the District and in Texas; (3) Defendant engages in other persistent courses of conduct and derives substantial revenue from products and/or services provided to individuals in the District and in Texas; and (4) Defendant has purposefully established substantial, systematic, and

continuous contacts with the District and should reasonably expect to be haled into court here.

6.     Specifically, Defendant operates a website that solicits sales of the Accused Networking Products by consumers in this District and Texas (*see* Exhibit A); Defendant operates various sales offices in the United States (*see* Exhibit B); Defendant has partnered with numerous resellers and distributors in the United State and Texas to sell the Accused Networking Products (*see* Exhibit C); Defendant offers telephonic and electronic support services to customers in this District and Texas (*see* Exhibit D); Defendant offers software for download by customers in this District and Texas (*see*, *e.g.*, Exhibit E); and Defendant has a registered agent for service in Texas (*see* above). Given these extensive contacts, the Court's exercise of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice.

7.     Thus, the Court's exercise of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice.

8.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) because Defendant does business in the State of Texas, has committed acts of infringement in Texas and in the District, a substantial part of the events or omissions giving rise to Blue Spike's injury happened in the District, and Defendant is subject to personal jurisdiction in the District.

## FACTUAL BACKGROUND

9.     Protection of intellectual property is a prime concern for creators and publishers of digitized copies of copyrightable works, such as musical recordings, movies, video

games, and computer software. Blue Spike founder Scott Moskowitz pioneered—and continues to invent—technology that makes such protection possible.

10.     Moskowitz is a senior member of the Institute of Electrical and Electronics Engineers (IEEE), a member of the Association for Computing Machinery, and the International Society for Optics and Photonics (SPIE). As a senior member of the IEEE, Moskowitz has peer-reviewed numerous conference papers and has submitted his own publications.

11.     Moskowitz is an inventor of more than 100 patents, in the areas of forensic watermarking, signal abstracts, data security, software watermarks, product license keys, deep packet inspection, license code for authorized software, and bandwidth securitization, among others.

12.     The National Security Agency (NSA) even took interest in his work after he filed one of his early patent applications. The NSA made the application classified under a "secrecy order" while it investigated his pioneering innovations and their impact on national security.

13.     As an industry trailblazer, Moskowitz has been a public figure and an active author on technologies related to protecting and identifying software and multimedia content. A 1995 *New York Times* article—titled "TECHNOLOGY: DIGITAL COMMERCE; 2 plans for watermarks, which can bind proof of authorship to electronic works"—recognized Moskowitz's company as one of two leading software start-ups in this newly created field. *Forbes* also interviewed Moskowitz as an expert for "Cops Versus Robbers in Cyberspace," a September 9, 1996 article about the emergence of

digital watermarking and rights-management technology. He has also testified before the Library of Congress regarding the Digital Millennium Copyright Act.

14.     Moskowitz has spoken to the RSA Data Security Conference, the International Financial Cryptography Association, Digital Distribution of the Music Industry, and many other organizations about the business opportunities that digital watermarking creates. Moskowitz also authored *So This Is Convergence?*, the first book of its kind about secure digital-content management. This book has been downloaded over a million times online and has sold thousands of copies in Japan, where Shogakukan published it under the name *Denshi Skashi*, literally "electronic watermark." Moskowitz was asked to author the introduction to *Multimedia Security Technologies for Digital Rights Management*, a 2006 book explaining digital-rights management. Moskowitz authored a paper for the 2002 International Symposium on Information Technology, titled "What is Acceptable Quality in the Application of Digital Watermarking: Trade-offs of Security, Robustness and Quality." He also wrote an invited 2003 article titled "Bandwidth as Currency" for the *IEEE Journal*, among other publications.

15.     Moskowitz and Blue Spike continue to invent technologies that protect intellectual property from unintended use or unauthorized copying.

### THE ACCUSED PRODUCTS

16.     Defendant designs, develops, manufactures and/or provides products, services and/or software applications that employ watermarking technology that infringes one or more claims of the Patents-in-Suit (the "Accused Products").

17.     The Accused Products are comprised of the Accused Networking Products and the Additional Accused Products.

18.    The Accused Networking Products include, but are not limited to, Defendant's ACX-Series Routers (including, but not limited to, its ACX500, ACX1000, ACX1100, ACX2100, ACX2200, ACX4000, ACS5048, and ACX5096 models), Defendant's EX-Series Switches (including, but not limited to, its EX2200, EX2300, EX2500, EX3200, EX3300, EX3400, EX4200, EX4300, EX4500, EX4550, EX4600, EX6210, EX8208, EX8216, EX9204, EX9208, and EX9214 models), Defendant's M-Series Routers (including, but not limited to, its M7i, M10i, M120, and M320 models), Defendant's MX-Series Routers (including, but not limited to, its MX80, MX120, MX240, MX480, and MX960 models), Defendant's PTX-Series Routers (including, but not limited to, its PTX1000, PTX3000, and PTX5000 models), Defendant's SRX-Series Gateways (including, but not limited to, its SRX110, SRX1400, SRX1500, SRX220, SRX300, SRX3400, SRX3600, SRX4000, SRX5400, SRX550, SRX5600, and SRX5800 models), and Defendant's T-Series Routers (including, but not limited to, its T320, T640, T1600, and T4000 models).

19.    The Accused Networking Products infringe the Packet Transfer Patents, the Watermarking Patents, the Open Access Patent, and the Trusted Transactions Patents.

20.    The Additional Accused Products include, but are not limited to, those in the following Juniper products and services and/or their associated software programs, elements, applications, and/or features: Advanced Insight Manager, Application Acceleration, Application Usage Manager, BTI Series, CTP Series, Cloud Analytics Engine, Connectivity Services Director, Content Director, Contrail, Cross Provisioning Platform, cSRX, Edge Services Director, J Series, JA Series, JSA Series, JSA Virtual Appliance, Junos Address Aware, Junos Application Aware, Junos Content Security,

Junos Network Secure, Junos OS, Junos Space Management Applications, Junos Space Network Management Platform, Junos Space SDK, Junos Space Service Aware, Junos Space Service Insight, Junos Space Service Now, Junos Subscriber Aware, Junos Traffic Vision, Junos VPN Site Secure, Junos Video Focus, Junosphere, Junosphere Bank, LN Series, Media Flow, MobileNext, Mobile VAS, NFX Series, Network Director, NorthStar Controller, OCX Series, OpNet, proNX Management Applications proNX SLA Portal proNX Service Manager, QFX Series, SA Series, SBR Carrier, ScreenOS, SRC Series, SRX Series, Security Director, Sky Advanced Threat Prevention, Spotlight Secure, StreamScope, T4000, Telchemy, Virtual Director, vGW, vMX, vSRX, and WANDL IP/MPLS View. *See* Exhibit M ("Most of our products—outside of our higher-end IPG products—use license activation keys to enable features, capacity and subscriptions in individual systems, appliances and standalone software products.").

21.    All of the Accused Products—the Accused Networking Products and the Additional Accused Products—infringe the Product Key Patents.

22.    The Accused Products are practicing methods, devices, and systems taught by Blue Spike's Patents-in-Suit.

23.    Yet Defendant has not obtained a license for any of Blue Spike's patented technologies.

24.    Although Blue Spike is not obligated to identify specific claims or claim elements in its complaint, it does so below for Defendant's benefit. *See Rmail Ltd. v. Right Signature, LLC*, 2:11-CV-300-JRG, 2012 WL 2595305, at *2 (E.D. Tex. July 5, 2012) ("Plaintiffs are not required to identify specific claims or claim elements at this stage of the litigation.").

## COUNT 1:

## INFRINGEMENT OF U.S. PATENT 7,287,275

25. Blue Spike incorporates by reference the allegations in the paragraphs above.

26. The '275 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

27. Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '275 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Networking Products, in violation of 35 U.S.C. § 271.

28. Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '275 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '275 Patent. Specifically, Defendant imports the Accused Networking Products into the United States, operates a website and numerous sales centers that offer for sale and sell the Accused Networking Products (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Networking Products in the United States (*see* Exhibit C), generates revenue from sales of the Accused Networking Products to U.S. customers via said channels, and attends trade shows in the United States where it demonstrates the Accused Networking Products (*see* Exhibit E).

29. The Accused Networking Products infringe Claims 1-4 and 15-17 of the '275 Patent. For example, Claim 1 teaches

> A method for transmitting a stream of data, comprising:
> receiving a stream of data;

organizing the stream of data into a plurality of packets;

generating a packet watermark associated with the stream of data wherein the packet watermark enables identification of at least one of the plurality of packets;

combining the packet watermark with each of the plurality of packets to form watermarked packets; and

transmitting at least one of the watermarked packets across a network.

Defendant's Accused Networking Products transmit data in packets (*a method for transmitting a stream of data, organizing the stream of data into a plurality of packets*). *See*, *e.g.*, Exhibit G.  Before doing so, the Accused Networking Products generate a DSCP mark or other classifier that identifies a packet's priority level (*generating a watermark associated with the stream of data wherein the packet watermark enables identification*) and write that mark into the packet (*combining the packet watermark with each of the plurality of packets to form watermarked packets; transmitting at least one of the watermarking packets across a network*). *See* Exhibit 1 at p. 23; Exhibit 2 at p. 1 ("Juno OS Class of Service (CoS) … allows you to rewrite the Differentiated Services code point (DSCP) or IEEE 802.1p code-point bits of packets leaving an interface"); Exhibit 3 at p. 1 ("Differentiated Services (DiffServ) is a system for tagging (or 'marking') traffic at a position within a hierarchy of priority. … DSCP marking is supported on all platforms and can be configured with traffic shaping or independently."); Exhibit 4 at p. 1 ("Packet classification maps incoming packets to a particular class-of-service (CoS) servicing level. Classifiers map packets to a forwarding class and a loss priority, and assign packets to output queues based on the forwarding class."); Exhibit 5 at p. 1 ("Of those packets, Layer 3 packets are marked at egress with DSCP bits 001010").

30.   Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '275 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '275 Patent. Such products include, without limitation, one or more of the Accused Networking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '275 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '275 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Networking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.)  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Networking Products. Defendant had knowledge of the '275 Patent at least as early as the service of this complaint. Defendant has known that the Accused Networking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued

to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '275 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '275 Patent under 35 U.S.C. § 271.

31.    Defendant's acts of infringement of the '275 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '275 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

32.    On information and belief, the infringement of the '275 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '275 Patent, including but not limited to at least one or more of the following:

    a.    Defendant's prior communication and dealings with Blue Spike and inventor Scott Moskowitz involving Blue Spike patents and technology occurring at least as early as 2002;

    b.    In the course of its due diligence and freedom to operate analysis; and

    c.    The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '275 Patent by operation of law.

## COUNT 2:
## INFRINGEMENT OF U.S. PATENT 8,473,746

33.    Blue Spike incorporates by reference the allegations in the paragraphs above.

34.   The '746 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

35.   Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '746 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Networking Products, in violation of 35 U.S.C. § 271.

36.   Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '746 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '746 Patent. Specifically, Defendant imports the Accused Networking Products into the United States, operates a website and numerous sales centers that offer for sale and sell the Accused Networking Products (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Networking Products in the United States (*see* Exhibit C), generates revenue from sales of the Accused Networking Products to U.S. customers via said channels, and attends trade shows in the United States where it demonstrates the Accused Networking Products (*see* Exhibit E).

37.   The Accused Networking Products infringe Claims 1-4 and 13 of the '746 Patent. For example, Claim 13 teaches

> A router for routing packets, comprising:
> structure for receiving a data packet, said data packet comprising a packet watermark;
> wherein said router comprises a processor; and
> wherein said router is configured to use said processor to analyze said packet watermark in said data packet to determine a QoS associated with said data packet.

The Accused Networking Products are routers, including processors (*a router for routing packets … wherein said router comprises a processor*) that use DSCP or other packet marking to dictate the quality or class of service for a particular packet (*wherein said router is configured to use said processor to analyze said packet watermark in said data packet to determine a QoS associated with said data packet*).  *See* Exhibit 1 at p. 23; Exhibit 2 at p. 1 ("Juno OS Class of Service (CoS) … allows you to rewrite the Differentiated Services code point (DSCP) or IEEE 802.1p code-point bits of packets leaving an interface"); Exhibit 3 at p. 1 ("Differentiated Services (DiffServ) is a system for tagging (or 'marking') traffic at a position within a hierarchy of priority. … DSCP marking is supported on all platforms and can be configured with traffic shaping or independently."); Exhibit 4 at p. 1 ("Packet classification maps incoming packets to a particular class-of-service (CoS) servicing level. Classifiers map packets to a forwarding class and a loss priority, and assign packets to output queues based on the forwarding class."); Exhibit 5 at p. 1 ("Of those packets, Layer 3 packets are marked at egress with DSCP bits 001010").

38.   Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '746 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '746 Patent. Such products include, without limitation, one or more of the Accused Networking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '746 Patent.   By making, using,

importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '746 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Networking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.)  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Networking Products. Defendant had knowledge of the '746 Patent at least as early as the service of this complaint. Defendant has known that the Accused Networking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '746 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '746 Patent under 35 U.S.C. § 271.

39.    Defendant's acts of infringement of the '746 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the

'746 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

40.    On information and belief, the infringement of the '746 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '746 Patent, including but not limited to at least one or more of the following:

a.    Defendant's prior communication and dealings with Blue Spike and inventor Scott Moskowitz involving Blue Spike patents and technology occurring at least as early as 2002;

b.    In the course of its due diligence and freedom to operate analysis; and

c.    The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '746 Patent by operation of law.

## COUNT 3:
## INFRINGEMENT OF U.S. PATENT 8,706,570

41.    Blue Spike incorporates by reference the allegations in the paragraphs above.

42.    The '570 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

43.    Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '570 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Networking Products, in violation of 35 U.S.C. § 271.

44.    Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '570 Patent and/or directing, controlling, and obtaining

benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '570 Patent. Specifically, Defendant imports the Accused Networking Products into the United States, operates a website and numerous sales centers that offer for sale and sell the Accused Networking Products (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Networking Products in the United States (*see* Exhibit C), generates revenue from sales of the Accused Networking Products to U.S. customers via said channels, and attends trade shows in the United States where it demonstrates the Accused Networking Products (*see* Exhibit E).

45.     The Accused Networking Products infringe Claims 1-3 and 5 of the '570 Patent. For example, Claim 1 teaches

> A computerized system for creating a medium of exchange, the system comprising:
> a processor;
> at least one data storage medium for storing data in non transient form, wherein data stored in said at least one data storage medium comprises computer code and a bandwidth rights certificate;
> wherein said bandwidth rights certificate stores routing information comprising (1) router data, wherein said router data comprises at least authorization indicating authorization for at least one router and priority data indicating priority for at least one router and (2) certificate validity period;
> wherein said computerized system is designed to use said computer code to organize data into packets;
> wherein said computerized system is designed to use said computer code to combine said bandwidth rights certificate and said packets into a data transmission, for transmission across a network;
> a router, wherein said router is configured to use certificate validity period of said bandwidth rights certificate to determine whether to use said router data to determine at least one of whether to route said data transmission and how to prioritize routing said data transmission.

In order to route traffic based on priority, the Accused Networking Products assign a DSCP mark or other bandwidth rights classifier that identifies a packet's priority level (*a bandwidth rights certificate*; *router data comprising at least authorization indicating authorization for at least one router and priority data*; *determine how to prioritize routing said data*). *See* Exhibit 1 at p. 23; Exhibit 2 at p. 1 ("Juno OS Class of Service (CoS) … allows you to rewrite the Differentiated Services code point (DSCP) or IEEE 802.1p code-point bits of packets leaving an interface"); Exhibit 3 at p. 1 ("Differentiated Services (DiffServ) is a system for tagging (or 'marking') traffic at a position within a hierarchy of priority. … DSCP marking is supported on all platforms and can be configured with traffic shaping or independently."); Exhibit 4 at p. 1 ("Packet classification maps incoming packets to a particular class-of-service (CoS) servicing level. Classifiers map packets to a forwarding class and a loss priority, and assign packets to output queues based on the forwarding class."); Exhibit 5 at p. 1 ("Of those packets, Layer 3 packets are marked at egress with DSCP bits 001010").

46.     Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '570 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '570 Patent. Such products include, without limitation, one or more of the Accused Networking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '570 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike

and is thus liable to Blue Spike for infringement of the '570 Patent under 35 U.S.C. §

271. It is not necessary for Plaintiff to indicate specific customers directly infringing the

Patents-in-Suit through the use of Defendant's Accused Networking Products. *See In re*

*Bill of Lading Transmission and Processing System Pat. Litig*., 681 F.3d 1323, 1336 (Fed.

Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc*., No. 2:10-cv-175, 2011

WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and

contributes to the infringement of its customers. Defendant also induces and contributes

to the infringement of its partners and resellers who use, test, and demonstrate the

infringing functionality. (See Exhibit C.)  Those whom Defendant induces to infringe

and/or to whose infringement Defendant contributes are the end users of the Accused

Networking Products. Defendant had knowledge of the '570 Patent at least as early as the

service of this complaint. Defendant has known that the Accused Networking Products

infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-

Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued

to induce its customers and partners to infringe. Thus, Defendant is liable for

infringement of one or more claims of the '570 Patent by actively inducing infringement

and/or is liable as contributory infringer of one or more claims of the '570 Patent under

35 U.S.C. § 271.

47.    Defendant's acts of infringement of the '570 Patent have caused damage to Blue

Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a

result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to

35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the

'570 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

48.    On information and belief, the infringement of the '570 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '570 Patent, including but not limited to at least one or more of the following:

      a.    Defendant's prior communication and dealings with Blue Spike and inventor Scott Moskowitz involving Blue Spike patents and technology occurring at least as early as 2002;

      b.    In the course of its due diligence and freedom to operate analysis; and

      c.    The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '570 Patent by operation of law.

## COUNT 4:
## INFRINGEMENT OF U.S. PATENT RE44,222

49.    Blue Spike incorporates by reference the allegations in the paragraphs above.

50.    The '222 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

51.    Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '222 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Networking Products, in violation of 35 U.S.C. § 271.

52.    Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '222 Patent and/or directing, controlling, and obtaining

benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '222 Patent. Specifically, Defendant imports the Accused Networking Products into the United States, operates a website and numerous sales centers that offer for sale and sell the Accused Networking Products (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Networking Products in the United States (*see* Exhibit C), generates revenue from sales of the Accused Networking Products to U.S. customers via said channels, and attends trade shows in the United States where it demonstrates the Accused Networking Products (*see* Exhibit E).

53.     The Accused Networking Products infringe Claims 1, 6, 7 and 12-14 of the '222 Patent.  For example, Claim 12 teaches

> A system for provisioning content, comprising:
>> a processor to receive content and to organize the content into a plurality of packets;
>> a generator to generate at least one packet watermark associated with the content;
>> a packager to combine the generated packet watermark with at least one of the plurality of packets to form watermarked packets; and
>> a transmitter to transmit at least one of the watermarked packets across a network.

Defendant's Accused Networking Products receive and transmit data in packets (*processor to receive content and to organize the content into a plurality of packets ... transmitter to transmit at least one of the watermarked packets across a network*). *See*, *e.g.*, Exhibit G.  Before transmitting data, the Accused Networking Products generate a DSCP mark or other classifier that identifies a packet's priority level (*a generator to generate at least one packet watermark associated with the content*) and write that mark into the packet (*a packager to combine the generated packet watermark with at least one of the plurality of packets to form watermarked packets*).  *See* Exhibit 1 at p. 23; Exhibit

2 at p. 1 ("Juno OS Class of Service (CoS) … allows you to rewrite the Differentiated Services code point (DSCP) or IEEE 802.1p code-point bits of packets leaving an interface"); Exhibit 3 at p. 1 ("Differentiated Services (DiffServ) is a system for tagging (or 'marking') traffic at a position within a hierarchy of priority. … DSCP marking is supported on all platforms and can be configured with traffic shaping or independently."); Exhibit 4 at p. 1 ("Packet classification maps incoming packets to a particular class-of-service (CoS) servicing level. Classifiers map packets to a forwarding class and a loss priority, and assign packets to output queues based on the forwarding class."); Exhibit 5 at p. 1 ("Of those packets, Layer 3 packets are marked at egress with DSCP bits 001010").

54.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '222 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '222 Patent. Such products include, without limitation, one or more of the Accused Networking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '222 Patent.   By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '222 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Networking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed.

Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.)   Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Networking Products. Defendant had knowledge of the '222 Patent at least as early as the service of this complaint. Defendant has known that the Accused Networking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '222 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '222 Patent under 35 U.S.C. § 271.

55.   Defendant's acts of infringement of the '222 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '222 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

56.   On information and belief, the infringement of the '222 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '222 Patent, including but not limited to at least one or more of the following:

a.    Defendant's prior communication and dealings with Blue Spike and inventor Scott Moskowitz involving Blue Spike patents and technology occurring at least as early as 2002;

b.    In the course of its due diligence and freedom to operate analysis; and

c.    The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '222 Patent by operation of law.

## COUNT 5:
## INFRINGEMENT OF U.S. PATENT RE44,307

57.    Blue Spike incorporates by reference the allegations in the paragraphs above.

58.    The '307 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

59.    Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '307 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Networking Products, in violation of 35 U.S.C. § 271.

60.    Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '307 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '307 Patent. Specifically, Defendant imports the Accused Networking Products into the United States, operates a website and numerous sales centers that offer for sale and sell the Accused Networking Products (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Networking Products in the

United States (*see* Exhibit C), generates revenue from sales of the Accused Networking Products to U.S. customers via said channels, and attends trade shows in the United States where it demonstrates the Accused Networking Products (*see* Exhibit E).

61.     The Accused Networking Products infringe Claims 1, 3, 9, 11-14 and 21 of the '307 Patent. For example, Claim 1 teaches

> A process for provisioning a stream of data, comprising:
>     receiving a stream of data;
>     organizing the stream of data into a packet flow comprising a plurality of packets;
>     generating, using a processor, a packet watermark associated with the packet flow wherein the packet watermark enables discrimination between packet flows;
>     combining, using a processor, the packet watermark with each of the plurality of packets to form watermarked packets; and
>     provisioning at least one of the watermarked packets across a network.

Defendant's Accused Networking Products receive and transmit data in packets (*receiving a stream of data; organizing the stream of data into a packet flow comprising a plurality of packets ... provisioning at least one of the watermarked packets across a network*). *See*, *e.g.*, Exhibit G.   Before transmitting data, the Accused Networking Products generate a DSCP mark or other classifier that identifies a packet's priority level (*generating, using a processor, a packet watermark associated with the packet flow wherein the packet watermark enables discrimination between packet flows*) and write that mark into the packet (*combining, using a processor, the packet watermark with each of the plurality of packets to form watermarked packets*).  *See* Exhibit 1 at p. 23; Exhibit 2 at p. 1 ("Juno OS Class of Service (CoS) … allows you to rewrite the Differentiated Services code point (DSCP) or IEEE 802.1p code-point bits of packets leaving an interface"); Exhibit 3 at p. 1 ("Differentiated Services (DiffServ) is a system for tagging

(or 'marking') traffic at a position within a hierarchy of priority. … DSCP marking is supported on all platforms and can be configured with traffic shaping or independently."); Exhibit 4 at p. 1 ("Packet classification maps incoming packets to a particular class-of-service (CoS) servicing level. Classifiers map packets to a forwarding class and a loss priority, and assign packets to output queues based on the forwarding class."); Exhibit 5 at p. 1 ("Of those packets, Layer 3 packets are marked at egress with DSCP bits 001010").

62.   Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '307 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '307 Patent. Such products include, without limitation, one or more of the Accused Networking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '307 Patent.   By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '307 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Networking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes

to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.)  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Networking Products. Defendant had knowledge of the '307 Patent at least as early as the service of this complaint. Defendant has known that the Accused Networking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '307 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '307 Patent under 35 U.S.C. § 271.

63.    Defendant's acts of infringement of the '307 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '307 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

64.    On information and belief, the infringement of the '307 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '307 Patent, including but not limited to at least one or more of the following:

a.    Defendant's prior communication and dealings with Blue Spike and inventor Scott Moskowitz involving Blue Spike patents and technology occurring at least as early as 2002;

b.      In the course of its due diligence and freedom to operate analysis; and

c.      The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '307

Patent by operation of law.

## COUNT 6:
## INFRINGEMENT OF U.S. PATENT 7,647,502

65.    Blue Spike incorporates by reference the allegations in the paragraphs above.

66.    The '502 Patent is valid, enforceable, and was duly and legally issued by the United

States Patent and Trademark Office.

67.    Without a license or permission from Blue Spike, Defendant has infringed and

continue to infringe on one or more claims of the '502 Patent—directly, contributorily, or

by inducement—by importing, making, using, offering for sale, or selling products and

devices that embody the patented invention, including, without limitation, one or more of

the Accused Networking Products, in violation of 35 U.S.C. § 271.

68.    Defendant has been and now is directly infringing by, among other things,

practicing all the steps of the '502 Patent and/or directing, controlling, and obtaining

benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps

of the '502 Patent. Specifically, Defendant imports the Accused Networking Products

into the United States, operates a website and numerous sales centers that offer for sale

and sell the Accused Networking Products (*see* Exhibits A & B), has partnered with

numerous resellers to offer for sale and sell the Accused Networking Products in the

United States (*see* Exhibit C), generates revenue from sales of the Accused Networking

Products to U.S. customers via said channels, and attends trade shows in the United

States where it demonstrates the Accused Networking Products (*see* Exhibit E).

69.    The Accused Networking Products infringe Claim 1 of the '502 Patent, which

teaches

> A method for encoding at least one watermark in a
> content signal, comprising:
>   predetermining a number of bits in the content
>     signal to be encoded, based on at least one of a
>     fixed length key and signal characteristics of
>     the content signal; and
>   encoding the watermark in the predetermined
>     bits.

In order to route traffic based on priority (*signal characteristics of the content signal*), the

Accused Networking Products encode or mark packets with a DSCP or other classifier of

fixed size (6 bits in the case of DSCP) (*predetermining a number of bits in the content

signal to be encoded, based on at least one of a fixed length key*; *encoding the watermark

in the predetermined bits*). *See* Exhibit 1 at p. 23; Exhibit 2 at p. 1 ("Juno OS Class of

Service (CoS) … allows you to rewrite the Differentiated Services code point (DSCP) or

IEEE 802.1p code-point bits of packets leaving an interface"); Exhibit 3 at p. 1

("Differentiated Services (DiffServ) is a system for tagging (or 'marking') traffic at a

position within a hierarchy of priority. … DSCP marking is supported on all platforms

and can be configured with traffic shaping or independently."); Exhibit 4 at p. 1 ("Packet

classification maps incoming packets to a particular class-of-service (CoS) servicing

level. Classifiers map packets to a forwarding class and a loss priority, and assign packets

to output queues based on the forwarding class."); Exhibit 5 at p. 1 ("Of those packets,

Layer 3 packets are marked at egress with DSCP bits 001010").

70.    Defendant has been and now is indirectly infringing by way of inducing

infringement by others and/or contributing to the infringement by others of the '502

Patent in the State of Texas, in this judicial district, and elsewhere in the United States,

by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '502 Patent. Such products include, without limitation, one or more of the Accused Networking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '502 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '502 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Networking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.)  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Networking Products. Defendant had knowledge of the '502 Patent at least as early as the service of this complaint. Defendant has known that the Accused Networking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '502 Patent by actively inducing infringement

and/or is liable as contributory infringer of one or more claims of the '502 Patent under 35 U.S.C. § 271.

71.    Defendant's acts of infringement of the '502 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '502 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

72.    On information and belief, the infringement of the '502 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '502 Patent, including but not limited to at least one or more of the following:

    a.    Defendant's prior communication and dealings with Blue Spike and inventor Scott Moskowitz involving Blue Spike patents and technology occurring at least as early as 2002;

    b.    In the course of its due diligence and freedom to operate analysis; and

    c.    The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '868 Patent by operation of law.

## COUNT 7:
## INFRINGEMENT OF U.S. PATENT 7,987,371

73.    Blue Spike incorporates by reference the allegations in the paragraphs above.

74.    The '371 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

75.    Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '371 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Networking Products, in violation of 35 U.S.C. § 271.

76.    Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '371 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '371 Patent. Specifically, Defendant imports the Accused Networking Products into the United States, operates a website and numerous sales centers that offer for sale and sell the Accused Networking Products (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Networking Products in the United States (*see* Exhibit C), generates revenue from sales of the Accused Networking Products to U.S. customers via said channels, and attends trade shows in the United States where it demonstrates the Accused Networking Products (*see* Exhibit E).

77.    The Accused Networking Products infringe Claims 35 and 47 of the '371 Patent. For example, Claim 35 teaches

> An article of manufacture comprising a non-transitory machine readable medium, having thereon stored instructions adapted to be executed by a processor, which instructions when executed result in a process comprising:
>     receiving a data signal;
>     identifying a plurality of candidate bits in the data signal that can be manipulated during encoding;
>     generating at least one watermark;
>     determining which of said plurality of candidate bits to manipulate; and

encoding the at least one watermark in the
determined candidate bits.

The Accused Networking Products employ software that receive packets of data (*an article of manufacture comprising a non-transitory machine readable medium, having thereon stored instructions adapted to be executed by a processor, which instructions when executed result in a process comprising: receiving a data signal*) and encode or mark the packets with a DSCP or other classifier (in the case of DSCP, a particular 6 bits in the packet header)  (*identifying a plurality of candidate bits in the data signal that can be manipulated during encoding; generating at least one watermark; determining which of said plurality of candidate bits to manipulate; and encoding the at least one watermark in the determined candidate bits*).  *See* Exhibit 1 at p. 23; Exhibit 2 at p. 1 ("Juno OS Class of Service (CoS) … allows you to rewrite the Differentiated Services code point (DSCP) or IEEE 802.1p code-point bits of packets leaving an interface"); Exhibit 3 at p. 1 ("Differentiated Services (DiffServ) is a system for tagging (or 'marking') traffic at a position within a hierarchy of priority. … DSCP marking is supported on all platforms and can be configured with traffic shaping or independently."); Exhibit 4 at p. 1 ("Packet classification maps incoming packets to a particular class-of-service (CoS) servicing level. Classifiers map packets to a forwarding class and a loss priority, and assign packets to output queues based on the forwarding class."); Exhibit 5 at p. 1 ("Of those packets, Layer 3 packets are marked at egress with DSCP bits 001010").

78.   Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '371 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling,

without license or authority, products for use in systems that fall within the scope of one or more claims of the '371 Patent. Such products include, without limitation, one or more of the Accused Networking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '371 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '371 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Networking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.)  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Networking Products. Defendant had knowledge of the '371 Patent at least as early as the service of this complaint. Defendant has known that the Accused Networking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '371 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '371 Patent under 35 U.S.C. § 271.

79.    Defendant's acts of infringement of the '371 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '371 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

80.    On information and belief, the infringement of the '371 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '371 Patent, including but not limited to at least one or more of the following:

     a.    Defendant's prior communication and dealings with Blue Spike and inventor Scott Moskowitz involving Blue Spike patents and technology occurring at least as early as 2002;

     b.    In the course of its due diligence and freedom to operate analysis; and

     c.    The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '371 Patent by operation of law.

**COUNT 8:**

**INFRINGEMENT OF U.S. PATENT 8,161,286**

81.    Blue Spike incorporates by reference the allegations in the paragraphs above.

82.    The '286 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

83.    Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '286 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and

36

devices that embody the patented invention, including, without limitation, one or more of the Accused Networking Products, in violation of 35 U.S.C. § 271.

84.     Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '286 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '286 Patent. Specifically, Defendant imports the Accused Networking Products into the United States, operates a website and numerous sales centers that offer for sale and sell the Accused Networking Products (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Networking Products in the United States (*see* Exhibit C), generates revenue from sales of the Accused Networking Products to U.S. customers via said channels, and attends trade shows in the United States where it demonstrates the Accused Networking Products (*see* Exhibit E).

85.     The Accused Networking Products infringe Claim 22 of the '286 Patent, which teaches

> A device for decoding digital watermarks, the device comprising:
> a receiver for receiving a content signal encoded with a digital watermark; and
> a decoder, configured to use a processor and a key that comprises information describing where in said content signal said digital watermark is encoded, to decode said digital watermark from said content signal.

When routing traffic based on priority, the Accused Networking Products receive data packets marked with a DSCP mark or other classifier, and use a key to locate the DSCP marker and decode it (*receiver for receiving a content signal encoded with a digital watermark; and a decoder, configured to use a processor and a key that comprises information describing where in said content signal said digital watermark is encoded, to*

*decode said digital watermark from said content signal*). *See* Exhibit 1 at p. 23; Exhibit 2 at p. 1 ("Juno OS Class of Service (CoS) … allows you to rewrite the Differentiated Services code point (DSCP) or IEEE 802.1p code-point bits of packets leaving an interface"); Exhibit 3 at p. 1 ("Differentiated Services (DiffServ) is a system for tagging (or 'marking') traffic at a position within a hierarchy of priority. … DSCP marking is supported on all platforms and can be configured with traffic shaping or independently."); Exhibit 4 at p. 1 ("Packet classification maps incoming packets to a particular class-of-service (CoS) servicing level. Classifiers map packets to a forwarding class and a loss priority, and assign packets to output queues based on the forwarding class."); Exhibit 5 at p. 1 ("Of those packets, Layer 3 packets are marked at egress with DSCP bits 001010").

86.  Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '286 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '286 Patent. Such products include, without limitation, one or more of the Accused Networking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '286 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '286 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Networking Products. *See In re*

*Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.)  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Networking Products. Defendant had knowledge of the '286 Patent at least as early as the service of this complaint. Defendant has known that the Accused Networking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '286 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '286 Patent under 35 U.S.C. § 271.

87.   Defendant's acts of infringement of the '286 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '286 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

88.    On information and belief, the infringement of the '286 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '286 Patent, including but not limited to at least one or more of the following:

    a.    Defendant's prior communication and dealings with Blue Spike and inventor Scott Moskowitz involving Blue Spike patents and technology occurring at least as early as 2002;

    b.    In the course of its due diligence and freedom to operate analysis; and

    c.    The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '286 Patent by operation of law.

**COUNT 9:**

**INFRINGEMENT OF U.S. PATENT 8,307,213**

89.    Blue Spike incorporates by reference the allegations in the paragraphs above.

90.    The '213 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

91.    Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '213 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Networking Products, in violation of 35 U.S.C. § 271.

92.    Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '213 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '213 Patent. Specifically, Defendant imports the Accused Networking Products

into the United States, operates a website and numerous sales centers that offer for sale

and sell the Accused Networking Products (*see* Exhibits A & B), has partnered with

numerous resellers to offer for sale and sell the Accused Networking Products in the

United States (*see* Exhibit C), generates revenue from sales of the Accused Networking

Products to U.S. customers via said channels, and attends trade shows in the United

States where it demonstrates the Accused Networking Products (*see* Exhibit E).

93.     The Accused Networking Products infringe Claims 1, 13, 21 and 33 of the '213

Patent.  For example, Claim 1 teaches

> An article of manufacture comprising a
> nontransitory medium having stored thereon
> instructions adapted to be executed by a processor,
> the instructions which, when executed, result in the
> process comprising:
>> receiving content to be watermarked and at least
>> one digital watermark; and
>> watermarking the content with the received at
>> least one digital watermark using a key
>> comprising information describing where in
>> the content the received at least one digital
>> watermark is to be encoded.

When routing traffic based on priority, the Accused Networking Products receive data

packets and encode a DSCP mark or other classifier into each packet using a key that

indicates where in the packet to encode it (*receiving content to be watermarked and at*

*least one digital watermark; and watermarking the content with the received at least one*

*digital watermark using a key comprising information describing where in the content the*

*received at least one digital watermark is to be encoded*). *See* Exhibit 1 at p. 23; Exhibit 2

at p. 1 ("Juno OS Class of Service (CoS) … allows you to rewrite the Differentiated

Services code point (DSCP) or IEEE 802.1p code-point bits of packets leaving an

interface"); Exhibit 3 at p. 1 ("Differentiated Services (DiffServ) is a system for tagging

(or 'marking') traffic at a position within a hierarchy of priority. … DSCP marking is supported on all platforms and can be configured with traffic shaping or independently."); Exhibit 4 at p. 1 ("Packet classification maps incoming packets to a particular class-of-service (CoS) servicing level. Classifiers map packets to a forwarding class and a loss priority, and assign packets to output queues based on the forwarding class."); Exhibit 5 at p. 1 ("Of those packets, Layer 3 packets are marked at egress with DSCP bits 001010").

94.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '213 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '213 Patent. Such products include, without limitation, one or more of the Accused Networking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '213 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '213 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Networking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes

to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.)  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Networking Products. Defendant had knowledge of the '213 Patent at least as early as the service of this complaint. Defendant has known that the Accused Networking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '213 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '213 Patent under 35 U.S.C. § 271.

95.    Defendant's acts of infringement of the '213 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '213 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

96.    On information and belief, the infringement of the '213 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '213 Patent, including but not limited to at least one or more of the following:

a.    Defendant's prior communication and dealings with Blue Spike and inventor Scott Moskowitz involving Blue Spike patents and technology occurring at least as early as 2002;

b.     In the course of its due diligence and freedom to operate analysis; and

c.     The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '213

Patent by operation of law.

**COUNT 10:**

**INFRINGEMENT OF U.S. PATENT 7,813,506**

97.    Blue Spike incorporates by reference the allegations in the paragraphs above.

98.    The '506 Patent is valid, enforceable, and was duly and legally issued by the United

States Patent and Trademark Office.

99.    Without a license or permission from Blue Spike, Defendant has infringed and

continue to infringe on one or more claims of the '506 Patent—directly, contributorily, or

by inducement—by importing, making, using, offering for sale, or selling products and

devices that embody the patented invention, including, without limitation, one or more of

the Accused Networking Products, in violation of 35 U.S.C. § 271.

100.    Defendant has been and now is directly infringing by, among other things,

practicing all the steps of the '506 Patent and/or directing, controlling, and obtaining

benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps

of the '506 Patent. Specifically, Defendant imports the Accused Networking Products

into the United States, operates a website and numerous sales centers that offer for sale

and sell the Accused Networking Products (*see* Exhibits A & B), has partnered with

numerous resellers to offer for sale and sell the Accused Networking Products in the

United States (*see* Exhibit C), generates revenue from sales of the Accused Networking

Products to U.S. customers via said channels, and attends trade shows in the United

States where it demonstrates the Accused Networking Products (*see* Exhibit E).

101.    The Accused Networking Products infringe Claims 6, 7, 11 and 12 of the '506

Patent.  For example, Claim 11 teaches

> A device for creating differential access to an
> accessible data object, comprising:
>> a receiver for receiving a data object comprising
>> digital data and file format information;
>>
>> an encoder for encoding independent data into
>> the data object;
>>
>> a scrambler for manipulating the data object
>> based on at least one signal characteristic of
>> the data object wherein the scrambling is
>> performed until at least one signal quality
>> threshold is created for the data object; and
>>
>> a transmitter for transmitting the perceptibly
>> manipulated data object wherein the
>> manipulated data object is associated with at
>> least one selected from the group comprising:
>> a digital watermark; a key; a device;
>> a subscriber; a user; a payment facility;
>> a distribution channel; authentication
>> information; or combinations thereof.

The Accused Networking Products receive data in packets and encode various

information into the packet headers, including priority markers such as DSCP, before

transmitting the packets (*creating differential access to an accessible data object, a*

*receiver for receiving a data object comprising digital data and file format information;*

*an encoder for encoding independent data into the data object*; … *wherein the*

*manipulated data object is associated with at least one selected from the group*

*comprising: a digital watermark; a key; a device; a subscriber; a user; a payment*

*facility; a distribution channel*). *See* Exhibit 1 at p. 23; Exhibit 2 at p. 1 ("Juno OS Class

of Service (CoS) … allows you to rewrite the Differentiated Services code point (DSCP)

or IEEE 802.1p code-point bits of packets leaving an interface"); Exhibit 3 at p. 1

("Differentiated Services (DiffServ) is a system for tagging (or 'marking') traffic at a

position within a hierarchy of priority. … DSCP marking is supported on all platforms

and can be configured with traffic shaping or independently."); Exhibit 4 at p. 1 ("Packet classification maps incoming packets to a particular class-of-service (CoS) servicing level. Classifiers map packets to a forwarding class and a loss priority, and assign packets to output queues based on the forwarding class."); Exhibit 5 at p. 1 ("Of those packets, Layer 3 packets are marked at egress with DSCP bits 001010").   The Accused Networking Products can also scramble payloads for better link stability (*a scrambler for manipulating the data object based on at least one signal characteristic of the data object wherein the scrambling is performed until at least one signal quality threshold is created for the data object*).  *See* Exhibit 6 at p. 2 ("SONET payload scrambling preserves data integrity.  Scrambling is designed to randomize the digital bits (pattern of 1s and 0s) carried in the Asynchronous Transfer Mode (ATM) cells (physical layer frame).").

102. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '506 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '506 Patent. Such products include, without limitation, one or more of the Accused Networking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '506 Patent.   By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '506 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Networking Products. *See In re*

*Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.)  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Networking Products. Defendant had knowledge of the '506 Patent at least as early as the service of this complaint. Defendant has known that the Accused Networking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '506 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '506 Patent under 35 U.S.C. § 271.

103.  Defendant's acts of infringement of the '506 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '506 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

104. On information and belief, the infringement of the '506 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '506 Patent, including but not limited to at least one or more of the following:

      a.    Defendant's prior communication and dealings with Blue Spike and inventor Scott Moskowitz involving Blue Spike patents and technology occurring at least as early as 2002;

      b.    In the course of its due diligence and freedom to operate analysis; and

      c.    The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '506 Patent by operation of law.

## COUNT 11:
## INFRINGEMENT OF U.S. PATENT 7,159,116

105. Blue Spike incorporates by reference the allegations in the paragraphs above.

106. The '116 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

107. Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '116 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Networking Products, in violation of 35 U.S.C. § 271.

108. Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '116 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '116 Patent. Specifically, Defendant imports the Accused Networking Products into

the United States, operates a website and numerous sales centers that offer for sale and sell the Accused Networking Products (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Networking Products in the United States (*see* Exhibit C), generates revenue from sales of the Accused Networking Products to U.S. customers via said channels, and attends trade shows in the United States where it demonstrates the Accused Networking Products (*see* Exhibit E).

109.    The Accused Networking Products infringe Claims 14 and 16 of the '116 Patent. For example, Claim 14 teaches

> A device for conducting a trusted transaction between at least two parties who have agreed to transact, comprising:
>> means for uniquely identifying information selected from the group consisting of a unique identification of one of the parties, a unique identification of the transaction, a unique identification of value added information to be transacted, a unique identification of a value adding component;
>> a steganographic cipher for generating said unique identification information, wherein the steganographic cipher is governed by at least the following elements: a predetermined key, a predetermined message, and a predetermined carrier signal; and
>> a means for verifying an agreement to transact between the parties.

Defendant's Accused Networking Products exchange information between two entities that have agreed to communicate (*a device for conducting a trusted transaction between at least two parties*; *means for uniquely identifying information; a means for verifying an agreement to transact*). To verify the unique ID of a party, the Accused Networking Products use authentication and encryption algorithms involving keys or ciphers (*a steganographic cipher for generating said unique identification information, wherein*

*the steganographic cipher is governed by at least the following elements: a predetermined key, a predetermined message, and a predetermined carrier signal*). *See* Exhibit 7 at p. 1 ("Juniper Networks Junos VPN Site Secure implements IPsec encryption using Advanced Encryption Standard (AES), Data Encryption Standard (DES), and triple Data Encryption Standard (3DES). With Junos VPN Site Secure, enterprises can provide IPsec encryption to enhance data security."); Exhibit 8 ("Authentication is the process of verifying the identity of the sender. Authentication algorithms use a shared key to verify the authenticity of the IPsec devices. … To verify that the message has not been tampered with, the Junos OS compares the calculated message digest against a message digest that is decrypted with a shared key."); Exhibit 9 ("Encryption encodes data into a secure format so that it cannot be deciphered by unauthorized users. Like authentication algorithms, a shared key is used with encryption algorithms to verify the authenticity of the IPsec devices."); *see also* Exhibit 10.

110. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '116 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '116 Patent. Such products include, without limitation, one or more of the Accused Networking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '116 Patent.   By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '116 Patent under 35 U.S.C. §

271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Networking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.)   Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Networking Products. Defendant had knowledge of the '116 Patent at least as early as the service of this complaint. Defendant has known that the Accused Networking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '116 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '116 Patent under 35 U.S.C. § 271.

111.  Defendant's acts of infringement of the '116 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '116 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

112.  On information and belief, the infringement of the '116 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '116 Patent, including but not limited to at least one or more of the following:

      a.      Defendant's prior communication and dealings with Blue Spike and inventor Scott Moskowitz involving Blue Spike patents and technology occurring at least as early as 2002;

      b.      In the course of its due diligence and freedom to operate analysis; and

      c.      The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '116 Patent by operation of law.

**COUNT 12:**

**INFRINGEMENT OF U.S. PATENT 8,538,011**

113.  Blue Spike incorporates by reference the allegations in the paragraphs above.

114.  The '011 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

115.  Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '011 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Networking Products, in violation of 35 U.S.C. § 271.

116.  Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '011 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '011 Patent. Specifically, Defendant imports the Accused Networking Products into

the United States, operates a website and numerous sales centers that offer for sale and

sell the Accused Networking Products (*see* Exhibits A & B), has partnered with numerous

resellers to offer for sale and sell the Accused Networking Products in the United States

(*see* Exhibit C), generates revenue from sales of the Accused Networking Products to

U.S. customers via said channels, and attends trade shows in the United States where it

demonstrates the Accused Networking Products (*see* Exhibit E).

117.    The Accused Networking Products infringe Claims 2, 5, 9, 14 and 16 of the '011

Patent.  For example, Claim 2 teaches

> A device for conducting trusted transactions between at least two parties, comprising:
> a steganographic cipher;
> a controller for receiving input data or outputting output data; and
> at least one input/output connection,
> wherein the device has a device identification code stored in the device;
> a steganographically ciphered software application;
> wherein said steganographically ciphered software application has been subject to a steganographic cipher for serialization;
> wherein said steganographic cipher receives said output data, steganographically ciphering said output data using a key, to define steganographically ciphered output data, and transmits said steganographically ciphered output data to said at least one input/output connection; and
> wherein the input of input data is controlled by predetermined information selected from the group consisting of a pass phrase, a password, biometric data, and a personal entropy query.

Defendant's Accused Networking Products exchange information between two entities

that have agreed to communicate, and contain codes that identify them (*a device for*

*conducting a trusted transaction between at least two parties; a controller for receiving*

*input data or outputting output data; and at least one input/output connection, wherein*

*the device has a device identification code stored in the device*).  To verify the unique ID of a party, the Accused Networking Products use authentication and encryption algorithms involving keys or ciphers (*a steganographically ciphered software application; wherein said steganographically ciphered software application has been subject to a steganographic cipher for serialization; wherein said steganographic cipher receives said output data, steganographically ciphering said output data using a key, to define steganographically ciphered output data, and transmits said steganographically ciphered output data to said at least one input/output connection; and wherein the input of input data is controlled by predetermined information selected from the group consisting of a pass phrase [and] a passphrase*).  *See* Exhibit 7 at p. 1 ("Juniper Networks Junos VPN Site Secure implements IPsec encryption using Advanced Encryption Standard (AES), Data Encryption Standard (DES), and triple Data Encryption Standard (3DES). With Junos VPN Site Secure, enterprises can provide IPsec encryption to enhance data security."); Exhibit 8 ("Authentication is the process of verifying the identity of the sender. Authentication algorithms use a shared key to verify the authenticity of the IPsec devices. … To verify that the message has not been tampered with, the Junos OS compares the calculated message digest against a message digest that is decrypted with a shared key."); Exhibit 9 ("Encryption encodes data into a secure format so that it cannot be deciphered by unauthorized users. Like authentication algorithms, a shared key is used with encryption algorithms to verify the authenticity of the IPsec devices."); *see also* Exhibit 10.

118. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '011

Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '011 Patent. Such products include, without limitation, one or more of the Accused Networking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '011 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '011 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Networking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.)  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Networking Products. Defendant had knowledge of the '011 Patent at least as early as the service of this complaint. Defendant has known that the Accused Networking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '011 Patent by actively inducing infringement

and/or is liable as contributory infringer of one or more claims of the '011 Patent under 35 U.S.C. § 271.

119.   Defendant's acts of infringement of the '011 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '011 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

120.   On information and belief, the infringement of the '011 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '011 Patent, including but not limited to at least one or more of the following:

     a.   Defendant's prior communication and dealings with Blue Spike and inventor Scott Moskowitz involving Blue Spike patents and technology occurring at least as early as 2002;

     b.   In the course of its due diligence and freedom to operate analysis; and

     c.   The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '011 Patent by operation of law.

## COUNT 13:
## INFRINGEMENT OF U.S. PATENT 9,021,602

121.   Blue Spike incorporates by reference the allegations in the paragraphs above.

122.   The '602 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

123.   Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '602 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

124.   Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '602 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '602 Patent. Specifically, Defendant imports the Accused Products into the United States, operates a website and numerous sales centers that offer for sale and sell the Accused Products (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Products in the United States (*see* Exhibit C), generates revenue from sales of the Accused Products to U.S. customers via said channels, and attends trade shows in the United States where it demonstrates the Accused Products (*see* Exhibit E).

125.   The Accused Products infringe Claims 1, 2, 4, 5, 8, 10 and 12 of the '602 Patent. For example, Claim 1 teaches

> A computer-based method for accessing functionality provided by an application software comprising:
>> storing said application software in non-transient memory of a computer;
>> said application software in said computer prompting a user to enter into said computer personalization information;
>> said application software storing, in said non-transient memory, in a personalization data resource, both computer configuration

> information of said computer, and a license
> code entered in response to said prompting;
> said application software in said computer
> generating a proper decoding key, said
> generating comprising using said license
> code; and
> wherein said application software, in said
> computer, cannot access at least one encoded
> code resource of said application software,
> unless said license code is stored in said
> personalization data resource.

The Accused Products utilize Juniper's License Management System (LMS) to activate their associated software programs, elements, applications, and/or features (*a computer-based method for accessing functionality provided by an application software comprising: storing said application software in non-transient memory of a computer*). *See* Exhibit M ("Most of our products … use license activation keys to enable features, capacity and subscriptions in individual systems, appliances and standalone software products."). Upon prompting, the Accused Products require a user to enter a license key, which is generated the LMS from the device's serial number and an authorization code (*said application software in said computer prompting a user to enter into said computer personalization information; said application software storing, in said non-transient memory, in a personalization data resource, both computer configuration information of said computer, and a license code entered in response to said prompting; said application software in said computer generating a proper decoding key, said generating comprising using said license code*. *See* Exhibit 11 ("Gather your Authorization Code and Device serial number. … The Authorization Code is required to generate your license key—it is not the actual license key. … Juniper License Management System provides you with your license key … Click *Maintain > Licenses* and enter the license key.). If the user

58

doesn't enter a proper license key, the feature on the Accused Product will not work (*wherein said application software, in said computer, cannot access at least one encoded code resource of said application software, unless said license code is stored in said personalization data resource*). *See* Exhibit 12 ("A customer must purchase the license rights and then apply a License Activation Key to unlock that feature or capacity in the O/S or software.")

126. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '602 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '602 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '602 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '602 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.)

Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '602 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '602 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '602 Patent under 35 U.S.C. § 271.

127.  Defendant's acts of infringement of the '602 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '602 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

128.  On information and belief, the infringement of the '602 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '602 Patent, including but not limited to at least one or more of the following:

    a.    Defendant's prior communication and dealings with Blue Spike and inventor Scott Moskowitz involving Blue Spike patents and technology occurring at least as early as 2002;

    b.    In the course of its due diligence and freedom to operate analysis; and

    c.    The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '602 Patent by operation of law.

## COUNT 14:
## INFRINGEMENT OF U.S. PATENT 9,104,842

129. Blue Spike incorporates by reference the allegations in the paragraphs above.

130. The '842 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

131. Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '842 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

132. Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '842 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '842 Patent. Specifically, Defendant imports the Accused Products into the United States, operates a website and numerous sales centers that offer for sale and sell the Accused Products (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Products in the United States (*see* Exhibit C), generates revenue from sales of the Accused Products to U.S. customers via said channels, and attends trade shows in the United States where it demonstrates the Accused Products (*see* Exhibit E).

133. The Accused Products infringe Claims 11-14 of the '842 Patent.  For example, Claim 11 teaches

A method for licensed software use, the method comprising:

loading a software product on a computer, said computer comprising a processor, memory, an input, and an output, so that said computer is programmed to execute said software product;

said software product outputting a prompt for input of license information; and

said software product using license information entered via said input in response to said prompt in a routine designed to decode a first license code encoded in said software product.

The Accused Products utilize Juniper's License Management System (LMS) to activate their associated software programs, elements, applications, and/or features (*[a] method for licensed software use, the method comprising: loading a software product on a computer, said computer comprising a processor, memory, an input, and an output, so that said computer is programmed to execute said software product*). *See* Exhibit M ("Most of our products … use license activation keys to enable features, capacity and subscriptions in individual systems, appliances and standalone software products."). Upon prompting, the Accused Products require a user to enter a license key (*said software product outputting a prompt for input of license information*). *See* Exhibit 11 ("Click *Maintain > Licenses* and enter the license key."). The license key is used to decode a code and activate the software (*said software product using license information entered via said input in response to said prompt in a routine designed to decode a first license code encoded in said software product*). *See* Exhibit 12 ("On most appliances, to use a purchased product feature requires the customer to 'unlock' the feature or capacity.").

62

134. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '842 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '842 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '842 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '842 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (See Exhibit C.) Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '842 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus,

Defendant is liable for infringement of one or more claims of the '842 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '842 Patent under 35 U.S.C. § 271.

135.  Defendant's acts of infringement of the '842 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '842 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

136.  On information and belief, the infringement of the '842 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '842 Patent, including but not limited to at least one or more of the following:

  a. Defendant's prior communication and dealings with Blue Spike and inventor Scott Moskowitz involving Blue Spike patents and technology occurring at least as early as 2002;

  b. In the course of its due diligence and freedom to operate analysis; and

  c. The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '842 Patent by operation of law.

## REQUEST FOR RELIEF

Blue Spike incorporates each of the allegations in the paragraphs above and respectfully asks the Court to:

(a)    enter a judgment that Defendant has directly infringed, contributorily infringed, and/or induced infringement of one or more claims of each of the Patents-in-Suit;

(b)    enter a judgment awarding Blue Spike all damages adequate to compensate it for Defendant's direct infringement of, contributory infringement of, or inducement to infringe, the Patents-in-Suit, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

(c)    enter a judgment awarding treble damages pursuant to 35 U.S.C. § 284 for Defendant's willful infringement of one or more of the Patents-in-Suit;

(d)    issue a preliminary injunction and thereafter a permanent injunction enjoining and restraining Defendant, their directors, officers, agents, servants, employees, and those acting in privity or in concert with them, and their subsidiaries, divisions, successors, and assigns, from further acts of infringement, contributory infringement, or inducement of infringement of the Patents-in-Suit;

(e)    enter a judgment requiring Defendant to pay the costs of this action, including all disbursements, and attorneys' fees as provided by 35 U.S.C. § 285, together with prejudgment interest; and

(f)    award Blue Spike all other relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Blue Spike demands a jury trial on all issues that may be determined by a jury.

Respectfully submitted,

/s/ Randall T. Garteiser
Randall T. Garteiser
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
**GARTEISER HONEA, PLLC**
119 W Ferguson St.
Tyler, Texas 75702
Tel/Fax: (888) 908-4400

Kirk J. Anderson
  California Bar No. 289043
**GARTEISER HONEA, PLLC**
44 North San Pedro Road
San Rafael, California 94903
Telephone: (415) 785-3762
Facsimile: (415) 785-3805

***Counsel for Blue Spike, LLC***

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on this date stamped above.

      /s/ Randall T. Garteiser
    Randall T. Garteiser