# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | |
|---|---|
| BLUE SPIKE, LLC | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § |
| | § Case No. 6:17-cv-00016-RWS-KNM |
| JUNIPER NETWORKS, INC., | § |
| | § |
| Defendant. | § |
| | § |
| | § |
| | § |
| | § |
| | § |

---

## DEFENDANT JUNIPER NETWORKS, INC.'S MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA

---

# TABLE OF CONTENTS

BACKGROUND ................................................................................................................ 3

LEGAL BACKGROUND ................................................................................................ 5

ARGUMENT ................................................................................................................... 6

    I.     THE ASSERTED CLAIMS COULD HAVE BEEN BROUGHT IN THE
          NORTHERN DISTRICT OF CALIFORNIA ........................................................ 6

    II.    THE PRIVATE AND PUBLIC FACTORS CONFIRM THAT TRANSFER TO
          THE NORTHERN DISTRICT OF CALIFORNIA IS APPROPRIATE ............... 6

        A.     The Private Factors Favor Transfer ........................................................... 6

        B.     The Public Factors Favor Transfer .......................................................... 12

CONCLUSION............................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*ACQIS LLC v. EMC Corp.*,
   67 F. Supp. 3d 769 (E.D. Tex. 2014) .................................................................... 9, 10

*Blue Spike, LLC v Toshiba Corp.*,
   No. 6:17-cv-00053-RWS-KNM(E.D. Tex. Aug. 4, 2017) ........................................ 1

*Blue Spike, LLC v. Adobe Sys., Inc.*,
   No. 6:12-cv-564-MHS, 2014 WL 1374045 (E.D. Tex. Mar. 13, 2014) ................................ 1, 8

*Blue Spike, LLC v. Facebook, Inc.*,
   No. 6:14-cv-987-MHS-CMC (E.D. Tex. Sept. 11, 2015) .......................................... 1

*Blue Spike, LLC v. Google, Inc.*,
   No. 6:12-cv-558-MHS (E.D. Tex. Mar. 13, 2014) ................................................... 1

*Blue Spike, LLC v. Gracenote, Inc. et al.*,
   No. 6:14-cv-597-MHS-CMC (E.D. Tex. Mar. 30, 2015) .......................................... 1

*Blue Spike, LLC v. Imageware Sys., Inc.*,
   No. 6:12-cv-688-MHS, 2014 WL 11621690 (E.D. Tex. Mar. 13, 2014) ................................ 1

*Blue Spike, LLC v. Iris ID Sys., Inc.*,
   No. 6:13-cv-88-MHS, 2014 WL 11636152 (E.D. Tex. Mar. 13, 2014) ................................ 1

*Blue Spike, LLC v. Kronos, Inc.*,
   No. 6:13-cv-86-MHS, 2014 WL 11621689 (E.D. Tex. Mar. 13, 2014) ................................ 1

*Blue Spike, LLC v. Media Sci., Inc.*,
   No. 2:16-cv-701-RWS (E.D. Tex. July 6, 2017) ..................................................... 1

*Blue Spike, LLC v. SoundHound, Inc.*,
   No. 6:12-cv-537-MHS, 2014 WL 11636154 (E.D. Tex. Mar. 13, 2014) ................................ 1

*Blue Spike, LLC v. Soundmouse, Ltd.*,
   No. 6:12-cv-598-MHS, 2014 WL 11621687 (E.D. Tex. Mar. 6, 2014) ................................ 1

*Blue Spike, LLC v. Zietera, LLC et al.*,
   No. 6:12-cv-568-MHS, 2014 WL 11637022 (E.D. Tex. Mar. 13, 2014) ................................ 1

*Blue Spike, LLC. v. 3M Cogent, Inc.*,
   No. 6:12-cv-685-MHS-CMC, 2014 WL 10005586 (E.D. Tex. July 11, 2014) .......................... 1

*Blue Spike, LLC. v. Verimatrix*,
   No. 2:16-cv-329-RWS (E.D. Tex.) ..................................................................... 12

*Brite Smart Corp. v. Google Inc.*,
   No. 2:14-cv-00760-JRG-RSP, 2015 WL 4638215 (E.D. Tex. Aug. 3, 2015) ......................... 13

*Fujitsu Ltd. v. Tellabs, Inc.*,
   639 F. Supp. 2d 761 (E.D. Tex. 2009) .......................................................... 8, 10, 13

*In re Apple, Inc.*,
   581 F. App'x 886 (Fed. Cir. 2014) .............................................................. 11

*In re Genentech, Inc.*,
   566 F. 3d 1338 (Fed. Cir. 2009) .............................................................. 1, 2, 9, 10

*In re Hoffman-La Roche, Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009) ............................................................. 11, 13

*In re Nintendo Co., Ltd.*,
   589 F.3d 1194 (Fed. Cir. 2009) .............................................................. 6, 9

*In re TS Tech United States Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008) ............................................................. 6, 8

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ................................................................ 13

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) (*en banc*) ...................................................... 5, 6, 8

*Intelligent Automation Design, LLC v. Zimmer Biomet Holdings, Inc.*,
   No. 5:16-CV-11-CMC, 2016 WL 4424967 (E.D. Tex. July 21, 2016) ...................... 1

*Neil Bros. Ltd. v. World Wide Lines, Inc.*,
   425 F.Supp.2d 325 (E.D.N.Y. 2006) .......................................................... 2

*Network Protection Sciences, LLC v. Juniper Networks, Inc.*,
   No. 2:10-cv-224-JRG, 2012 WL 194382 (E.D. Tex. Jan. 23, 2012) ......................... 8

*Software Rights Archive, LLC v. Google, Inc.*,
   No. 2:07-cv-511-CE, 2010 WL 2950351 (E.D. Tex. July 22, 2010) ...................... 7, 8

*TC Heartland, LLC v. Kraft Foods Group Brands, LLC*,
   137 S.Ct. 1514 (2017) ...................................................................... 5

*Wireless Recognition Techs. LLC v. A9.com, Inc.*,
   No. 2:10-cv-364-JRG, 2012 WL 506669 (E.D. Tex. Feb. 15, 2012) ..................... 1, 7

**Statutes**

28 U.S.C. § 1404 ................................................................................. 6

**Rules**

Fed. R. Civ. P. 45 .................................................................................................................... 11

## PRELIMINARY STATEMENT

For the convenience of the parties, Judges in the Eastern District have transferred thirteen patent infringement cases brought by Blue Spike.[1] Seven of these cases were transferred to the Northern District of California due to the defendants' and third-parties' ties to that jurisdiction and Blue Spike's limited connections to the Eastern District.[2] The facts here warrant the same outcome.

The Federal Circuit and courts in the Eastern District have recognized that in patent infringement cases, the location of the defendants' and third-parties' documents and witnesses is the most important factor in a transfer analysis.[3] This factor is dispositive here, as Juniper, the

---

[1] *See Blue Spike, LLC v Toshiba Corp.*, No. 6:17-cv-00053-RWS-KNM, Dkt. No. 33 (E.D. Tex. Aug. 4, 2017) (Mitchell, J.); *Blue Spike, LLC v. Media Sci., Inc.*, No. 2:16-cv-701-RWS, Dkt. No. 17, (E.D. Tex. July 6, 2017) (Schroeder, J.); *Blue Spike, LLC v. Facebook, Inc.*, No. 6:14-cv-987-MHS-CMC, Dkt. No. 52 (E.D. Tex. Sept. 11, 2015) (Craven, J.); *Blue Spike, LLC v. Gracenote, Inc. et al.*, No. 6:14-cv-597-MHS-CMC, Dkt. No. 52 (E.D. Tex. Mar. 30, 2015) (Craven, J.); *Blue Spike, LLC. v. 3M Cogent, Inc.*, No. 6:12-cv-685-MHS-CMC, 2014 WL 10005586 (E.D. Tex. July 11, 2014) (Schneider, J.); *Blue Spike, LLC v. Adobe Sys., Inc.*, No. 6:12-cv-564-MHS, 2014 WL 1374045 (E.D. Tex. Mar. 13, 2014) (Schneider, J.); *Blue Spike, LLC v. Zietera, LLC et al.*, No. 6:12-cv-568-MHS, 2014 WL 11637022 (E.D. Tex. Mar. 13, 2014) (Schneider, J.); *Blue Spike, LLC v. Kronos, Inc.*, No. 6:13-cv-86-MHS, 2014 WL 11621689 (E.D. Tex. Mar. 13, 2014) (Schneider, J.); *Blue Spike, LLC v. SoundHound, Inc.*, No. 6:12-cv-537-MHS, 2014 WL 11636154 (E.D. Tex. Mar. 13, 2014) (Schneider, J.); *Blue Spike, LLC v. Imageware Sys., Inc.*, No. 6:12-cv-688-MHS, 2014 WL 11621690 (E.D. Tex. Mar. 13, 2014) (Schneider, J.); *Blue Spike, LLC v. Iris ID Sys., Inc.*, No. 6:13-cv-88-MHS, 2014 WL 11636152 (E.D. Tex. Mar. 13, 2014) (Schneider, J.); *Blue Spike, LLC v. Google, Inc.*, No. 6:12-cv-558-MHS, Dkt. No. 16 (E.D. Tex. Mar. 13, 2014) (Schneider, J.); *Blue Spike, LLC v. Soundmouse, Ltd.*, No. 6:12-cv-598-MHS, 2014 WL 11621687 (E.D. Tex. Mar. 6, 2014) (Schneider, J.).

[2] *See Adobe Sys.*, 2014 WL 1374045; *Zietera, LLC,* 2014 WL 11637022; *SoundHound, Inc.*, 2014 WL 11636154; *Google, Inc.*, No. 6:12-cv-558-MHS, Dkt. No. 16; *see also Facebook, Inc.*, No. 6:14-cv-987-MHS-CMC, Dkt. No. 52; *Gracenote, Inc. et al.*, No. 6:14-cv-597-MHS-CMC, Dkt. No. 52; *Toshiba*, 6:17-cv-00053-RWS-KNM, Dkt. No. 33 (transferring because Blue Spike did not oppose transfer).

[3] *Intelligent Automation Design, LLC v. Zimmer Biomet Holdings, Inc.*, No. 5:16-CV-11-CMC, 2016 WL 4424967, at *2 (E.D. Tex. July 21, 2016) (Craven, J.) (citing *In re Genentech, Inc.*, 566 F. 3d 1338, 1345 (Fed. Cir. 2009)); *Genentech*, 566 F.3d at 1345; *Wireless Recognition Techs. LLC v. A9.com, Inc.*, No. 2:10-cv-364-JRG, 2012 WL 506669, at *3 (E.D. Tex. Feb. 15, 2012) (Gilstrap, J.) ("[T]he Federal Circuit counsels that an alleged infringer's proof is

majority of its witnesses, and its documents reside in its Sunnyvale, California headquarters. Third-party manufacturers who supply Juniper with components used in the accused products—such as Marvell Technology Group and Broadcom Ltd.—also are headquartered in the Northern District of California. Thus, as in the previously transferred Blue Spike cases, the vast majority of the documents and witnesses are in the Northern District of California. And indeed, the proportion of relevant evidence residing with the defendant, Juniper, far exceeds that found in a typical case, as Blue Spike has accused 113 different Juniper products of infringement.

The remaining third-party witnesses and their documents—such as the co-inventors of the patents and the patent prosecuting attorneys—also reside outside of the Eastern District. And though Blue Spike has an office in Tyler, it is unclear whether Blue Spike maintains any files at that office. Circumstances indicate that they do not—the patented technology was developed in Florida, Blue Spike has an office in Florida, and Blue Spike's sole employee has residences near Miami, Florida and Flower Mound, Texas.

Given the location of the relevant documents and witnesses, it is unsurprising that four of the traditional transfer factors favor transfer to the Northern District of California. None support denial of transfer. As such, Juniper respectfully requests that this Court transfer this case to the Northern District of California under 28 U.S.C. § 1404.

---

particularly important to venue transfer analyses in patent infringement cases."); *In re Genentech*, 566 F. 3d at 1343 (citing *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F.Supp.2d 325, 329 (E.D.N.Y. 2006) ("The convenience of the witnesses is probably the single most important factor in transfer analysis")).

## BACKGROUND

Juniper is in the business of designing and selling high-performance networking products and services, including routers, gateways, associated software programs, and support.[4] Juniper is a Delaware corporation with its principal place of business in Sunnyvale, California, which is located in the Northern District of California.[5] Juniper's employees research, design, develop, and test the vast majority of its products in Sunnyvale.[6]

In addition to development activities, Juniper employees in Sunnyvale are responsible for the marketing and finances for Juniper's products, as Juniper's finance, accounting, and marketing departments are headquartered there.[7] Juniper employees in these departments are directly involved with managing and marketing the accused products at issue.[8] While Juniper does have sales offices in Texas, including one in Plano, the employees at those offices do not have unique information or knowledge about the accused products.[9]

None of the relevant employees or documents is located in the Eastern District.[10] And of the twenty Juniper employees with relevant technical information about the accused products identified to date, fifteen work in Sunnyvale.[11] The documents associated with these products are

---

[4] Declaration of S. Coonan ("Coonan Decl.") at ¶ 8.

[5] *Id*. at ¶ 4.

[6] *Id.* at ¶ 8.

[7] *Id.* at ¶¶ 13-14.

[8] *See id*.

[9] *Id*. at ¶ 17.

[10] *Id*.

[11] *Id*. at ¶¶ 9-11. The remaining five employees work in Juniper's facilities in Westford, Massachusetts and Bangalore, India.

also located in Sunnyvale.[12] In short, almost all Juniper employees involved with the accused products and their documents are located in Sunnyvale.[13]

Similarly, the patents have no connection to the Eastern District, as they were developed in Florida. And Wistaria Trading Ltd.—the assignee of record at the PTO of all 14 of the patents-in-suit as of August 2015—is a Bermuda company located in Florida.[14] The co-inventors of three of the patents also reside outside this district. Marc Cooperman, the co-inventor of two of the patents, resides near New York City.[15] Mike W. Berry, the co-inventor of a third patent, appears to reside in Seattle, Washington.[16] While one of the inventors—Blue Spike's founder and president Scott Moskowitz—resides in Flower Mound, Blue Spike has not alleged any other facts regarding its connection to the Eastern District aside from an office location in Tyler.[17] For example, Blue Spike has not alleged that any relevant evidence or other Blue Spike employees are located in the Eastern District.

Further, other potentially relevant third-party witnesses and evidence reside outside of the Eastern District. For example, Marvell Technology Group and Broadcom Ltd. manufacture components used in the accused products. Both those companies are headquartered in the Northern District of California.[18] Neifeld IP Law, PC located in Alexandria, Virginia prosecuted most of

---

[12] *Id.* at ¶ 16.

[13] *Id.* at ¶¶ 9-16.

[14] Ex. 1, Patent Assignment Cover Sheet; Ex. 2, Wistaria Trading Ltd. Government of Bermuda Registration Number

[15] Ex. 3, LinkedIn Profile of Marc S. Cooperman.

[16] Ex. 4, U.S. Patent Application No. 14/993,006 (filed Jan. 11, 2016).

[17] Mr. Moskowitz also appears to have a residence in Florida and travels between the two locations. Similarly, Blue Spike appears to have an office near Miami, Florida.

[18] Ex. 5, Marvell Company Webpage; Ex. 6, Broadcom Contact Page.

the patents-in-suit.[19] Floyd Chapman, currently of Wiley Rein LLP in Washington, DC prosecuted one of the patents-in-suit.[20] Thus, many of the third-party documents and witnesses relating to the patents-in-suit are located outside of the Eastern District.

## LEGAL BACKGROUND

Under Section 1404(a), the threshold question is "whether a civil action 'might have been brought' in the destination venue"—i.e. whether venue would be proper in the destination court.[21] After the Supreme Court's *TC Heartland* decision, venue is proper where the defendant is incorporated or where it allegedly infringes and has a regular and established place of business.[22]

After assessing whether the case could have been brought in the transferee court, courts analyze whether the transferee venue will be "clearly more convenient."[23] In determining whether the transferee venue is more convenient, courts in the Fifth Circuit consider the following factors related to the parties' private interests: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive."[24] The same courts also consider the following public interest factors: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will

---

[19] Ex. 7, Neifeld IP Law Contact Page

[20] Ex. 8, Revocation of Power of Attorney (filed Aug. 23, 2004). Prior to this filing, Wiley Rein & Felding were the attorneys of record.

[21] *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (*en banc*) ("*Volkswagen II*") (quoting 28 U.S.C. § 1404(a)).

[22] *See TC Heartland, LLC v. Kraft Foods Group Brands, LLC*, 137 S.Ct. 1514, 1521 (2017).

[23] *Volkswagen II*, 545 F.3d at 315.

[24] *Volkswagen II*, 545 F.3d at 315.

govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."[25] A plaintiff's choice of venue is not a factor in the venue analysis.[26] When another venue is more convenient under the above-enumerated factors, the case should be transferred.[27] Here, the Northern District of California is more convenient under the relevant factors, and thus transfer to that court is warranted.

## ARGUMENT

### I.   THE ASSERTED CLAIMS COULD HAVE BEEN BROUGHT IN THE NORTHERN DISTRICT OF CALIFORNIA

Juniper is headquartered in Sunnyvale, California, where it has designed, tested, marketed, and sold the accused products. Thus, Blue Spike could have brought suit there.

### II.   THE PRIVATE AND PUBLIC FACTORS CONFIRM THAT TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA IS APPROPRIATE

#### A.  The Private Factors Favor Transfer

When most witnesses and evidence are located near one venue and few or no factors favor the current venue, transfer is appropriate. As the Federal Circuit reminded in *In re Nintendo Co., Ltd.*, when "most witnesses and evidence [are] closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer."[28] Here, those private convenience factors favor transfer, as most of the relevant

---

[25] *Id.*

[26] *Volkswagen II*, 545 F.3d at 314-15; *also In re TS Tech United States Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) ("Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis.").

[27] *See Volkswagen II*, 545 F.3d at 315; *see also TS Tech*, 551 F.3d at 1319.

[28] 589 F.3d 1194, 1198 (Fed. Cir. 2009).

witnesses and documents are located in the Northern District of California, not in the Eastern District.

**Private Factor 1:** The relative ease of access to sources of proof. Juniper's evidence relevant to this case is located in Sunnyvale, California. For example, the vast majority of the engineers involved in developing, updating, and maintaining the accused products, work at Juniper's Sunnyvale headquarters.[29] The marketing and financial accounting teams for the accused products are similarly located in Sunnyvale.[30] Juniper also maintains documents relating to the accused products including marketing, financial, and technical documents at its Sunnyvale headquarters.[31] And third-party component manufacturers Broadcom and Marvell presumably maintain any relevant documents at their headquarters in the Northern District of California.

The location of Juniper's evidence is particularly pertinent, because as the accused infringer, Juniper will produce the majority of the relevant evidence.[32] Indeed, as the Federal Circuit has stated, "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."[33] This factor is even stronger here because Blue Spike

---

[29] Coonan Decl. at ¶¶ 9-11.

[30] *Id*. at ¶¶ 13-14.

[31] *Id.* at 16. And Juniper does not maintain relevant documents in the Eastern District as no relevant Juniper employees or identified third-parties are located in the Eastern District.

[32] *See Genentech*, 566 F.3d at 1345; *Wireless Recognition Techs. LLC v. A9.com, Inc*., No. 2:10-cv-364-JRG, 2012 WL 506669, at *3 (E.D. Tex. Feb. 15, 2012) (Gilstrap, J.) ("[T]he Federal Circuit counsels that an alleged infringer's proof is particularly important to venue transfer analyses in patent infringement cases."); *Software Rights Archive, LLC v. Google, Inc.*, No. 2:07-cv-511-CE, 2010 WL 2950351, at *2 (E.D. Tex. July 22, 2010) (Everingham, J.) ("[T]he ease of accessing the defendants' sources of proof weighs more heavily than the ease of plaintiff's proof, because the majority of relevant evidence in patent infringement suits usually comes from the accused infringers.")

[33] *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted); *see Fujitsu Ltd.*

has accused 113 Juniper products of infringement. Thus, the Juniper evidence located in Sunnyvale will be large. Indeed, this Court has transferred thirteen Blue Spike cases out of the Eastern District—seven of them to the Northern District of California—based on the defendants' and third-parties' ties to another jurisdiction. For example, in *Blue Spike v. Adobe*, Judge Schneider found that Adobe's and third-parties' ties to California outweighed Blue Spike's ties to the Eastern District and ordered transfer to the Northern District of California.[34] The same analysis applies here.

And the location of Blue Spike's documentation is less relevant to the transfer analysis due to its relatively small size.[35] Moreover, Blue Spike has not alleged any facts regarding the business allegedly being conducted at its office in Tyler and it is unclear whether Blue Spike maintains any relevant documents at this office.[36] Thus, because the evidence relevant to this case—i.e. Juniper and potential third-party documents—is located in the Northern District of California and not in the Eastern District, the first private factor weighs heavily in favor of transfer.

---

*v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 767 (E.D. Tex. 2009) (Davis, J.).

[34] *See Adobe Systems, Inc.*, 2014 WL 1374045 at *3-4. And the existence of modern technology does not lessen the importance of this factor. As the Fifth Circuit explained in *Volkswagen II*, ease of access to sources of proof remains a "meaningful factor" in the § 1404(a) analysis notwithstanding modern technology. *Volkswagen II*, 545 F.3d at 316; *see also TS Tech*, 551 F.3d at 1320-21 (holding that the trial court erred in determining that this factor was neutral on the basis that many of the documents were stored electronically when "the vast majority of physical and documentary evidence" were located in the transferee venue and not in the plaintiff's selected venue).

[35] *Software Rights Archive* 2010 WL 2950351 at *2.

[36] *See Network Protection Sciences, LLC v. Juniper Networks, Inc.*, No. 2:10-cv-224-JRG, 2012 WL 194382, at *4 (E.D. Tex. Jan. 23, 2012) ("The Federal Circuit has made clear that [such] recent and ephemeral contacts with a forum, which are nothing more than a construct for litigation, should not be considered in a § 1404(a) analysis.").

**Private Factor 2:** The convenience of the forum for the witnesses. This is probably the most vital factor when assessing transfer. As the Fifth Circuit has stated, "[t]he convenience of the witnesses is probably the single most important factor in transfer analysis."[37] This factor favors transfer to the Northern District of California. As noted above, party and third-party witnesses predominantly reside in the Northern District of California. The vast majority of Juniper witnesses who are likely to testify about issues relating to non-infringement and damages for the accused products reside in the Northern District of California.[38] For example, fifteen of the twenty Juniper employees with technical knowledge regarding the relevant parts of the accused products work in Sunnyvale.[39] And again, because Blue Spike has accused 113 different products, the number of Juniper witnesses will be larger than in the typical case. Similarly, third-party witnesses from Broadcom and Marvell presumably work at their companies' headquarters in the Northern District of California. Thus, if this case is transferred to the Northern District of California, the cost of trial attendance for those witnesses will be significantly less expensive.

And the question is not whether "all of the witnesses" reside in the transferee forum, but whether a "substantial number" reside there.[40] Here, a substantial number of Juniper and third-party witnesses are located in the Northern District of California and none in the Eastern District. If this case remains in this district, all of these witnesses would have to travel a substantial distance to testify at trial.

---

[37] *In re Genentech*, 566 F.3d at 1343; *Nintendo*, 589 F.3d at 1198-99.

[38] Coonan Decl. at ¶¶ 9-14.

[39] *Id.* at ¶ 12.

[40] *In re Genentech*, 566 F.3d at 1345 (emphasis in original); *see also ACQIS LLC v. EMC Corp.*, 67 F. Supp. 3d 769, 776 (E.D. Tex. 2014).

Regarding the other potential witnesses, Blue Spike's owner Scott Moskowitz resides in Flower Mound[41]—approximately a two-hour drive from the courthouse in Tyler. For him, the travel to the Eastern District would be more convenient. For the non-party witnesses located in Washington, Virginia, and New York, they would have to travel a significant distance whether it be to the Northern District of California or to the Eastern District. Indeed, courts have routinely found that "[w]hen a particular witness will be required to travel 'a significant distance no matter where they testify,'" then that witness is discounted for the transfer analysis.[42]

The availability of direct flights also affects the convenience analysis. As Judge Davis explained in *ACQIS LLC v. EMC Corp.,* "the existence or non-existence of direct flights can impact the analysis of travel time. Thus, regardless of the 'straight line' distances calculated for the '100 mile rule,' if 'travel time' distances favor the transferee venue, then this factor will favor transfer."[43] Here, there are numerous daily nonstop flights from Washington, Virginia, and New York to the San Francisco International Airport. The flights from Alexandria, Virginia and New York City are less than 6.5 hours and flights from Seattle, Washington are 2 hours.[44] Witnesses could also fly into the Oakland or San Jose International Airports, also located in the Northern District of California. By contrast, there are no nonstop flights between those cities and the Tyler airport; the shortest one-stop flight is approximately 6 hours from Seattle, 5.5 hours from

---

[41] Mr. Moskowitz also appears to reside in Florida, though it is unclear how much time he spends in Florida versus Texas.

[42] *Fujitsu,* 639 F. Supp. 2d at 767 (citing *In re Genentech,* 566 F.3d at 1343-45).

[43] *ACQIS LLC v. EMC Corp.,* 67 F. Supp. 3d 769, 776 (E.D. Tex. 2014)

[44] Ex. 9, Travel time to San Francisco, CA.

Alexandria, and 6 hours from New York City.[45] As such, the convenience for the non-party witnesses residing in Washington, Virginia, and New York is largely a neutral factor.

Because a substantial number of witnesses are located in the Northern District of California and only one witness in the Eastern District, the second private factor thus weighs heavily in favor of transfer.

**Private Factor 3:** Compulsory process to secure the attendance of witnesses. Courts evaluate whether the current district or the transferee district has subpoena power over non-party witnesses.[46] Federal Rule of Civil Procedure 45 provides that this Court may command a person who "resides, is employed, or regularly transacts business in person" in Texas to attend trial in Tyler if that person "would not incur substantial expense."[47] This Court also may command a person to attend a deposition "within 100 miles of where the person resides, is employed, or regularly transacts business in person."[48] Analysis of this factor focuses on third-party witnesses for whom compulsory process to attend trial might be necessary.

Juniper is not aware of any non-party witnesses under the direct trial subpoena power of this Court. As discussed above, certain third-party component suppliers for the accused products are located in Northern California. To the extent the suppliers have relevant information, they would be subject to compulsory process in the Northern District of California. Additionally, the

---

[45] Ex. 10, Travel time to Tyler, TX. The travel time would be similar if these witnesses flew into Dallas and drove to Tyler. Ex. 11, Travel time to Tyler, TX by flying to Dallas and driving to Tyler.

[46] *See In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1337-38 (Fed. Cir. 2009); *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014).

[47] Fed. R. Civ. P. 45(c)(1)(B).

[48] Fed. R. Civ. P. 45(c)(1)(A).

prosecuting attorneys and co-inventors for the patents-in-suit are located outside the Eastern District and more than 100 miles away.[49] Thus, this factor weighs slightly in favor of transfer.

**Private Factor 4:** Practical problems that make trial of a case easy, expeditious, and inexpensive. Courts in the Eastern District and in the Northern District of California are equally capable of hearing this patent case. This Court has little specialized knowledge regarding this case as the case is in its infancy. Further, all but one of Blue Spike's other cases involving the patents-in-suit have either been transferred, dismissed, or not reached the claim construction phase. And in that one case—*Blue Spike, LLC v. Verimatrix*—this Court only construed one of the fourteen patents asserted in this case and then soon after transferred the case to California.[50] Accordingly, this factor is neutral.

Because three private factors—including the most important factor—support transfer and the remaining factor is neutral, the private factors counsel strongly in favor of transfer

**B.  The Public Factors Favor Transfer**

Each of the four public factors either weighs in favor of transfer or is neutral. Thus, like the private factors, they support transfer.

**Public Factor 1:** Administrative difficulties flowing from court congestion. Based on recent statistics, the average times to termination of all cases is slightly faster in the Northern District of California—7.5 months in the Eastern District versus 7.3 months in the Northern District of California, while the time to trial is faster in the Eastern District than in the Northern District of California.[51] Further, this lawsuit is in its earliest stages, and could be transferred

---

[49] *See supra* p. 4.

[50] *See* Dkt Nos. 161 and 162 in *Blue Spike, LLC. v. Verimatrix*, No. 2:16-cv-329-RWS (E.D. Tex.).

[51] Ex. 12, Median Time to Trial Chart; Ex. 13, National Judicial Caseload Profile for the Eastern

without delaying the proceedings. Thus, this factor is neutral.[52]

**Public Factor 2:** The local interest in having localized interests decided at home. This factor considers the interest of the locality, based on the principle that "[j]ury duty is a burden that ought not to be imposed upon the people of a community [that] has no relation to the litigation."[53] If there are significant connections between a venue and the events that gave rise to the suit, this factor should be weighed in favor of transfer to that venue.[54] Here, the events that gave rise to the suit occurred in the Northern District of California. For example, the development, marketing, and updating of the accused products took place and continues to take place in Sunnyvale, California.[55] Regarding the events related to Blue Spike, all of the patents-in-suit were developed in Florida. Indeed, the only connection Blue Spike has to this venue is the primary inventor's place of residence and an office located in Tyler. Thus, this factor weighs in favor of transfer.

**Public Factors 3 and 4:** The familiarity of the forum with the law that will govern the case and the avoidance of unnecessary problems of conflict of laws. Federal patent law will apply in this case and both the Eastern District and Northern District of California have tried numerous patent cases. And there are no problems of conflict of laws in this case. These factors are thus neutral.

---

District of Texas and Northern District of California.

[52] *See, e.g.*, *Brite Smart Corp. v. Google Inc.*, Case No. 2:14-cv-00760-JRG-RSP, 2015 WL 4638215, at *3 (E.D. Tex. Aug. 3, 2015) (finding this factor neutral in granting a motion to transfer a case from the E.D. Tex. to the N.D. Cal. despite plaintiff's claim that "the Eastern District of Texas is faster to trial.").

[53] *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004).

[54] *In re Hoffman-La Roche*, 587 F.3d at 1338.

[55] Coonan Decl. at ¶¶ 8-14; *see Fujitsu*, 639 F. Supp. 2d at 769 (determining localized interest in transferee district favor transfer because defendant is headquartered there and accused products were designed and developed there).

Because one public factor favors transfer and the remaining three are neutral, the public factors also support transferring the case.

## CONCLUSION

Four of the traditional transfer factors favor transfer to the Northern District of California and none support denial of transfer. Because Juniper, its documents, and the majority of its witnesses are located in Sunnyvale, the Northern District of California would be significantly more convenient. Thus, Juniper respectfully requests that this Court transfer this case to the Northern District of California.

Dated: August 24, 2017

Respectfully submitted,

/s/ *Alan M. Fisch*
Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler (*pro hac vice*)
*bill.sigler@fischllp.com*
Jeffrey M. Saltman (*pro hac vice*)
*jeffrey.saltman@fischllp.com*
Kathleen Ryland (*pro hac vice*)
*kathleen.ryland@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Fourth Floor
Washington, DC 20015
Tel: (202) 362-3500

Melissa R. Smith
Texas State Bar No. 24001351
melissa@gillamsmithlaw.com
Gillam & Smith LLP
303 South Washington Avenue
Marshall, TX 75670
Tel: (903) 934-8450
Fax: (903) 934-9257

*Attorneys for Juniper Networks, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 24, 2017, the foregoing document was filed electronically in compliance with Local Rule CV-5(a) and thereby served upon counsel of record.

By: /s/ *Alan M. Fisch*
      Alan M. Fisch

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(i), Juniper states that counsel has complied with the meet and confer requirement of Local Rule CV-7(h) and that Blue Spike opposes the foregoing motion.

By: /s/ *Alan M. Fisch*
      Alan M. Fisch