UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| BLUE SPIKE LLC, | § |
| *Plaintiff*, | § Case No. 6:17-cv-00016-RWS-KNM |
| v. | § Jury Trial Demanded |
| JUNIPER NETWORKS, INC., | § |
| *Defendant*. | § |

**BLUE SPIKE'S OPPOSITION TO JUNIPER NETWORK'S
MOTION TO TRANSFER VENUE**

**TABLE OF CONTENTS**

**INTRODUCTION** ....................................................................................................................................1

**BACKGROUND**......................................................................................................................................2

    I.    JUNIPER NETWORKS STOLE BLUE SPIKE'S INVENTIONS AFTER MEETING WITH ITS PRINCIPLE INVENTOR. ........................................................................................................2

    II.    PROCEDURAL HISTORY. ...................................................................................................2

        A.  *Blue Spike Filed Suit Over the Technology Juniper Networks Misappropriated.* ...................2
        B.  *Blue Spike Amended Its Complaint, Asserting Specific Claims and Reducing the Number of Patents.* ....................................................................................................................................3
        C.  *Juniper Networks Refused to Compromise and Threatened Blue Spike.*..................................4
        D.  *This Court Denied Juniper Network's Motion to Stay and Juniper Networks Withdrew Its Motion to Dismiss.* ......................................................................................................................4
        E.  *Juniper Network's Motion to Transfer Pursuant to § 1404(a).*................................................5

**ARGUMENT** ............................................................................................................................................6

    I.    THE "PARAMOUNT" FEDERAL INTEREST IN JUDICIAL EFFICIENCY, WIHOUT MORE, DEFEATS TRANSFER, ESPECIALLY SINCE THE CASE AGAINST THE MOVANTS INVOLVES TECHNOLOGY AT ISSUE IN OTHER CASES. ..................................................6

    II.    IN THE INTEREST OF JUSTICE, JUNIPER NETWORKS' MOTION SHOULD BE DENIED BECAUSE OF JUNIPER NETWORKS' HISTORY OF FORUM SHOPPING AND PROVIDING MISINFORMATION. ............................................................................................8

    III.  THE OTHER INTEREST FACTORS WEIGH AGAINST TRANSFER, AND JUNIPER NETWORKS HAS NOT MET ITS BURDEN OF SHOWING THAT THE NORTHERN DISTRICT OF CALIFORNIA IS CLEARLY MORE CONVENIENT. ................................................... 10

        A.  *Private Interest Factors Do Not Clearly Weigh in Favor of Transfer.*................................. 10
            1.  Access to evidence weighs against transfer................................................................................ 10
            2.  The witness attendance factor weighs against transfer.......................................................... 11
            3.  Availability of compulsory process weighs against transfer................................................. 12

        B.  *PUBLIC INTEREST FACTORS WEIGH AGAINST TRANSFER.*................................. 13

**CONCLUSION** .................................................................................................................................... 14

# TABLE OF AUTHORITIES

**CASES**

*Adrain v. Genetec Inc.*, No. 2:08-CV-423, 2009 WL 3063414, at *3 (E.D. Tex. Sept. 22, 2009) .................................................................................................................................9

*Adv. Processor Techs. LLC v. Atmel Corp.*, 2013 WL 1279053, at *6 (E.D. Tex. Mar. 26, 2013); ...................................................................................................................13, 16

*Blue Spike, LLC v. Texas Instruments, Inc., et al.*, Case No. 6:12-cv-499, Dkt. 1623 at 11-12 ..............................................................................................................................14

*BSB Bank & Trust Co. v. Morrison*, No. 02-CV-648, 2003 WL 1797845, at *2-3 (N.D.N.Y. Apr. 4, 2003) ...........................................................................................................15

*Cell & Network Selection, LLC v. AT & T Mobility LLC*, No. 6:11-CV-706 LED-JDL, 2013 WL 1855972, at *4 (E.D. Tex. Apr. 29, 2013) ......................................................15

Case No. 1:09-cv-287, Dkt. No. 28, at 9 n.29 ................................................................10

*Centre One v. Vonage Holdings Corp.*, No. 6:08-CV-467, 2009 WL 2461003, at *7 (E.D. Tex. Aug. 10, 2009) ..........................................................................................9

*GeoTag, Inc. v. Aromatique, Inc.*, No. 2:10-CV-570, 2013 WL 8349856, at *3 (E.D. Tex. Jan. 14, 2013) .............................................................................................15

*In re Google*, 412 F. App'x 295, 296 (Fed. Cir. 2011) ..............................................9, 10

*In re Vistaprint Ltd.*, 628 F.3d 1342, 1345-47 (Fed. Cir. 2010) ....................................9

*Juniper Networks v. GraphOn*, Case No. 1:09-cv-287, Dkt. No. 28 (E.D. Va. May 22, 2009) ..............................................................................................................8, 12

*Langton v. Cbeyond Commun., L.L.C.*, 282 F. Supp. 2d 504, 510 (E.D. Tex. 2003) ............12

*MOSAID Techs., Inc. v. Freescale Semiconductor, Inc.*, 2012 WL 12897050, at *4 (E.D. Tex.9

*Net Nav. Sys., LLC v. Cisco Sys., Inc.*, No. 4:11-CV-660, 2012 WL 7827544, at *5 (E.D. Tex. Aug. 24, 2012) ......................................................................................10

*NGC Worldwide, Inc. v. Siamon*, No. 3:02-CV-1760 (JBA), 2003 WL 1987001, at *2 (D. Conn. Apr. 21, 2003) ..................................................................................15

*NovelPoint Learning*, 2010 WL 5068146, at *4-5 .......................................................13

*Oasis Research, LLC v. Pro Softnet Corp.*, No. 4:12-CV-531, 2012 WL 3600838, at *6 (E.D. Tex. Aug. 21, 2012) ......................................................................................10

*Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) ........................................................11

**STATUTES**

§ 1404(a) ..............................................................................................4, 11, 12, 15

Fed. R. Civ. P. 12(b)(3) ...................................................................................................4

## INTRODUCTION

In 2003, Juniper Networks' co-founders Pradeep Sindhu and Dennis Ferguson met with Mr. Moskowitz to discuss his patented inventions (i.e. the patents-in-suit). For a time the parties continued to discuss Mr. Moskowitz's forward-thinking routing technology, until discussions abruptly stopped. Juniper Networks never acquired a license from Mr. Moskowitz, but its products eventually began implementing Mr. Moskowitz's cutting-edge technology without a license.

Local company Blue Spike LLC ("Blue Spike") now brings suit against Juniper Networks, Inc. ("Juniper Networks") for the misappropriation of that technology. Intent on avoiding adjudication on the merits, Juniper Networks has displayed a penchant for forum shopping in the months since Blue Spike filed suit in January of 2017. Juniper Networks filed a motion to dismiss under Rule 12(b)(3) and assured Blue Spike it had no regular and established place of business in this District. But Blue Spike's opposition showed otherwise. In fact, Juniper Networks has a major facility in Plano, Texas. Once Blue Spike brought this evidence to light, Juniper Networks promptly withdrew its motion.

Now Juniper Networks brings a motion to transfer under § 1404(a). This time, Juniper Networks argues this case is more conveniently adjudicated in California. Juniper Networks' position is odd considering it recently filed another § 1404(a) motion to have a case transferred *to* this District. Ultimately, Juniper Networks fails to meet the high bar of showing transfer is clearly more convenient, and Juniper Networks' persistent attempts to forum shop run counter to the public interest and § 1404(a)'s goal of promoting justice.

Blue Spike opposes the transfer motion for four reasons: (1) there is an overwhelming public interest in not rewarding Juniper Networks' attempt to forum shop; (2) paramount considerations of judicial efficiency weigh heavily against transfer, since the case against Juniper is strongly connected with others in this District; (3) the serious health condition of Blue Spike's CEO and inventor—an essential witness in the case—warrant adjudication here; and (4) the remaining private and public factors either weigh against transfer or remain neutral. Each of these standalone reasons defeats transfer.

## BACKGROUND

### I. JUNIPER NETWORKS STOLE BLUE SPIKE'S INVENTIONS AFTER MEETING WITH ITS PRINCIPLE INVENTOR.

In the Spring of 2003, Plaintiff Blue Spike's acting manager and principle inventor of the patents-in-suit, Scott Moskowitz, attended a meeting with Juniper Networks founders Pradeep Sindhu and Dennis Ferguson. *See* Declaration of Scott Moskowitz ("Moskowitz Decl."), at ¶¶ 1, 2, 5. The topic of the meeting was Scott Moskowitz's inventions, including many of the patents-in-suit. The Juniper Networks founders questioned Mr. Moskowitz about steganography, watermarking, and transforming their routing technology through content security policies. *See* Moskowitz Decl., at ¶ 6. After the meeting, the Juniper Networks' founders continued to question Mr. Moskowitz about his technology but eventually ceased contact. *See* Moskowitz Decl., at ¶ 7. Later, Juniper Networks incorporated Mr. Moskowitz' inventions into its products but declined to license Mr. Moskowitz' patents-in-suit.

### II. PROCEDURAL HISTORY.

#### A. Blue Spike Filed Suit Over the Technology Juniper Networks Misappropriated.

Blue Spike filed suit against Juniper Networks on January 6, 2017 for infringing technology Scott Moskowitz shared with Juniper Networks in confidence—26 counts of patent infringement. *See* Dkt. No. 1. In its complaint, Blue Spike went above-and-beyond what is required in this district by providing exemplary infringed claims and explanations of infringement. *See, e.g.*, Dkt. No. 1, at ¶ 29. Despite the additional aid Blue Spike provided, Juniper Networks' counsel reached out to counsel for Blue Spike to seek a 150-day extension to answer Blue Spike's complaint. *See* Ex. 1. Blue Spike believed the extension was unnecessary, given the overlap in technology shared by accused devices and the extensive descriptions in the complaint.[1] Juniper Networks filed its Motion for Extension opposed. *See* Dkt. No. 8.

### B. Blue Spike Amended Its Complaint, Asserting Specific Claims and Reducing the Number of Patents.

After seeking an initial 30-day extension to answer, on March 13, 2017 Juniper Networks filed a "Motion for Extension" of 150 days plus any "additional time" it might need to respond—essentially, Juniper Networks filed a Motion to Stay. *See* Dkt. No. 8. Two months later, on May 26, Juniper Networks filed a motion to dismiss for improper venue. Dkt. No. 15. Blue Spike believed an extension of 150+ days was unwarranted given the detail and support in Blue Spike's original complaint, but Blue Spike reached out to Juniper Networks nonetheless to propose a compromise: if Juniper Networks would withdraw its motion for an extension, Blue Spike would file an amended complaint asserting specific claims and reducing the overall number of patents. *See* Ex. 2 at 4.

---

[1] Unsurprisingly, counsel for Juniper Networks is now requesting a reduced number of interrogatories because it "just became aware" that its technology overlaps different accused products. Juniper Networks' position is untenable considering the substantial information Blue Spike provided in its complaint. Instead, Juniper Networks' about face—initially asking for 150+ days to answer and now seeking reduced discovery—merely sheds greater light on its suspect motives.

Counsel for Juniper Networks responded with a hostile critique of both the substance and form of Blue Spike's proposal. *See* Ex. 2, at 3-4. Juniper Networks refused to accept Blue Spike's compromise. Even so, Blue Spike amended its complaint, reducing the number of patents to 14 and specifically asserting only 60 claims. *See* Dkt. No. 12.

### C. Juniper Networks Refused to Compromise and Threatened Blue Spike.

Two weeks later, on May 26, Juniper Networks filed a motion to dismiss for improper venue. Dkt. No. 15. Blue Spike's original complaint sufficiently pleaded venue, but Juniper Networks argued that venue was now improper due to the Supreme Court's recent *TC Heartland* ruling. In the spirit of compromise, Blue Spike asked Juniper Networks whether it would consider stipulating to transfer instead of dismissal. Counsel for Juniper Networks refused the compromise, stating "[d]ismissal remains appropriate here" and declaring "Juniper . . . does not have a regular and established place of business in the Eastern District. *See* Ex. 3 at 3; *contra* MTT at 3 (where Defendant admits "Juniper does have sales offices in Texas, including one in Plano"). In a later email, Juniper Networks restated "[d]ismissal remains the appropriate remedy, not transfer," and suggested Blue Spike should "walk away at this early phase without Juniper pursuing its fees and costs." *See* Ex. 3 at 3; *see also* Ex. 4 (a dismissal with prejudice Juniper Networks suggested Blue Spike should model).

### D. This Court Denied Juniper Network's Motion to Stay and Juniper Networks Withdrew Its Motion to Dismiss.

On June 9, 2017, Blue Spike filed an opposition to Juniper Networks' motion to dismiss noting two very important details supporting venue: Juniper Networks has an office in this District (contrary to counsel for Juniper Networks' affirmation), and Juniper Networks had even previously asked to be transferred to this district pursuant to 1404(a).

4

*See* Dkt. No. 17; MTT at 3. A week later, counsel for Juniper Networks emailed with sudden change of heart, informing Blue Spike it was now interested in stipulating to transfer. *See* Ex. 3 at 2. In light of Juniper Network's misinformation, Blue Spike was no longer interested in transfer and informed Juniper Networks "Juniper withheld from the Court and Blue Spike its regular and established business in Texas" and "we were misled by Juniper." *See* Ex. 3 at 1. Recognizing it could not prevail now that the Court was aware of Juniper's previous desire to transfer to this District as well as its physical location in Plano, Juniper Networks withdrew its motion to dismiss. *See* Ex. 3 at 1 ("Juniper will be filing a notice with the Court this morning withdrawing its motion to dismiss for improper venue."); Dkt. No. 20 (Juniper Networks' Notice of Withdrawal). Soon after, the Court denied Juniper Networks' motion for an extension of time to answer. *See* Dkt. No. 22.

### E.  Juniper Network's Motion to Transfer Pursuant to § 1404(a).

On June 7, counsel for Juniper Networks informed Blue Spike that Juniper Networks had no regular and established place of business in this District. *See* Ex. 3 at 3. After Blue Spike informed the Court of the opposite—that Juniper Networks has a physical location in Plano (Dkt. No. 17)—Juniper Networks has now decided to admit it does, in fact, have a presence here. *See* MTT at 3. Forced to withdraw its motion to dismiss, Juniper Networks now asks the Court to transfer for convenience of the parties. Juniper Networks failed to inform the Court that it had previously sought transfer *to* this District under the same §1404(a) theory of party convenience. *See Juniper Networks v. GraphOn*, Case No. 1:09-cv-287, Dkt. No. 28 (E.D. Va. May 22, 2009), attached as Ex. 5.

5

**ARGUMENT**

I. **THE "PARAMOUNT" FEDERAL INTEREST IN JUDICIAL EFFICIENCY, WIHOUT MORE, DEFEATS TRANSFER, ESPECIALLY SINCE THE CASE AGAINST THE MOVANTS INVOLVES TECHNOLOGY AT ISSUE IN OTHER CASES.**

"Courts have consistently held that judicial economy plays a paramount role in trying to maintain an orderly, effective administration of justice, and having one trial court decide all of these claims clearly furthers that objective." *In re Google*, 412 F. App'x 295, 296 (Fed. Cir. 2011). Judicial economy is so important that it provides a sufficient basis to deny transfer even "when all of the convenience factors clearly favor transfer." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1345-47 (Fed. Cir. 2010).[2] Multiple lawsuits involving many of Blue Spike's patents-in-suit are before the Court. In particular, patents in this case are also before this Court in *Blue Spike v. LeEco*, *Blue Spike v. Razer*, *Blue Spike v. MarkAny*, and *Blue Spike v. Nook Digital* (Case Nos. 6:17-cv-63, 6:17-cv-99, 6:17-cv-138, and 6:16-cv-1361 respectively). This patent overlap is a standalone reason to deny Juniper Network's motion. Moreover, Blue Spike recently filed a motion to consolidate pretrial proceedings for these cases through multidistrict litigation under Section 1406, which also warrants denial of transfer.

Given this scenario, it is no surprise that other transfer decisions support keeping this case here. For instance, *Net Navigation* involved multiple suits dealing with the same

---

[2] *See also Adrain v. Genetec Inc.*, No. 2:08-CV-423, 2009 WL 3063414, at *3 (E.D. Tex. Sept. 22, 2009) ("[T]he existence of multiple lawsuits interpreting the same patent creates an unnecessary risk of inconsistent claim construction and adjudication."); *Centre One v. Vonage Holdings Corp.*, No. 6:08-CV-467, 2009 WL 2461003, at *7 (E.D. Tex. Aug. 10, 2009) (holding that a defendant's "convenience alone fails to outweigh the glaring inefficiency of prosecuting two, nearly identical, complex patent infringement cases in different fora"); *MOSAID Techs., Inc. v. Freescale Semiconductor, Inc.*, 2012 WL 12897050, at *4 (E.D. Tex. Sept. 27, 2012) ("[T]he existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer.").

four patents. *Net Nav. Sys., LLC v. Cisco Sys., Inc.*, No. 4:11-CV-660, 2012 WL 7827544, at *5 (E.D. Tex. Aug. 24, 2012), report and recommendation adopted, No. 4:11-CV-660, 2013 WL 1309840 (E.D. Tex. Mar. 27, 2013). Denying transfer, the Court reasoned that transferring one of the suits to another venue would mean "another court would be required to conduct duplicative proceedings regarding claim construction, expert discovery, and other issues." *Id.* Other recent cases—all on point—likewise counsel against transfer. *See, e.g.*, *Oasis Research, LLC v. Pro Softnet Corp.*, No. 4:12-CV-531, 2012 WL 3600838, at *6 (E.D. Tex. Aug. 21, 2012) (holding that because plaintiff had filed multiple suits in this District on the same patents, concerns of judicial economy weighed heavily against transfer because "another court would have to spend significant resources to familiarize itself with the patents, prosecution history, claim construction, and other issues").

Juniper Networks is well aware of the importance of locating a lawsuit in a district that is familiar with the patents. In its suit against *GraphOn*, Juniper Networks sought to be transferred *to* the Eastern District of Texas. *See* Ex. 5, Case No. 1:09-cv-287, Dkt. No. 28, at 9 n.29 (where Juniper Networks cites cases for the proposition that a forum was more convenient because of "pending, related litigation" and a "forum already familiar with at least one of the transferred patents"). Here, granting a transfer would undermine the "paramount" consideration of judicial efficiency, forcing multiple federal courts to expend duplicative efforts considering common questions of law and fact and creating an unnecessary risk of inconsistent claim construction and adjudication. *In re Google*, 412 F. App'x at 296. This is a stand-alone ground for denying transfer.

Defendant wants the Court to ignore the "paramount" consideration of judicial efficiency in pursuit of their preferred forum for this case. Defendant would rather force

7

other courts to expend duplicative efforts considering common questions of law and fact, creating an unnecessary risk of inconsistent claim construction and adjudication, than to relent in its forum shopping. This Court should not allow Defendant that opportunity.

II.  **IN THE INTEREST OF JUSTICE, JUNIPER NETWORKS' MOTION SHOULD BE DENIED BECAUSE OF JUNIPER NETWORKS' HISTORY OF FORUM SHOPPING AND PROVIDING MISINFORMATION.**

The interests of justice warrant denying Juniper Networks' motion regardless of the convenience factors. Section 1404(a) "empowers a district court to transfer 'any civil action' to another district court if the transfer is warranted by the convenience of parties and witnesses *and promotes the interest of justice." Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (emphasis added). Thus, transfer is only warranted if it is both clearly more convenient *and* promotes justice. Here, justice warrants denial.

Juniper Networks crosses the line in its forum shopping, an injustice this Court should not ignore. Juniper Networks' first forum shopped by filing a Rule 12(b)(3) motion in this case, arguing improper venue. In support of that motion, Juniper Networks, via its attorney, informed Blue Spike that it had no regular and established business here. *See* Ex. 3 at 3; *see also* Ex. 3 at 1 (where Blue Spike's counsel states "Juniper withheld from the Court and Blue Spike its regular and established business in Texas"). Juniper Networks' venue position is patently untrue. Indeed, Blue Spike opposed Juniper Networks' motion to dismiss and provided overwhelming evidence that Juniper Networks has a regular and established place of business here, *including an office in Plano, Texas*. In the face of Blue Spike's evidence, and likely to avoid repercussions, Juniper Networks withdrew its motion to dismiss. *See* Dkt. No. 20.

Undeterred in its forum-shopping mission, however, Juniper Networks' followed its motion to dismiss with the instant motion to transfer. Now, Juniper Networks insists

8

transfer is warranted for the convenience of the parties, and yet Juniper Networks made the very same argument to a court in the Eastern District of Virginia, asking to be transferred *to* this District. *See* Ex. 5. Juniper Networks' disparate § 1404(a) motions—one to transfer *to* this District and now another to transfer *from* this district—illustrate that Juniper Networks is most interested in shopping for its ideal forum. Juniper Networks' intention is not in the interest of justice, nor should a defendant's zealous desire to litigate in a more attractive forum outweigh a plaintiff's initial choice of forum. *Langton v. Cbeyond Commun., L.L.C.*, 282 F. Supp. 2d 504, 510 (E.D. Tex. 2003) (where "Plaintiff's choice of forum, while not decisive, is an important venue factor" to which "the Court gives that choice due consideration.").[3]

Juniper Networks' forum-shopping tactics have not gone unnoticed. In fact, Juniper Networks' counsel have been accused of "playing an elaborate game of hopscotch" in fighting venue. *See* Ex. 1 (in which an article from The American Lawyer notes that Juniper Networks' attorneys may be "[c]razy like a fox" for their unorthodox venue gamesmanship"). Needless to say, Juniper has lost the benefit of the doubt when it comes to its rationale for transferring in and out of this District. This Court should not reward or endorse Juniper Networks' attempt to elude the administration of justice in this District.

---

[3] Juniper Networks' strategy in *GraphOn* raises other concerns as well. Juniper states that it seeks to keep these two similar cases together (in fact, it is the whole basis for the convenience of the transfer). *Id.* Then, why not wait to seek transfer to Texas until the pending transfer request to California had already been decided? Or alternatively, why not wait to file the motion to transfer to California until the Texas transfer request had been granted or denied? In short, why invite a possible scenario in which these cases *still* end up in different districts, when the whole basis for the convenience of the transfer is contingent up the cases remaining together? Given Juniper's history of forum shopping, the answer seems clear: the ultimate goal was only to transfer *out* of the Eastern District of Virginia, with both Texas and California being preferred forums, with keeping these cases together at best a secondary concern.

9

Juniper Networks has an established *modus operandi* of forum shopping at all costs. In the interest of justice, Juniper Networks' motion to transfer should be denied as another forum shopping attempt.

III. **THE OTHER INTEREST FACTORS WEIGH AGAINST TRANSFER, AND JUNIPER NETWORKS HAS NOT MET ITS BURDEN OF SHOWING THAT THE NORTHERN DISTRICT OF CALIFORNIA IS CLEARLY MORE CONVENIENT.**

    A. **Private Interest Factors Do Not Clearly Weigh in Favor of Transfer.**

        1. **Access to evidence weighs against transfer.**

The parties' access to evidence weighs against transfer. *Contra* MTT at 12. This Court has considered this factor neutral when "[a]ll of Plaintiff's evidence is located within this district" weighs against transfer. *Adv. Processor Techs. LLC v. Atmel Corp.*, 2013 WL 1279053, at *6 (E.D. Tex. Mar. 26, 2013); *see also NovelPoint Learning*, 2010 WL 5068146, at *4-5. All of Blue Spike's evidence is located here. Blue Spike has its headquarters and principal place of business in Tyler, and its servers and sources of proof are all located here. Blue Spike's founder and the principle inventor on the patents-in-suit, Scott Moskowitz, has a residence here. Blue Spike's expert witness, Dr. Ahmed Tewfik, Chair of the Computer Science Dept. at the University of Austin, is located in Texas. Defendant erroneously asserts that "Blue Spike has an office in Florida." MTT at 7. Blue Spike Inc. maintains an office in Florida, but Blue Spike Inc. is not a party to this litigation. Plaintiff Blue Spike LLC is a separate entity from Blue Spike Inc. with separate shareholders. Blue Spike LLC does not maintain an office in Florida.

Moreover, in this age of electronic discovery, the location of evidence is almost entirely irrelevant. Whether the case is litigated in Texas or California, each party will still collect relevant documents from operations in their immediate area. Blue Spike will collect documents in Texas, Juniper Networks will collect documents in California and

Plano, Texas, and then both parties will serve them electronically. The court's location makes little difference. Thus, access to evidence factor then does not support transfer.

### 2.   The witness attendance factor weighs against transfer.

Similarly, it hardly matters where witnesses are located. Before trial, depositions will take place at locations near the witnesses—Blue Spike will depose Juniper Networks' witnesses in Texas and California, and Juniper Networks will depose Blue Spike's witnesses in Texas. In the event this case goes to trial, witnesses for both parties will have to travel to testify.

Juniper Networks lists a number of possible employee witnesses, but its witness list looks more like an employee roster. Blue Spike does not deny that Juniper Networks has some employees outside of this district, and Juniper Networks' list of some of those employees does not somehow justify transfer. There are a number of Juniper Networks' employees in this District that are potential witnesses. *See* Ex. 6. Unsurprisingly, Juniper Networks failed to include these potential witnesses in its employee roster.

What truly weighs against transfer is the burden on Blue Spike's primary witness, Scott Moskowitz. This factor mandates that the case not be transferred. Mr. Moskowitz is the CEO and co-inventor of all the patents-in-suit, and suffers from a medical condition that makes traveling very painful. Moskowitz Decl. ¶¶ 10-15. Indeed, his doctor has advised that he not travel long distances at all. *Id.* ¶ 14. And this Court has previously acknowledged Moskowitz's medical issues weigh against transfer. *See Blue Spike, LLC v. Texas Instruments, Inc., et al.*, Case No. 6:12-cv-499, Dkt. 1623 at 11-12; *see* Ex. E, Declaration of Dr. Unger (as filed in 6:12-cv-499).

Other courts have denied transfer motions based on health concerns. "The health concerns of a party or witness can be an important factor in the determination of whether

11

a § 1404(a) transfer is proper." *NGC Worldwide, Inc. v. Siamon*, No. 3:02-CV-1760 (JBA), 2003 WL 1987001, at *2 (D. Conn. Apr. 21, 2003) (collecting cases). *See, e.g., BSB Bank & Trust Co. v. Morrison*, No. 02-CV-648, 2003 WL 1797845, at *2-3 (N.D.N.Y. Apr. 4, 2003) (granting defendants' motion to transfer venue from New York to Florida, even though (1) contract in dispute contained choice-of-venue clause that required case to be litigated in New York and (2) many other factors weighed against transfer, because defendant who resided in Florida had health problems that made traveling to New York very difficult).

Considering the mitigating factor of inventor Scott Moskowitz's health issues, this factor weighs against transfer.

### 3. Availability of compulsory process weighs against transfer.

The compulsory process does not clearly weigh in favor of transfer. *Contra* MTT at 16. In its motion, Defendant generally refers to "certain third-party component suppliers for the accused products" and names two of these suppliers as Marvell Technology Group and Broadcom Ltd.; however, Defendant merely speculates that compulsory process would be useful "[t]o the extent the suppliers have relevant information." *Id.* at 9, 16. Defendant cannot even state that these suppliers definitively have relevant information, or that Defendant is not also in possession of that information. This vague assertion does not support transfer. *See Cell & Network Selection, LLC v. AT & T Mobility LLC*, No. 6:11-CV-706 LED-JDL, 2013 WL 1855972, at *4 (E.D. Tex. Apr. 29, 2013) ("The Court gives more weight to those specifically identified witnesses and affords less weight to vague assertions that witnesses are likely located in a particular forum."); *GeoTag, Inc. v. Aromatique, Inc.*, No. 2:10-CV-570, 2013 WL 8349856, at *3 (E.D. Tex. Jan. 14, 2013) (weight attributed to third-party witnesses "is undercut by [a movant's] failure to identify particular witnesses").

Thus, this factor does not clearly weigh in favor of transfer.

### B. PUBLIC INTEREST FACTORS WEIGH AGAINST TRANSFER.

Blue Spike has already shown that Juniper Networks' forum shopping efforts warrant denial as an affront to the public interest. *See* § II. Forum shopping aside, the public interest would still not weigh in favor of transfer. In its motion, Defendant concedes that three of four public interest factors—(1) administrative difficulties from court congestion; (2) The familiarity of the forum with the law that will govern the case; and (3) the avoidance of unnecessary problems of conflict of law—are all neutral and do not actually weigh in favor of transfer. *See* Dkt. MTT at 18. With the recent trend in cases being filed outside of E.D. Texas post TC Heartland, court congestion actually favors keeping this case here.

But the major public interest factor that weighs heavily in favor of denying transfer is this District's interest in vindicating the rights of local company and plaintiff Blue Spike LLC. Defendant argues this factor weighs in its favor, arguing the "local interest in having localized interests decided at home." *Id.* However, this argument cuts two ways. Juniper ignores the other half of the local interest equation: Juniper infringed Blue Spike's patents and harmed Tyler-based Blue Spike and its Texas-based owner and employees. In such a case, "[t]he residents of the Eastern District clearly have a legitimate local interest in the enforcement of patents owned by a resident business." *See Advanced Processor Techs., LLC v. Atmel Corp.*, 2013 WL 1279053, at *16 (E.D. Tex. Mar. 26, 2013).

Moreover, this factor weighs more in Blue Spike's favor because of the history between the companies. As explained above, Blue Spike's LLC's founder and inventor on the patents-in-suit met with Juniper Networks co-founders in 2003 to discuss his

inventions. After prodding Mr. Moskowitz for further information in follow-up discussions, Defendant went silent and decided to integrate Mr. Moskowitz's technology without licensing it. This history of willful infringement against a local company weighs strongly in favor of trying this case here.

## CONCLUSION

For the foregoing reasons, Blue Spike respectfully asks the Court deny Juniper Networks' motion to transfer.

Respectfully submitted,

  /s/ Randall T. Garteiser
Randall T. Garteiser
  Lead Attorney
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
Kirk J. Anderson
  California Bar No. 289043
  kanderson@ghiplaw.com
GARTEISER HONEA, P.C.
119 W Ferguson St.
Tyler, Texas 75702
Tel/Fax: (888) 908-4400

*Counsel for Blue Spike LLC*

**Certificate of Service**

    The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on this date stamped above.

                                                                          /s/ Randall Garteiser